# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

| | |
|---|---|
| IN RE PAPA JOHN'S EMPLOYEE AND FRANCHISEE EMPLOYEE ANTITRUST LITIGATION | CIVIL ACTION NO: 3:18-CV-00825-JHM |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Compel Arbitration [DN 58], Motion to Dismiss, or in the Alternative, to Strike [DN 59], and Motion for the Court to Take Judicial Notice [DN 60], as well as Plaintiffs' Motion for the Court to Take Judicial Notice [DN 73]. Fully briefed, these matters are ripe for decision. For the following reasons, the Defendants' Motion to Compel Arbitration is **GRANTED**, Motion to Dismiss or Strike is **DENIED**, and Motion for Judicial Notice is **GRANTED**. Plaintiffs' Motion for Judicial Notice is **GRANTED**.

## I. BACKGROUND

On January 28, 2019, the Court consolidated three putative class actions filed against Papa John's International, Inc. and Papa John's USA, Inc. (together, "Defendants" or "Papa John's"). [DN 39]. The Court ordered the Plaintiffs, current and former employees of Defendants, to file a consolidated amended complaint. On February 19, 2019, Plaintiffs Jay Houston, Ashley Page, and Jamiah Greer, on behalf of themselves and all others similarly situated, filed a Consolidated Amended Complaint ("CAC"). [DN 54]. According to the CAC, Defendants violated the Sherman Antitrust Act by "orchestrat[ing] an agreement between and among Papa John's restaurant franchisees, pursuant to which the franchisees agreed not to hire or solicit each other's employees or Papa John's employees." [*Id.* at 1]. Because of this unlawful agreement, Plaintiffs

allege that they suffered depressed wages and benefits and diminished employment opportunities. [*Id.* at 2].

Papa John's franchises are independently owned and operated as separate legal entities from Defendants. [*Id.* at 17]. Papa John's International, Inc.—the franchising arm of Defendants—enters into a standard franchise agreement with each new franchise owner. Plaintiffs claim that every franchisee executing a franchise agreement beginning no later than 2010 and continuing through at least November 2017 agreed to a No-Hire provision. [*Id.* at 20]. The provision stated as follows:

> You covenant that you will not, during the Term and for a period of one year after expiration or termination of the Franchise, employ or seek to employ any person who is employed by us, our Affiliates or by any of our franchisees, or otherwise directly or indirectly solicit, entice or induce any such person to leave their employment.

[*Id.*; DN 59-4 at 3]. Additionally, all franchisees agreed to penalties for violations of said agreement—for example, franchisees agreed that violation of the provision could result in termination of the franchise, among other things. [*Id.*]. Plaintiffs claim that Defendants used the franchise agreements to orchestrate a conspiracy among their franchisees to not compete for labor among themselves or the corporate-owned stores. [*Id.* at 9].

Plaintiffs argue that this agreement is an unreasonable restraint of trade, violative of the Sherman Antitrust Act. More specifically, Plaintiffs maintain that the No-Hire agreement acts as a horizontal restraint of trade among competitors in the labor market and is a *per se* violation of the Sherman Act. [*Id.* at 35]. Defendants disagree and move to dismiss for failure to state a claim. [DN 59]. As grounds, Defendants argue that this is a vertical restraint and thus the rule of reason standard of review ought to apply. [59-1 at 7–12]. Applying the rule of reason, Defendants aver,

the Court will easily conclude that Plaintiffs failed to adequately allege a violation of the Sherman Antitrust Act and, accordingly, the case must be dismissed. [*Id.* at 16–17].

In this action, Plaintiffs seek to represent "[a]ll persons who were employed at a Papa John's restaurant located in the United States between January 1, 2010 through the present." [DN 54 at 27]. In order to avoid the four-year statute of limitations on antitrust actions, Plaintiffs plead fraudulent concealment by Defendants. [*Id.* at 30–33]. Defendants Move to Strike Plaintiffs' fraudulent concealment allegations claiming that Plaintiffs failed to adequately plead each of the three requirements for tolling the statute of limitations under such a theory. [DN 59 at 2; DN 59-1 at 17–21].

As an alternative to their Motion to Dismiss, Defendants Move to Strike Plaintiffs' class allegations. [DN 59 at 2–3; DN 59-1 at 21–25]. Defendants argue that the class allegations ought to be stricken before discovery begins because the proposed class is overbroad and fails to satisfy Federal Rule of Civil Procedure 23's requirements. [DN 59-1 at 17–21]. Plaintiffs respond that Defendants' Motion is severely premature and that the Court cannot adequately assess Rule 23's requirements at this stage. [DN 71 at 22–24].

In addition to the Motion to Dismiss, or in the Alternative, to Strike, Defendants filed a Motion to Compel Arbitration and Dismiss Claims of Jamiah Greer, one of the named plaintiffs to this action. [DN 58]. Therein, Defendants assert that Greer affirmatively waived her right to resolution of her Sherman Act claim in a judicial forum and has limited herself to resolution of any such claim in arbitration. [DN 58-1 at 1–2]. Plaintiffs respond that the Motion to Compel arbitration must be denied because Greer's arbitration agreement only covered disputes arising out of or related to her employment with Papa John's, and her Sherman Act claim does not concern

her employment but instead arises out of a conspiracy between and amongst Defendants and their franchisees. [DN 74].

Finally, both parties filed motions for judicial notice. [DN 60; DN 73]. Defendants ask the Court to judicially notice three categories of exhibits offered in support of their Motion to Dismiss: (1) a U.S. Department of Justice ("DOJ") Statement of Interest; (2) the fact that Defendants' Franchise Agreements are publicly filed with state agencies; and (3) the fact that Defendants' branded restaurants and other restaurants not associated with Defendants advertise job positions on various websites. [DN 60 at 2–4]. Plaintiffs in turn ask the Court to judicially notice two documents offered in support of their Opposition to the Motion to Dismiss: (1) a public letter from the American Antitrust Institute ("AAI") to the DOJ and (2) two job postings for Papa John's delivery drivers. [DN 86 at 1].

## II.    STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint . . . states a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to

infer more than the mere possibility of misconduct." *Id.* at 679. Instead, "a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. at 663 (quoting Fed. R. Civ. P. 8(a)(2)). "But where the well-pleaded facts do not permit the court to infer more the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

If "matters outside the pleadings are presented to and not excluded by the court" when ruling upon a motion under Rule 12(b)(6), the Federal Rules require that "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). This Rule does not require the Court to convert a motion to dismiss into a motion for summary judgment every time the Court reviews documents that are not attached to the complaint. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). "[W]hen a document is referred to in the complaint and is central to the plaintiff's claim . . . [,] the defendant may submit an authentic copy [of the document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id.* (quotation omitted). "Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

## III.   DISCUSSION

### A.  Motion to Compel Arbitration

Defendants first move the Court to compel arbitration and dismiss the claim of Plaintiff Jamiah Greer. [DN 58]. Defendants argue that Greer's signing of an arbitration agreement during her hiring process precludes her participation in this lawsuit and affirmatively limits resolution of

her claim to arbitration on an individual basis.  [DN 58-1 at 3–4].  Plaintiffs oppose this Motion stating that Defendants misconstrue the Sherman Act claim.  [DN 74 at 1].  Plaintiffs explain that the claim arises not out of Greer's employment relationship with Defendants, but from a conspiracy between and amongst Defendants and the franchisees.  [*Id.*].  That being the case, Plaintiffs maintain that the instant action does not fall under the purview of the arbitration agreement and Greer may continue to be a part of this class.  [*Id.* at 6].

Defendants ask the Court to enforce an arbitration agreement.  The arbitration agreement at issue provides that the FAA, 9 U.S.C. §§ 1–16, shall govern the agreement.  "When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue."  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).  The Sixth Circuit has explained a district court's role as follows:

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714 (citing *Compuserve, Inc. v. Vigny Int'l Fin., Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)); *see also N. Fork Collieries LLC v. Hall*, 322 S.W.3d 98, 102 (Ky. 2010) ("The task of the trial court confronted with" a motion to compel arbitration "is simply to decide under ordinary contract law whether the asserted arbitration agreement actually exists between the parties and, if so, whether it applies to the claim raised in the complaint.  If an arbitration agreement is applicable, the motion to compel arbitration should be granted") (internal citations omitted).

The parties do not dispute that a valid and enforceable arbitration agreement was signed by Greer. The crux of the disagreement is on the second point—the scope of that agreement. Although it is well-established that doubts about arbitrability in a labor agreement should be resolved in favor of arbitration, the Court may compel arbitration only over those issues the parties have agreed by contract to arbitrate. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). Where the arbitration clause is as broad as the one in the present case, the presumption of arbitrability is particularly strong. *Id.*

The arbitration agreement states that Greer waives all rights to a trial in court before a judge or jury on any "claims, disputes or controversies arising out of or relating to her employment with Papa John's." [DN 58-3 at 2]. Defendants maintain that Plaintiffs' claim for monetary relief arising out of Greer's employment with Papa John's is exactly the type of claim anticipated by the arbitration agreement. [DN 58-1 at 6–7]. In contrast, Plaintiffs argue that Greer's antitrust claim "arises out of the concerted refusal of any Papa John's franchisee to consider her for a position pursuant to the No-Hire Agreement." [DN 74 at 1]. Plaintiffs further argue that Defendants are liable for the harm caused (wage suppression) "because it orchestrated the No-Hire Agreement, not because it employed Ms. Greer." [*Id.*].

Plaintiffs assert a claim for violations of the Sherman Act. [DN 54 ¶¶ 123–134 (citing 15 U.S.C. § 1, *et seq.*)]. Because of these violations, Greer alleges that she suffered injury, including depressed wages and deprivation of job opportunities. [DN 54 ¶ 18]. Not only does the arbitration agreement broadly cover "all claims, disputes or controversies arising out of or relating to your employment with Papa's Johns," but the agreement proceeds to provide a non-exhaustive list of potential claims covered by the agreement. [DN 58-3 at 2]. The agreement states that "[c]overed

7

claims include . . . any violation of any federal, state, or other governmental law, statute, regulation, or ordinance." [*Id.* at 3]. Reading this clause in conjunction with the limitation to claims arising out of or relating to employment, as urged by Plaintiff, does not change the result. Greer, a former employee of Defendants, alleges that Defendants violated federal antitrust laws and requests damages including suppressed wages from her time as an employee—as such, this action arises from Greer's employment with Defendants. Plaintiffs, grasping at straws, make light of the fact that the list of covered claims does not include the words "antitrust" or "Sherman Act." [DN 74 at 2]. However, explicit incorporation is not necessary for claims to be covered by this clause. The Court is persuaded that Greer's claims are covered by the parties' arbitration agreement.

Plaintiffs cite to Sixth Circuit case law which states that a court cannot "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Smith v. Altisource Sols.*, 726 F. App'x 384, 389–90 (6th Cir. 2018). The Court does not run contrary to this precedent. At best, there is a small degree of uncertainty as to whether the arbitration agreement covers the claims asserted in the instant action. In such a case, the liberal policy favoring arbitration provides instructive guidance. *See Yaroma v. Cashcall, Inc.*, 130 F. Supp. 3d 1055, 1061 (E.D. Ky. 2015) (quoting *Masco Corp. v. Zurich American Ins. Co.*, 382 F.3d 624, 626 (6th Cir. 2004)). The text of the CAC and the arbitration agreement signed by Greer, as well as the policy of rigorous enforcement of arbitration agreements, convince the Court that the claims asserted are subject to arbitration. The final relevant question is whether Congress evinced an intent for Sherman Act claims to be nonarbitrable. Nothing in the Sherman Act suggests a congressional intention to preclude waiver of judicial remedies. Accordingly, the claims asserted in the CAC are arbitrable.

Defendants ask the Court to dismiss the case, rather than stay proceedings, in the event that the arbitration agreement is enforced. "The FAA requires a court to stay proceedings pending arbitration 'only on application of one of the parties.'" *Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 519 (6th Cir. 2017) (citing 9 U.S.C. § 3). Neither party has requested a stay, making dismissal appropriate. *Id.* Therefore, Defendants' Motion to Compel Arbitration [DN 58] is **GRANTED**, and Greer's claims will be **DISMISSED** without prejudice. *Hilton*, 687 F. App'x at 519 (dismissal without prejudice is appropriate to allow parties to refile or reopen case for entry of arbitration award or any other relief to which parties may be entitled).

### B. Motions to Take Judicial Notice

Both parties filed respective motions asking the Court to take judicial notice of several documents. [DN 60; DN 73]. Defendants ask the Court to take judicial notice of three categories of exhibits offered in support of their Motion to Dismiss: (1) a DOJ Statement of Interest; (2) the fact that Defendants' Franchise Agreements are publicly filed with state agencies; and (3) the fact that Defendants' branded restaurants and other restaurants not associated with Defendants advertise job positions on various websites. [DN 60 at 2–4]. Plaintiffs, in turn, ask the Court to judicially notice two documents in support of their Opposition to Defendants' Motion to Dismiss—a statement from the AAI to the DOJ and two Papa John's delivery driver job postings. [DN 73].

The Court begins with Defendants' first request. Defendants ask the Court to take judicial notice of a DOJ Statement of Interest filed in three previous cases. [DN 60 at 2]. Defendants state that the document has been publicly filed in a case pending in federal court and is publicly available through PACER. [*Id.*]. Plaintiffs ask that the Court only take notice of the fact that the Statement was filed and its contents and not consider it for the truth or accuracy of the statements

therein. [DN 76 a 1]. Defendants reply that they are only asking for notice of the Statement "and, as appropriate, to give deference to the [DOJ's] analysis and guidance contained therein given the DOJ's status as the independent government agency tasked with enforcing the Sherman Act." [DN 84 at 2].

"[I]n order to preserve a party's right to a fair hearing, a court, on a motion to dismiss, must only take judicial notice of facts which are not subject to reasonable dispute." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005); *see also* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). As to the DOJ Statement of Interest, there is no dispute that the DOJ filed this document in three separate cases on behalf of the United States. To that extent, judicial notice is proper for such a document. "It is well-settled that '[f]ederal courts may take judicial notice of proceedings in other courts of record' . . . ." *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) (quoting *Granader v. Pub. Bank*, 417 F.2d 75, 82–83 (6th Cir. 1969), *cert. denied*, 397 U.S. 1065 (1970)). The Court will not, however, abdicate its duty to apply the law to the facts of this case by blindly deferring to the DOJ's analysis of distinct factual scenarios. Therefore, the Court will take judicial notice of the existence of the DOJ Statement of Interest and any information contained therein that is not subject to reasonable dispute.

Next, Defendants ask the Court to take notice of the fact that Papa John's franchise agreements are publicly filed with state agencies. [DN 60 at 2–3]. Defendants supply three links at which the franchise agreement is publicly available. It is indeed proper to take judicial notice of a document publicly available on the Internet. *See Ryan v. Tenn. Valley Auth*, 2015 WL 1962173, at *3 n.2 (E.D. Tenn. Apr. 30, 2015) ("The Court may take judicial notice of 'public

records and government documents available from reliable sources on the Internet.'") (quoting *U.S. ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003)). Plaintiffs list several problems with this request, but each of Plaintiffs' concerns is unfounded. The franchise agreements on each website are easily located and Minnesota's database notes that franchise documents from 2010 became available on May 24, 2011. While Plaintiffs are correct that Defendants have not shown that there was any means by which one could determine under which version of the franchise agreement any particular franchisee operated, the Court will not extrapolate to facts not contained within the four corners of the documents. The Court will do no more than that asked by Defendants: "take judicial notice of the fact that Papa John's franchise agreements have been publicly filed with these state agencies and are available on those state agencies' websites, and the fact that Papa John's franchise agreements have been available on the Minnesota Commerce Department's website since May 24, 2011." [DN 84 at 4].

Finally, Defendants ask the Court to judicially notice that Papa John's branded restaurants and non-Papa John's restaurants advertise job positions on various websites. [DN 60 at 3–4]. Plaintiffs respond that this fact is not appropriate for judicial notice because there is no indication "that all 3,441 Papa John's restaurants, including the 2,739 of them owned by independent franchise entities, . . . advertise identical job postings, and have done so at all times since January 1, 2010." [DN 76 at 3]. This is certainly true but does not change the fact that these documents may be properly judicially noticed. As above, these exhibits only provide the Court with the information contained therein—for example, that on March 28, 2019, seven of Defendants' restaurants posted job listings for delivery drivers. Again, the Court will not improperly generalize beyond the information included on the face of the documents.

The Court now turns to Plaintiffs' Motion for the Court to Take Judicial Notice concerning documents submitted in support of Plaintiffs' Response to the Motion to Dismiss. [DN 73]. Plaintiffs ask the Court to take judicial notice of two sets of documents: (1) a public letter from the AAI to the DOJ and (2) two job postings for Papa John's delivery drivers. [*Id.* at 1]. Defendants object to the Court taking notice of the AAI letter but, as to the job postings, request only that notice be circumscribed. [DN 86 at 1–3].

The Court first addresses the public letter from the AAI. As to this document, Plaintiffs request that the Court take notice of the contents and that the document was published on the Internet. [DN 73 at 1]. Defendants respond opposing judicial notice and argue that the letter "is nothing more than a legal argument made by a private pro-plaintiff organization with an agenda to push." [DN86 at 3]. That may very well be true but that fact does not render the letter ill-suited for judicial notice. The letter is published online by a reputable source and there is no reasonable dispute as to the content of said letter, making it appropriate for judicial notice. Defendants' objection appears to stem from the concern that the Court will, in its analysis, defer to the position of the AAI. As previously stated, the Court will not blindly assent to third party arguments. To be certain, the Court does not judicially notice the truth of the statements contained in the AAI letter—nor the documents submitted by Defendants—because some of these facts may remain in dispute.

As to the Papa John's delivery driver job postings, this is no different than Defendants' request for judicial notice of similar views of job postings. Again, Plaintiffs request that notice be taken of the contents of the postings and that the postings were published online. [DN 73 at 1]. As there is no reasonable dispute as to the existence or the content of the job postings, judicial notice is proper.

As with each document submitted by the parties for judicial notice, the Court's notice is limited: "a court may take notice of the documents and what they say, but it '[cannot] consider the statements contained in the document for the truth of the matter asserted.'" *Platt v. Bd. of Comm'rs on Grievs. & Discipline of the Ohio Supreme Court*, 894 F.3d 235, 245 (6th Cir. 2018) (quoting *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014). Based on the foregoing, Defendants' and Plaintiffs' Motions for the Court to Take Judicial Notice are **GRANTED**.

### C. Motion to Dismiss or Strike

#### 1. Sherman Antitrust Act

Section 1 of the Sherman Antitrust Act prohibits "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. The Clayton Act provides the enforcement mechanism— "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue . . . and shall recover threefold the damages by him sustained." 15 U.S.C. § 15. Such claims are subject to a four-year statute of limitations from the date "the cause of action accrued." *Z Techs Corp. v. Lubrizol Corp.*, 753 F.3d 594, 598 (6th Cir. 2014) (quoting 15 U.S.C. § 15(b)).

To state a plausible violation of Section 1, a plaintiff must allege "(1) an agreement between two or more economic entities, (2) an unreasonable restraint of trade, and (3) that the conspiracy caused . . . injury." *Downing v. Ford Motor Co.*, No. 13-1335, 2018 WL 4621955, at *2 (6th Cir. 2018). "[A]n antitrust plaintiff must also plead antitrust injury, 'which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.'" *Blanton v. Domino's Pizza Franchising LLC*, No. 18-13207, 2019

WL 2247731, at *4 (E.D. Mich. May 24, 2019) (quoting *Valley Prods. Co., Inc. v. Landmark, a Div. of Hospitality Franchise Sys., Inc.*, 128 F.3d 398, 402 (6th Cir. 1997)).

### a. An Agreement

Plaintiffs allege that Defendants conspired to not compete for labor among their franchisees. [DN 54 ¶ 76]. Plaintiffs point to several pieces of evidence in support of this contention: (1) the explicit contractual terms in the franchise agreement [*Id.* ¶ 63]; (2) that the agreement is otherwise against the franchisees' self-interest [*Id.* ¶ 71–75]; (3) that no franchisee would agree absent an assurance all others were held to the same terms [*Id.* ¶ 68]; and (4) that franchisees have numerous opportunities to conspire at annual meetings [*Id.* ¶ 84]. Defendants retort that the above allegations are "more consistent with the franchisees signing their franchise agreements containing the no-poach clause because it was necessary to do so to acquire a franchise than as a result of any franchise conspiracy." [DN 83 at 5–6]. "To plead unlawful agreement, a plaintiff may allege either an explicit agreement to restrain trade, or 'sufficient circumstantial evidence tending to exclude the possibility of independent conduct.'" *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 457 (6th Cir. 2011) (quoting *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 907 (6th Cir. 2009) (listing four circumstantial "plus factors" that can demonstrate "concerted action"), *cert. denied*, 562 U.S. 1134 (2011)). Such evidence must reasonably tend to prove that the defendants "had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984). Construing the CAC in the light most favorable to Plaintiffs, as is appropriate at this early stage, the Court is persuaded that they plausibly pled an agreement between economic entities.

### b. Unreasonable Restraint of Trade

Turning to the second element of a Sherman Act violation, Defendants maintain that under any of the standards of review associated with restraints of trade, Plaintiffs' CAC fails to state a claim. [DN 59-1 at 6–17]. Plaintiffs respond that the Court need not decide which test applies at this stage [DN 71 at 4–5], but that, analyzed under each, the No-Hire agreement is unreasonable. [*Id.* at 5–18].

The Supreme Court "has long recognized that, '[i]n view of the common law and the law in this country' when the Sherman Act was passed, the phrase 'restraint of trade' is best read to mean 'undue restraint.'" *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283 (2018) (quoting *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59-60 (1911)). Whether a restraint is undue or unreasonable is determined by one of three approaches—the *per se* rule, the "rule of reason," or the quick-look test. *Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 469 (6th Cir. 2005); *Care Heating & Cooling, Inc. v. Am. Standard, Inc.*, 427 F.3d 1008, 1012 (6th Cir. 2005); *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 770 (1999).

"A small group of restraints are unreasonable *per se* because they always or almost always tend to restrict competition and decrease output." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283 (2018). "Typically only 'horizontal' restraints—restraints imposed by agreement between competitors—qualify as unreasonable *per se*." *Id.* at 2283–84. The rule of reason, on the other hand, "requires courts to conduct a fact-specific assessment of market power and market structure to assess the restraint's actual effect on competition." *Id.* at 2284. Under that analysis, "[t]he goal is to 'distinguish between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest.'" *Id.* (quoting *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007). "Vertical restraints—i.e., restraints imposed by agreement between firms at different levels of distribution

[nearly always] should be assessed under the rule of reason." *Ogden v. Little Caesar Enters., Inc.*, No. 18-12792, 2019 WL 3425266, at *3 (E.D. Mich. July 29, 2019) (citing *Ohio*, 138 S. Ct. at 2284)). Finally, there is the quick look approach, which the Sixth Circuit recognizes as a "third type of category arising from the blurring of the line between *per se* and rule of reason cases." *In re Se. Milk Antitrust Litig.*, 739 F.3d 262, 274 (6th Cir. 2014). The rule is "used for situations in which 'an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets.'" *Id.* (quoting *Cal. Dental Ass'n*, 526 U.S. at 770)).

Plaintiffs claim that the Court need not resolve the applicable test at this time as it is a fact-laden determination. [DN 71 at 4–5]. Defendants, taking aim at the caselaw cited in support of this argument, disagree with that position and submit the case of *Ogden v. Little Caesar Enters., Inc.*, as supplemental authority. [DN 88; DN 88-1]. *Ogden*, decided on July 29, 2019, is indeed instructive. Therein, the Eastern District of Michigan decided that the plaintiff's request for the court to postpone selection of a standard of review was unavailing. *Ogden*, 2019 WL 3425266, at *4. However, the case is distinguishable. In *Ogden*, the plaintiff "pointedly resist[ed]" the application of the rule of reason test. *Id.* That being the case, the court explained that it need not defer selecting the appropriate rule. *Id.* ("The plaintiff himself has tethered the viability of his pleading to the application of either the *per se* or 'quick look' rules of decision, which are more amenable to analysis at the pleading stage."). Here, the Plaintiffs do no such thing. In fact, Plaintiffs adamantly maintain that the CAC sufficiently states a claim under the rule of reason standard in addition to the *per se* and quick look tests. [DN 71 at 17–18]. Accordingly, the Court examines each standard to determine whether Plaintiffs plausibly allege an unreasonable restraint of trade.

Plaintiffs say that the No-Hire provision is a *per se* violation of the Sherman Act—it operates as a "market allocation agreement, a category of restraint long held to be *per se* unlawful under the antitrust laws." [DN 54 ¶ 1]. As discussed above, "[t]he less common method of determining whether [a] restraint is unreasonable is the *per se* rule." *In re Se. Milk Antitrust Litig.*, 739 F.3d 262, 271 (6th Cir. 2014). Plaintiffs plausibly pled and proceed to argue in their Response to the Motion to Dismiss that the provision restrains horizontal competitors for labor. [DN 54 ¶ 29; DN 71 at 6–8]. Such agreements "are so clearly unreasonable that their anticompetitive effects within geographic and product markets are inferred." *Se. Milk*, 739 F.3d at 270 (citing *Expert Masonry, Inc. v. Boone Cnty., Ky.*, 440 F.3d 336, 342 (6th Cir. 2006)).

In the alternative, Plaintiffs suggest that the No-Hire provision is illegal under the quick-look approach. They maintain that even a person with a rudimentary understanding of economics would recognize the agreement not to hire each other's employees to be detrimental to competitive markets for labor. [DN 54 at 15–17]; *see also Deslandes v. McDonald's USA, LLC*, No. 17 C 4857, 2018 WL 3105955, at *7 (N.D. Ill. June 25, 2018). Defendants oppose application of the quick look test and instead urge the Court to apply the rule of reason and dismiss Plaintiffs' case.

In contrast to *Ogden*, the Plaintiffs here maintain that even under the rule of reason test they have stated a claim that the No-Hire provision operates as an unreasonable restraint of trade. [DN 54 at 17–18]. Defendants retort that because the CAC contains no allegation of a relevant product and geographic market or market power—necessary allegations for application of the rule of reason—Plaintiffs fail to state a rule of reason claim. [DN 83 at 10]. Central to this argument is their claim that such allegations are necessary to state a claim of unreasonable restraint under the rule of reason test. To determine whether a restraint violates the rule of reason, there is a three-

step, burden shifting framework. *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018). According to this framework,

> the plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market. If the plaintiff carries its burden, then the burden shifts to the defendant to show a procompetitive rationale for the restraint. If the defendant makes this showing, then the burden shifts back to the plaintiff to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means.

*Id.* (internal citations omitted). Defendants here claim that Plaintiffs' failure to allege a relevant market is fatal to the initial showing of an unreasonable restraint of trade under the rule of reason standard.

To satisfy the initial burden, a plaintiff can show direct or indirect evidence. *Id.* "Direct evidence of anticompetitive effects would be 'proof of actual detrimental effects [on competition],' such as reduced output, increased prices, or decreased quality in the relevant market." *Id.* (quoting *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 460 (1986)). Indirect evidence, on the other hand, "would be proof of market power plus some evidence that the challenged restraint harms competition." *Id.*

Here, Plaintiffs rely exclusively on direct evidence to prove that Defendants' No-Hire provision has caused anticompetitive effects in the labor market—suppression of wages and decreased job mobility. [DN 54 ¶¶ 16–18]. Plaintiffs rely on *Ohio v. Am. Express Co.* for the proposition that they need not define the relevant market because they offer actual evidence of adverse effects on competition. [DN 71 at 17]. In that case, the Supreme Court indirectly stated that, when dealing with a horizontal restraint that has an adverse effect on competition, a plaintiff need not define the relevant market. *Ohio*, 138 S. Ct. 2274, 2285, n.7; *see also Ind. Fed'n of Dentists*, 476 U.S. at 460–61 ("Since the purpose of the inquiries into market definition and market power is to determine whether an arrangement has the potential for genuine adverse effects on

18

competition, proof of actual detrimental effects . . . can obviate the need for an inquiry into market power, which is but a surrogate for detrimental effects.") (internal quotation marks omitted). Defendants respond that because this case involves vertical agreements, Plaintiffs' reliance on *Ohio* is misplaced. The Court disagrees. Plaintiffs have set forth factual allegations sufficient from which the Court could plausibly conclude that the agreements at issue are horizontal.

As in *Blanton v. Domino's Pizza Franchising LLC*, "[t]he Court declines to announce a rule of analysis at this juncture." No. 18-13207, 2019 WL 2247731, at *4 (E.D. Mich. May 24, 2019). Plaintiffs do no tether the viability of their claim to any one rule. Accordingly, more factual development is necessary before a standard of review is selected.

### c. Antitrust Injury

Plaintiffs also sufficiently plead antitrust injury. Plaintiffs contend that the No-Hire provision is an agreement not to compete for labor and that the agreement had the purpose and effect of depressing wages and diminishing employment opportunities. Courts within the Sixth Circuit have found such allegations sufficient to satisfy the antitrust injury requirement. *See Id.* (quoting *Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 544 (10th Cir. 1995) ("The relevant cases hold that plaintiffs whose opportunities in the employment market have been impaired by an anticompetitive agreement directed at them as a particular segment of employees have suffered an antitrust injury under the governing standard.")). Consequently, Plaintiffs allege facts sufficient to satisfy the antitrust injury requirement of an antitrust claim.

For the foregoing reasons, the Court finds that Plaintiffs plausibly allege that Defendants violated the Sherman Antitrust Act. *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010) ("The case is just at the complaint stage and the test for whether to dismiss a case

at that stage turns on the complaint's 'plausibility.'").  Accordingly, Defendants' Motion to Dismiss is **DENIED**.

### 2.  Fraudulent Concealment

Plaintiffs seek to represent a class of plaintiffs that goes beyond the normal statutory period for antitrust claims—they claim that the statute should be tolled because Defendants fraudulently concealed the existence of the No-Hire agreement.  [DN 54 ¶¶ 107–122].  Defendants argue that the Court should strike Plaintiffs' fraudulent concealment allegations as Plaintiffs failed to plead with particularity each of the necessary elements of such a claim.  [DN 59-1 at 17–21]. Specifically, Defendants assert that they could not have wrongfully concealed the No-Hire agreement because it was publicly available, that Plaintiffs failed to plead that acts of concealment prevented them from discovering a claim, and that Plaintiffs failed to plead facts to show that they exercised due diligence to discover their claims.  [*Id.*].

Defendants are correct, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To state a claim of fraudulent concealment, a plaintiff must plead: "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts."  *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975).  Critical to the resolution of this issue, the Eastern District of Michigan noted in *Blanton* that "[t]he requirement of diligence is only meaningful . . . when facts exist that would excite the inquiry of a reasonable person."  *Blanton v. Domino's Pizza Franchising LLC*, No. 18-13207, 2019 WL 2247731, at *6 (E.D. Mich. May 24, 2019) (quoting *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 504 (9th Cir. 1988)).

As to the first requirement, Plaintiffs argue that Defendants made public statements that concealed "the fact that [they] orchestrated and engaged in a No-Hire agreement . . . ."  [DN 54 ¶¶ 109–14].  More particularly, Plaintiffs claim that Defendants publicly maintained the position that each franchisee had full control over employment decisions including "hiring, termination, pay practices and any other employment practices."  [*Id.* ¶ 113].  Further, Plaintiffs allege that Defendants publicly stated that employees could transition from a team member into a management position during their employment with Defendants.  [*Id.* ¶ 111].  Defendants are correct—generally, fraudulent concealment requires affirmative acts of concealment.  *Pinney Dock & Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1471 (6th Cir.), *cert. denied*, 488 U.S. 880 (1988).  "Concealment by mere silence is not enough.  There must be some trick or contrivance intended to exclude suspicion and prevent inquiry."  *Id.* at 1467 (internal quotation marks omitted).  The Plaintiffs have shown just that.  Defendants publicly represented that each franchisee had complete control over all hiring practices and those false statements fostered a misimpression on Plaintiffs' behalf that Defendants had no inter-franchise constraints on their hiring and employment practices.

Defendants further argue that Plaintiffs failed to exercise due diligence to discover their alleged claims.  [DN 59-1 at 20–21].  The agreement, while publicly available, was only available through third-party websites—California's Department of Business Oversight, Minnesota's Commerce Department, and Wisconsin's Department of Financial Institutions.  [*Id.* at 19].  As previously mentioned, the diligence requirement is only meaningful when individuals would have reason to know of the records' existence.  *See Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975) ("Any fact that should excite his suspicion is the same as actual knowledge of his entire claim."); *see also Ruth v. Unifund CCR Partners*, 604 F.3d 908, 911 (6th

Cir. 2010) (concluding that the "mere availability of open and readily accessible public records may not suffice by itself to defeat a fraudulent concealment claim" where a plaintiff does not have "ample reason" to look at those records). Based on the obscurity of the publication of the franchise agreements, the further obscurity of the No-Hire agreement within the franchise agreements, and the fact that Plaintiffs had no reason to look for or read their employer's franchise agreement, the Court does not believe facts exist at this stage to conclude that a reasonable person's interest would be piqued. [DN 54 ¶¶ 115–119]; *see Campbell v. Upjohn Co.*, 676 F.2d 1122, 1128 (6th Cir. 1982) ("Actions such as would deceive a reasonably diligent plaintiff will toll the statute; but those plaintiffs who delay unreasonably in investigating circumstances that should put them on notice will be foreclosed from filing, once the statute has run.").

The Court is satisfied that the CAC alleges all of the required elements of fraudulent concealment sufficient to survive Defendants' Motion. Defendants' Motion to Strike Plaintiffs' fraudulent concealment allegations is **DENIED**.

### 3. Motion to Strike Class Allegations

Finally, Defendants Move to Strike Plaintiffs' class allegations. [DN 59 at 2–3; DN 59-1 at 21–25]. Specifically, Defendants argue that Plaintiffs' proposed class is overbroad and, as a result, cannot satisfy the predominance requirement of Federal Rule of Civil Procedure 23(b)(3). [DN 59-1 at 22–25]. Defendants ask the Court to strike Plaintiffs' class allegations before discovery begins because discovery will not alter the central defect in their class claim. [*Id.* at 21–22].

Federal Rule of Civil Procedure 23 governs class actions in federal court. To certify a class, a plaintiff must satisfy two sets of requirements: "(1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of class actions provided for by Rule

23(b)." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945–46 (6th Cir. 2011). "Certification is only proper if, after a 'rigorous analysis,' a court finds that all the prerequisites of Rule 23 have been satisfied." *Modern Holdings, LLC v. Corning Inc.*, No. 13-405, 2015 WL 1481459, at *2 (E.D. Ky. Mar. 31, 2015) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1078–79 (6th Cir. 1996).

Defendants ask the Court to strike the class allegations at this stage, before discovery has been conducted. [DN 59-1 at 21–22]. "Though procedurally permissible, striking a plaintiff's class allegations prior to discovery and a motion for class certification is a rare remedy." *Id.* (collecting cases). At this early stage, Defendants bear the burden of demonstrating from the face of the CAC that it will be impossible to certify the class as alleged, "regardless of the facts plaintiffs may be able to prove [through discovery.]" *Id.* (internal quotation marks omitted). *See also Healey v. Jefferson Cnty. Ky. Louisville Metro Gov't*, No. 3:17-CV-71, 2018 WL 1542142, at *2 (W.D. Ky. Mar. 29, 2018); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (designating the standard as whether "it is facially apparent from the pleadings that there is no ascertainable class").

Plaintiffs seek to represent a class consisting of "[a]ll persons who were employed at a Papa John's restaurant location in the United States between January 1, 2010 through the present." [DN 54 ¶ 99]. It is unclear from Defendants' filings which requirements of class certification they are attacking. Defendants seem to be arguing that Plaintiffs cannot satisfy the commonality requirement of Rule 23(a)(2) nor the predominance requirement of Rule 23(b)(3). The difference between these two requirements is that Rule 23(a)(2) mandates that even a single common question exist whereas Rule 23(b)(3) more stringently requires that common questions predominate.

As to commonality, the Supreme Court held in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), that Rule 23(a)(2) demands proof that the proposed class members have suffered the same injury. Plaintiffs satisfy this showing. They correctly note that the proposed class is "congruent with Papa John's No-Hire Agreement, which applies to *all* Papa John's employees." [DN 71 at 24 (citing DN 54 ¶ 6); DN 54 at 28–29]. Further, it appears from the face of the CAC that a class-wide proceeding would provide common answers to the issues raised by Plaintiffs. *Dukes*, 564 U.S. at 350. Based on the allegations contained in the CAC, the Court is persuaded that the commonality requirement of Rule 23(a)(2) is satisfied at this early stage.

Turning to predominance, parties seeking class recognition must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Here, there is a common cause of injury—the No-Hire provision of the franchise agreement. That common cause resulted in similar types of harm—depressed wages and benefits and lack of employment opportunities. It preliminarily appears that this is not the type of action which, in practice, will result in multiple lawsuits separately tried. Consequently, Plaintiffs also satisfy the predominance requirement of Rule 23(b)(3).

The Court is persuaded that Plaintiffs' CAC alleges the requisite elements of a class certification sufficient to defeat Defendants' Motion to Strike at this stage. *See Burton v. D.C.*, 277 F.R.D. 224, 230 (D.D.C. 2011) ("*Wal-Mart* confirms that pre-certification discovery should ordinarily be available where a plaintiff has alleged a potentially viable class claim . . . .") (citing *Dukes*, 564 U.S. at 351). After discovery, Plaintiffs may or may not be able to establish the necessary connection between Defendants' conduct and the proposed class boundaries. However, with only the CAC currently before the Court, "resolution of the certification issue would be inappropriate at this stage." *Modern Holdings, LLC v. Corning Inc.*, No. 13-405, 2015 WL

1481459, at \*7 (E.D. Ky. Mar. 31, 2015). Defendants' Motion to Strike the Plaintiffs' class allegations is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion to Compel Arbitration [DN 58] is **GRANTED**, Motion to Dismiss, or in the Alternative, to Strike [DN 59] is **DENIED**, and Motion for the Court to Take Judicial Notice [DN 60] is **GRANTED**. Further, Plaintiffs' Motion for the Court to Take Judicial Notice [DN 73] is **GRANTED**.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

October 21, 2019

cc: counsel of record