**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| IN RE: PAPA JOHN'S EMPLOYEE AND FRANCHISEE EMPLOYEE ANTITRUST LITIGATION | Case No.: 3:18-cv-00825-BB-RSE |

## PLAINTIFF'S UNOPPOSED MOTION FOR AND MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE TO THE PROPOSED SETTLEMENT CLASS

<u>**TABLE OF CONTENTS**</u>

<u>Page</u>

I.     INTRODUCTION ............................................................................. 1

II.    STATEMENT OF FACTS ................................................................ 2

     A.    Procedural Background.......................................................... 2

     B.    Terms of the Settlement ....................................................... 4

     C.    Notice Plan ........................................................................... 5

III.   LEGAL STANDARD FOR SETTLEMENT APPROVAL ................................. 6

IV.   ARGUMENT .................................................................................. 8

     A.    The Proposed Settlement Is Fair, Reasonable, and Adequate ................. 8

     B.    The Proposed Notice Program Satisfies Rule 23 .................................... 17

     C.    Provisional Certification of the Settlement Class Is Appropriate ........... 19

     D.    The Court Should Appoint Plaintiff's Counsel as Class Counsel .......... 24

     E.    The Proposed Schedule for Notice and Final Approval ....................... 25

V.    CONCLUSION ............................................................................... 25

CERTIFICATE OF SERVICE ..................................................................... 29

**TABLE OF AUTHORITIES**

Page

**Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..........................................................................................19, 23

*Amgen Inc. v. Conn. Ret. Plans & Tr. Fund,*
    568 U.S. 455 (2013)........................................................................................... 23

*Beattie v. CenturyTel, Inc.,*
    511 F.3d 554 (6th Cir. 2007) ...........................................................................21, 24

*Bert v. AK Steel Corp.,*
    No. 02-cv-467, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ............................. 10

*Brent v. Midland Funding, LLC,*
    No. 3:11 CV 1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011) ....................... 14

*Cates v. Cooper Tire & Rubber Co.,*
    253 F.R.D. 422 (N.D. Ohio 2008) ........................................................................ 21

*Conrad v. Jimmy John's Franchise, LLC,*
    No. 18-CV-00133-NJR, 2021 WL 3268339 (S.D. Ill. July 30, 2021)..................3, 13

*Crawford v. Lexington-Fayette Urban Cnty. Gov't,*
    Civ. A. No. 06-299-JBC, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008)................. 14

*Daffin v. Ford Motor Co.,*
    458 F.3d 549 (6th Cir. 2006) ............................................................................... 20

*Daoust v. Maru Rest., LLC,*
    2019 WL 2866490 (E.D. Mich. July 3, 2019) ...................................................... 17

*Deslandes v. McDonald's USA, LLC,*
    No. 17 C 4857, 2021 WL 3187668 (N.D. Ill. July 28, 2021) ..............................3, 13

*Deslandes v. McDonald's USA, LLC,*
    No. 17 C 4857, 2022 WL 2316187 (N.D. Ill. June 28, 2022) ............................... 13

*Dick v. Sprint Commc'ns Co. L.P.,*
    297 F.R.D. 283 (W.D. Ky. 2014)........................................................................... 16

*Donaway v. Rohm & Haas Co.,*
    No. 3:06-CV-575-H, 2009 WL 1917083 (W.D. Ky. July 1, 2009) ........................ 12

*Elliott v. LVNV Funding, LLC,*
    No. 3:16-CV-00675-RGJ, 2019 WL 4007219 (W.D. Ky. Aug. 23, 2019)...........9, 14

*Fidel v. Farley,*
    534 F.3d 508 (6th Cir. 2008) ............................................................................10, 18

*Garner Props. & Mgmt., LLC v. City of Inkster,*
    333 F.R.D. 614 (E.D. Mich. 2020) ....................................................................... 21

*Gascho v. Glob. Fitness Holdings, LLC,*
    822 F.3d 269 (6th Cir. 2016) .............................................................................13, 14

*Green v. Platinum Rests. Mid-Am. LLC,*
    No. 3:14-CV-439, 2022 WL 1240432 (W.D. Ky. Apr. 27, 2022).......................... 6, 9

*Greer v. Papa John's Int'l, Inc.,*
    No. 3:19-cv-00025-RGJ (S.D.N.Y. Dec. 4, 2018).................................................. 2

*Hicks v. State Farm Fire & Cas. Co.,*
    No. 0:14-CV-053-HRW-MAS, 2021 WL 8269349 (E.D. Ky. Nov. 8, 2021), *report &*
    *recommendation adopted,* No. 14-CV-00053, 2021 WL 5507032 (E.D. Ky. Nov. 24, 2021). 14

# TABLE OF AUTHORITIES
## (Cont'd)

Page

*Houston v. Papa John's Int'l, Inc.*,
No. 3:18-cv-00825-JHM-RSE (W.D. Ky. Dec. 14, 2018) ........................................................ 2

*In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (Flsa) & Wage & Hour Litig.*,
No. 3:14-CV-290-DJH, 2016 WL 9558953 (W.D. Ky. Oct. 31, 2016) ............................ 20, 21

*In re Auto. Parts Antitrust Litig. (In re Wire Harness Cases)*,
No. 2:12-cv-00101, 2017 WL 469734 (E.D. Mich. Jan. 4, 2017) .......................................... 19

*In re Auto. Parts Antitrust Litig.*,
No. 12-MD-02311, 2020 WL 12443038 (E.D. Mich. Aug. 14, 2020) .................................... 15

*In re Cardinal Health Inc. Sec. Litigs.*,
528 F. Supp. 2d 752 (S.D. Ohio 2007) .................................................................................. 16

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ......................................................................................... 9

*In re Cmty. Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005) .................................................................................................. 11

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) .................... 16, 18, 22, 23

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
726 F.2d 1075 (6th Cir. 1984) ............................................................................................... 11

*In re High-Tech Emp. Antitrust Litig.*,
No. 11-cv-02509-LHK, 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ................................... 15

*In re Nat'l Prescription Opiate Litig.*,
976 F.3d 664 (6th Cir. 2020) ................................................................................................. 20

*In re Packaged Ice Antitrust Litig.*,
No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) .................................... 12

*In re Se. Milk Antitrust Litig.*,
No. 2:07–CV–208, 2013 WL 2155379 (E.D. Tenn. May 17, 2013) ....................................... 10

*In re Skechers Toning Shoe Prods. Liab. Litig.*,
No. 3:11-MD-2308-TBR, 2012 WL 3312668 (W.D. Ky. Aug. 13, 2012) ..................... 8, 17, 22

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
No. 2:12-CV-83, 2014 WL 2946459 (E.D. Tenn. June 30, 2014) ......................................... 13

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) .................................................................................. 10

*In re Titanium Dioxide Antitrust Litig.*,
284 F.R.D. 328 (D. Md. 2012), *amended*, 962 F. Sup. 2d 840 (D. Md. 2013) .................. 20, 21

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) .......................................................................................... 8, 20

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) ................................................................................ 7, 8, 11, 19

*Lienhart v. Dryvit Sys., Inc.*,
255 F.3d 138 (4th Cir. 2001) ................................................................................................. 21

*Love v. Gannett Co. Inc.*,
No. 3:19-cv-296-BJB-RSE, 2021 WL 4352800 (W.D. Ky. Sept. 24, 2021) ............... 10, 13, 17

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226 (E.D. Mich. 2016) ........................................................................................ 12

**TABLE OF AUTHORITIES**
**(Cont'd)**

Page

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
    234 F.R.D. 627 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008)
    ................................................................................................................................. 10
*Page v. Papa John's Int'l, Inc.*,
    No. 3:18-cv-835-CHB (W.D. Ky. Dec. 18, 2018) ....................................................... 2
*Powers v. Hamilton Cnty. Pub. Defender Comm'n*,
    501 F.3d 592 (6th Cir. 2007) ...................................................................................... 21
*Rawlings v. Prudential-Bache Props., Inc.*,
    9 F.3d 513 (6th Cir. 1993) .......................................................................................... 16
*Rikos v. P&G*,
    799 F.3d 497 (6th Cir. 2015) ...................................................................................... 21
*Rose v. Bank of Am. Corp.*,
    No. 5:11-cv-02390, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ........................... 12
*Seaman v. Duke Univ.*,
    No. 1:15-cv-462, 2018 WL 671239 (M.D.N.C. Feb. 1, 2018) ........................... 21, 23
*Seaman v. Duke Univ.*,
    No. 1:15-cv-462, 2019 WL 13193731 (M.D.N.C. Sept. 24, 2019) ........................... 15
*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
    833 F. App'x 430 (6th Cir. 2021) ............................................................................... 17
*Sheick v. Auto. Component Carrier, LLC*,
    No. 09-14429, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ..................................... 8
*Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*,
    No. 3:13-CV-00489, 2015 WL 1976398 (W.D. Ky. May 4, 2015) ........................... 16
*Sterling v. Velsicol Chem. Corp.*,
    855 F.2d 1188 (6th Cir. 1988) .................................................................................... 21
*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011).......................................................................................... 12
*UAW v. Gen. Motors Corp.*,
    No. 05-CV-73991-DT, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006), *aff'd* 497 F.3d 615 6th
    Cir. 2007) ..................................................................................................................... 11
*Van Horn v. Nationwide Prop. & Cas. Inc. Co.*,
    436 F. App'x 496 (6th Cir. 2011) ............................................................................... 16
*Vasco v. Power Home Remodeling Grp. LLC*,
    Civ. A. No. 15-4623, 2016 WL 5930876 (E.D. Pa. Oct. 12, 2016)........................... 12
*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................................................... 20
*Ware v. CKF Enters., Inc.*,
    No. CV 5:19-183-DCR, 2020 WL 2441415 (E.D. Ky. May 12, 2020)....................... 7
*Wilson v. Anthem Health Plans of Ky., Inc.*,
    No. 3:14-CV-743, 2019 WL 6898662 (W.D. Ky. Dec. 18, 2019) ........................... 16
*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) ...................................................................................... 22

**Rules**
Fed. R. Civ. P. 23(a)(1)........................................................................................................ 20

# TABLE OF AUTHORITIES
## (Cont'd)

Page

Fed. R. Civ. P. 23(a)(4) ........................................................................................... 22
Fed. R. Civ. P. 23(b)(3) ........................................................................................... 22
Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................... 18
Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii) .......................................................................... 19
Fed. R. Civ. P. 23(e) ........................................................................................... 6, 16
Fed. R. Civ. P. 23(e)(1)(B) ................................................................................. 7, 17
Fed. R. Civ. P. 23(e)(1)(B)(ii) ............................................................................ 8, 19
Fed. R. Civ. P. 23(e)(2) .............................................................................................. 7
Fed. R. Civ. P. 23(e)(2)(B) ....................................................................................... 10
Fed. R. Civ. P. 23(e)(2)(C) ....................................................................................... 11
Fed. R. Civ. P. 23(g)(1) ............................................................................................ 24
Fed. R. Civ. P. 23(g)(1)(A) ...................................................................................... 24
Fed. R. Civ. P. 23(g)(3) ............................................................................................ 24

**Treatises**

1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.10 (4th ed. 2002) ............ 20
4 William B. Rubenstein, *Newberg on Class Actions* § 13:44 (5th ed. 2014) ............................... 7
David F. Herr, *Annotated Manual for Complex Litigation (Fourth)* § 21.662 (2012) .................. 8
*Manual for Complex Litigation* ¶ 21.632 (4th ed. 2004) ......................................................... 6, 19

## I.      **INTRODUCTION**

Plaintiff Ashley Page ("Plaintiff," "Class Representative," or "Ms. Page") and Defendants Papa John's International, Inc. and Papa John's USA, Inc. ("Defendants" or "Papa John's") (together, the "Parties") have reached a proposed settlement ("Settlement") to resolve the individual and class claims alleged in the Consolidated Amended Complaint ("CAC"), ECF No. 54.  Papa John's has agreed to pay $5 million to create a non-reversionary Gross Settlement Fund for the benefit of the proposed class of individuals who were employed at Papa John's-branded restaurants located in the United States, whether owned by Defendants or a Papa John's franchisee, from December 18, 2014 through December 31, 2021 ("Class Period") and who received more than $200 in compensation during that time period (the "Class").  The Gross Settlement Fund will also cover administrative costs, Plaintiff's Counsel's attorneys' fees and expenses, and any service award for Ms. Page.  In addition, Papa John's will implement significant injunctive relief in the form of antitrust compliance training for Defendants' Vice Presidents and domestic executives above that level, a renewed statement of its commitment not to enforce any existing no-poach provision under any circumstance, and an assurance that it will not include a no-poach or no-hire provision in any new franchise agreement for the next five years.  The Settlement is fair, reasonable, and adequate in light of the relief it provides to Plaintiff and the Class and the risks of continued litigation.

Ms. Page respectfully requests that the Court preliminarily approve the Settlement, find that it will likely certify the proposed Settlement Class, direct notice to the proposed Class pursuant to Federal Rule of Civil Procedure 23(e)(1), appoint Lieff Cabraser Heimann & Bernstein, LLP, Scott+Scott Attorneys at Law LLP, McCune Wright Arevalo, LLP, and Lowey Dannenberg, P.C. as Settlement Class Counsel, and set a hearing for final approval.

## II.   STATEMENT OF FACTS

### A.   Procedural Background

Plaintiffs Jay Houston, Ashley Page, and Jamiah Greer filed their respective class action complaints against Papa John's in December 2018.[1]  On February 19, 2019, Plaintiffs filed a Consolidated Amended Complaint ("CAC") in which they alleged that Defendants violated the Sherman Antitrust Act by "orchestrat[ing] an agreement between and among Papa John's restaurant franchisees, pursuant to which the franchisees agreed not to hire or solicit each other's employees or Papa John's employees."  CAC ¶ 1.  Because of this allegedly unlawful agreement (the "No-Poach Agreement"), Plaintiffs alleged that they suffered depressed wages and benefits and diminished employment opportunities.  *Id.* ¶ 2.

On October 21, 2019, the Court denied, in part, Defendants' motion to dismiss.  ECF No. 90 ("MTD Order") at 1.  The Court found, among other things, that Plaintiffs had plausibly alleged an agreement between economic entities, the agreement constituted an unreasonable restraint of trade, and Plaintiffs had suffered antitrust injury.  *Id.* at 14-20.  The Court further found that it was premature to strike Plaintiffs' class action allegations.[2]  *Id.* at 20-24.  On May 11, 2020, Magistrate Judge Regina S. Edwards directed the Parties to discuss settlement.  Decl. of Lin Y. Chan ISO Mot. for Prelim. Approv. ("Chan Decl.") ¶ 5; ECF No. 120.  Those discussions, however, were initially unsuccessful.  Chan Decl. ¶ 5.

---

[1] *Greer v. Papa John's Int'l, Inc.*, No. 3:19-cv-00025-RGJ (S.D.N.Y. Dec. 4, 2018), ECF No. 1; *Houston v. Papa John's Int'l, Inc.*, No. 3:18-cv-00825-JHM-RSE (W.D. Ky. Dec. 14, 2018), ECF No. 1; *Page v. Papa John's Int'l, Inc.*, No. 3:18-cv-835-CHB (W.D. Ky. Dec. 18, 2018), ECF No. 1.

[2] In addition, the Court granted Defendants' motion to compel named plaintiff Jamiah Greer's claims to arbitration and Defendants' motions for the court to take judicial notice. MTD Order at 5-14.  On July 22, 2021, the Court dismissed plaintiff Jay Houston as a named representative and dismissed his claim without prejudice.  ECF No. 174.  Accordingly, hereinafter this brief refers only to Plaintiff Ashley Page except where describing the number of documents produced by all Plaintiffs.

Thereafter, the Parties engaged in discovery and held extensive discovery meet-and-confers. *Id.* ¶ 6. Defendants produced over 400,000 pages of documents and extensive compensation data,[3] which Plaintiff's Counsel analyzed with the help of prominent economic experts. *Id.* ¶ 7. Plaintiffs produced over 7,000 documents, and the Parties collectively took ten depositions, including Plaintiff Page's deposition. *Id.* ¶ 8.

During discovery, two courts denied class certification in no-poach franchise cases involving the fast food industry, *Deslandes v. McDonald's USA, LLC*, No. 17 C 4857, 2021 WL 3187668 (N.D. Ill. July 28, 2021), and *Conrad v. Jimmy John's Franchise, LLC*, No. 18-CV-00133-NJR, 2021 WL 3268339 (S.D. Ill. July 30, 2021). The Parties agreed to explore settlement and engaged in extensive, arm's-length negotiations facilitated by JAMS mediator Barbara Reeves, including a full-day mediation held in California on February 10, 2022, a follow-up video-conference mediation session on March 4, 2022, and multiple follow-up phone calls with Ms. Reeves. Chan Decl. ¶ 12. Both sides were represented by experienced and highly-skilled counsel in the area of class action litigation, had substantial documentary evidence at their disposal enabling them to be well-informed of the facts, and were cognizant of their respective strengths and weaknesses and the substantial risks, delays, and expense of ongoing class action litigation. *Id.* ¶ 13. Over the next four months, the Parties negotiated at length over the specific terms of the deal, including but not limited to the ultimate monetary amount to be distributed to the Class, the form of notice, and the nature of the injunctive relief. *Id.* ¶ 15. The Settlement was executed on July 11, 2022. *Id.* ¶ 17.

---

[3] Defendants produced over 18,000,000 records of employee data from PeopleSoft (the system that contains employee data for corporate-owned stores and some franchisee-owned stores); over 6,650,000 records from the applicant tracking systems Defendants used; and over 376,000,000 records of Polling Data drawn from Defendants' point of sale system. Further Joint Status Report at 2 (July 7, 2021), ECF No. 165.

B.     **Terms of the Settlement**

Cash Payout and Injunctive Relief.  Papa John's will pay $5 million into a Gross

Settlement Fund, to be administered by the Claims Administrator.  Chan Decl., Ex. A

("Settlement") ¶¶ 4.1, 4.3.  The Gross Settlement Fund will cover the approved Settlement

payments to Class Members (the "Net Settlement Fund") and, contingent upon Court approval,

administrative costs, Plaintiff's Counsel's attorneys' fees and expenses, and any service award

for Ms. Page.  *Id.* ¶ 1.20.  From the Net Settlement Fund, the recovery of each approved claimant

will be calculated in approximate proportion to their alleged harm, i.e., accounting for tenure and

wages earned.  *See id.* ¶ 4.6.  In light of the Court's ruling to compel former named plaintiff

Jamiah Greer's claim to arbitration, the Settlement provides for a seventy-five percent (75%)

legal discount on any claim made by a Class Member who signed an arbitration agreement.  *Id.* ¶

4.6(e).  In addition, the Settlement includes meaningful injunctive relief.  Papa John's will train

their domestic Vice Presidents and domestic executives above that level on antitrust compliance,

email their franchisees reiterating Defendants' commitment not to enforce any no-poach

provision under any circumstances, and commit not to include a no-poach provision in any

franchise agreement for the next five years.  *Id.* ¶ 5.

Release.  The Settlement releases Class Members' claims[4] against Papa John's "that are

alleged in the Action or that arose out of or relate to the facts, transactions, occurrences, events,

or omissions alleged in the Action, including but not limited to any and all claims, known and

unknown for (i) violation of the Sherman Antitrust Act and (ii) wage suppression related to the

No-Poach Provision contained in the Papa John's franchise agreement."  *Id.* ¶ 12.1.

Opt-Out Period and Objections.  Class Members may opt out of the Class by submitting a

---

[4] The Settlement also provides for a more general release of Ms. Page's claims in exchange for
Defendants' payment of her service award, as determined by the Court.  *See* Settlement ¶ 11.

written request for exclusion to the Claims Administrator up to 100 days following the Preliminary Approval Date. *Id.* ¶¶ 7.1, 7.2, 1.6. Class Members can also object to the Settlement in writing no later than 100 days following the Preliminary Approval Date, following the protocol delineated in the Settlement Agreement. *Id.* ¶¶ 6.10, 1.6.

Attorneys' Fees and Costs. Plaintiff's Counsel will request no more than 25% of the Gross Settlement Fund in attorneys' fees and costs expended. *Id.* ¶ 10.1.

Claims Administrator. The Settlement provides that the costs of notice and administration shall be paid from the Gross Settlement Fund. *Id.* ¶ 8.3. Ms. Page proposes A.B. Data, a leading claims administrator. This recommendation follows a competitive bidding process that included three competing bids. Chan Decl. ¶ 24. A.B. Data estimates a total cost of approximately $250,000 to $300,000 to administer the Settlement. *Id.* ¶ 25.

Service Award. Ms. Page will seek a modest service award of no more than $5,000 to compensate her for her contributions to the action and the risks she undertook in filing this case. Settlement ¶¶ 1.30, 9.1. Ms. Page engaged in written responses to interrogatories, searched for and produced documents, and traveled out of state to sit for a deposition. Chan Decl. ¶¶ 35-36.

### C.    **Notice Plan**

The Parties propose Class Members be advised of the proposed Settlement through direct individual notice (email or postcard). *Id.* ¶ 6.2. After Defendants provide available information for each Class Member (e.g., first and last names, social security numbers, and last-known home addresses), the Claims Administrator will engage a credit reporting agency or similar service to locate email addresses for Class Members.[5] *Id.* Plaintiff's Counsel and Defendants' Counsel will work together to develop the content of an email notice that the Claims Administrator will

---

[5] Defendants have represented that they do not have email addresses in their data, and any email addresses must be obtained through the use of a credit reporting agency. Chan Decl. ¶ 29.

distribute to Class Members. *Id.* The email will include Notice of the Class Action Settlement, a link to a website containing information about the Settlement Agreement (including the long form notice of the Settlement Agreement, the operative complaint, and the preliminary and final approval motions when available) and the ability to fill out a Claim Form. *Id.* The website will also display a toll-free number that Class Members can call with questions about the Settlement or their eligibility to receive a monetary payment. *Id.*

To the extent that the Claims Administrator is unable to locate working email addresses for any Class Members, the Claims Administrator will use the last known addresses available for any Class Members who did not receive email notice to provide the notice package via mailed postcards. *Id.* ¶ 6.3. The Claims Administrator shall also perform at least one skip trace on returned mail and shall send a second notice via mailed postcard to a second address for any Class Member identified with a second address by either the post office or the skip trace who did not receive either the email or first postcard notice. *Id.* ¶ 6.4.

If the Claims Administrator determines that direct notice (email or postcard) is unlikely to reach eighty percent (80%) of the Class Members or the Court otherwise finds that the direct notices are insufficient, the Parties will meet and confer regarding publication notice with any remaining disputes to be decided by the mediator, Barbara Reeves, Esq. *Id.* ¶ 6.5.

### III.   <u>LEGAL STANDARD FOR SETTLEMENT APPROVAL</u>

Class actions may be settled only with the approval of the court and after class notice. Fed. R. Civ. P. 23(e). Approval is a two-step process of "preliminary" and "final" approval. *See Manual for Complex Litigation* ¶ 21.632 (4th ed. 2004); *see also Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *2 (W.D. Ky. Apr. 27, 2022).

At preliminary approval, the court must decide whether notice of the proposal "is justified by the parties' showing that the court will likely be able to: (i) approve the proposal

under Rule 23(e)(2); and (ii) certify the class for the purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).  The court must determine whether the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this determination, courts favor settlements as a matter of public policy, particularly in class actions, where the costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to claim.  *See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ("*UAW*"); *see also* 4 William B. Rubenstein, *Newberg on Class Actions* § 13:44 (5th ed. 2014).  The 2018 Rule 23 amendments direct courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  In the Sixth Circuit, the following factors further guide a court's determination as to whether a class action settlement is "fair, reasonable, and adequate":

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631.[6]  At preliminary approval, the court need not "engage in analysis as

---

[6] This brief analyzes the Sixth Circuit factors in conjunction with the Rule 23(e) factors to the extent they overlap and does not consider "the reaction of absent class members" because Notice of the Settlement has not yet issued to the Class.  *See Ware v. CKF Enters., Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *14 n.4 (E.D. Ky. May 12, 2020) ("The 'reaction of absent class members' is not relevant to the preliminary approval stage analysis.").

rigorous as is appropriate for final approval." *In re Skechers Toning Shoe Prods. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2012 WL 3312668, at *7 (W.D. Ky. Aug. 13, 2012) (quoting David F. Herr, *Annotated Manual for Complex Litigation (Fourth)* § 21.662 (2012)).  Where a settlement agreement "does not disclose grounds to doubt its fairness or other obvious deficiencies" and "appears to fall within the range of possible approval," it should be preliminary approved. *Sheick v. Auto. Component Carrier*, *LLC*, No. 09-14429, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010) (citation omitted).

If the preliminary approval criteria are met, the Court must also determine whether it is likely to certify a class for settlement purposes.  *See* Fed. R. Civ. P. 23(e)(1)(B)(ii).  A class may be certified for the purposes of settlement only.  *See UAW*, 497 F.3d at 625.  The party seeking class certification must meet the four prerequisites of Federal Rules of Civil Procedure 23(a)(1) through (4)—numerosity, commonality, typicality, and adequacy—and one of the three requirements listed in Rule 23(b).  *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013).

## IV.   **ARGUMENT**

The Court should preliminarily approve the Settlement, approve the manner and form of the Notice, and find that it will likely certify the Class for settlement purposes.

### A.   **The Proposed Settlement Is Fair, Reasonable, and Adequate**

The Settlement satisfies each of the requirements of Rule 23(e)(2).

Vigorous Representation.  Ms. Page and her counsel extensively litigated this matter through settlement.  After Plaintiffs successfully defended against Defendants' Motion to Dismiss, the Parties engaged in substantial discovery.  Chan Decl. ¶¶ 6-9.  They have exchanged over 140 formal letters, and many more emails as part of the meet-and-confer process concerning discovery.  *Id.* ¶ 6.  Telephonic meet and confers were often held on a weekly or bi-weekly basis.

*Id.*  By the time of Settlement, Defendants had produced over 400,000 pages of documents regarding key issues necessary to value the case, such as liability and enforcement evidence and substantial evidence concerning Papa John's internal compensation structures, organizational charts, job titles and job descriptions, and employee payroll data for estimating damages.  *Id.* ¶ 7; *see Green*, 2022 WL 1240432, at *3 (finding adequate representation where plaintiffs "'engaged in a significant amount of discovery' related to the merits of class claims, including a review of Defendant's business records").  Plaintiff's Counsel retained qualified economic experts to analyze the documents and data to estimate the extent to which the alleged misconduct suppressed Class pay.  Chan Decl. ¶ 7; *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 526 (E.D. Mich. 2003) (use of "expert economists of national reputation to evaluate the economic theory of their claims and potential damages" supported preliminary approval).  That estimate informed settlement discussions with Papa John's.  Chan Decl. ¶ 7.  In total, between 2019 and 2022, Plaintiff's Counsel dedicated thousands of hours to discovery, took or defended ten fact witness depositions, including Plaintiff's deposition, and extensively negotiated the contours of their Rule 30(b)(6) deposition, which was set to move forward before the Parties engaged in settlement discussions in earnest.  *Id.* ¶¶ 8-9.

Although Ms. Page and her Counsel were prepared to litigate through class certification, summary judgment, and trial, Ms. Page and her Counsel determined that the proposed Settlement would best serve the interests of the Class by guaranteeing compensation and injunctive relief related to the No-Poach Agreement, while avoiding the substantial risks attendant to further litigation.  *Id.* ¶ 10; *see Elliott v. LVNV Funding, LLC*, No. 3:16-CV-00675-RGJ, 2019 WL 4007219, at *7 (W.D. Ky. Aug. 23, 2019) (finding that the class representative and class counsel had adequately represented the class where class counsels' prior litigation of similar actions

provided them with adequate information from which to evaluate the strength of their case and to negotiate); *see also In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) ("The Court should always give significant weight to the belief of experienced Counsel that the settlement is in the best interest of the class.").  As such, the Class has been zealously represented.

Arm's-Length Negotiations.  The Settlement Agreement is the product of arm's-length negotiation through a well-respected mediator and does not bear any evidence of fraud or collusion.  Fed. R. Civ. P. 23(e)(2)(B); *see also Love v. Gannett Co.*, No. 3:19-cv-296-BJB-RSE, 2021 WL 4352800, at *2 (W.D. Ky. Sept. 24, 2021) ("[A]bsent evidence of fraud or collusion, the Court may presume none exists.").  The Settlement was reached after a full day of mediation with experienced counsel and the ongoing help of mediator Barbara Reeves.  Chan Decl. ¶¶ 12-15; *see Bert v. AK Steel Corp.*, No. 02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties.").  Members of Plaintiff's Counsel have litigated numerous class action no-poach cases and Defense Counsel has similarly defended against wage suppression and no-poach cases, giving both sets of counsel the ability to determine the strengths and weaknesses of their respective cases.  Chan Decl. ¶ 14; *see New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery."); *In re Se. Milk Antitrust Litig.*, No. 2:07–CV–208, 2013 WL 2155379, at *6 (E.D. Tenn. May 17, 2013) ("Courts respect the integrity of counsel and presume the absence

-10-

of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.").

In addition, none of the "hallmarks" of potentially collusive settlements are present here: the Parties did not make the Settlement contingent on the amount of attorneys' fees—indeed, Plaintiff's Counsel agreed to an upper limit to maximize Class Member recovery—and there is no reversion of unused funds to Defendants. *See* Chan Decl. ¶ 16; *UAW*, 497 F.3d at 628; *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 308 (3d Cir. 2005) (noting the "special danger of collusiveness when the attorney fees . . . were negotiated simultaneously with the settlement").

Adequate Relief to the Class.  The Class relief provided is more than "adequate" considering (i) the costs, risks, and delay of further litigation; (ii) the effectiveness of the proposed distribution plan; (iii) the terms of the proposed award of attorney's fees; and (iv) any agreement required to be identified under Rule 23(e)(3).  Fed. R. Civ. P. 23(e)(2)(C).

Ms. Page recovered a reasonable sum of $5 million for the proposed Class in light of the substantial risks of continued litigation, including the complex nature of Ms. Page's claims.  *See UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *15 (E.D. Mich. Mar. 31, 2006), *aff'd* 497 F.3d 615 ("The ultimate question . . . is whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued."); *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984).  Each Class Member will receive a *pro rata* share of the Net Settlement Fund proportionate to the alleged harm suffered using a formula that accounts for individual salary and tenure, with higher-earning, long-time employees who allegedly suffered greater harm receiving a greater share of the Settlement.  The average Class Member recovery will depend on the claims rate.  Chan Decl. ¶ 18.  Assuming an (unlikely) 100% claims rate—each Class Member's gross recovery will average approximately $33.04, with the majority of Class Members receiving between $7.90 and

$77.22.  *Id.* ¶ 19.  If 20% of Class Members make claims, each Class Member's gross recovery will average $165.22, with the majority of Class Members receiving between $29.55 and $288.84.[7]  *Id.* ¶ 20; *see In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *14 (E.D. Mich. Dec. 13, 2011) (collecting cases approving claims rates between 1 and 10%).  A modest per capita recovery is fair when it "reflect[s] both parties' recognition of the difficulty in proving the case."  *Donaway v. Rohm & Haas Co.*, No. 3:06-CV-575-H, 2009 WL 1917083, at *5 (W.D. Ky. July 1, 2009); *see also Vasco v. Power Home Remodeling Grp. LLC*, Civ. A. No. 15-4623, 2016 WL 5930876, at *1, 10 (E.D. Pa. Oct. 12, 2016) (granting final approval of a $5.2 million settlement with a class of over 1.1 million people and an average recovery of $27 per person "given the case's strengths and weaknesses"); *Rose v. Bank of Am. Corp.*, No. 5:11-cv-02390, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving a class settlement with a $20-$40 per capita recovery).

Further, the non-monetary provisions confer additional benefits to the Settlement Class.  Because of Ms. Page's efforts, Papa John's will conduct antitrust compliance training for its domestic Vice Presidents and domestic executives above that level.  Settlement ¶ 5.  Papa John's will also circulate to all of their franchisees an email notice that reiterates Defendants' commitment not to enforce an existing no-poach provision under any circumstances, nor will they include such a provision in any new franchise agreement for the next five years.  *Id.*

Moreover, the injunctive relief guaranteed by the Settlement is particularly meaningful in

_____

[7] These gross amounts would be reduced by the amount of any attorneys' fees and costs, claims administration costs, and service awards awarded by the Court.  Chan Decl ¶¶ 19-20.  These amounts also reflect the Settlement Agreement's $5 minimum threshold for Class Member recovery, which ensures that "the settlement fund [is not] depleted by administrative costs associated with claims unlikely to exceed those costs" and which "courts have frequently approved."  *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 241 (E.D. Mich. 2016) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328-29 (3d Cir. 2011)).

that it ensures antitrust compliance training for all of Defendants' domestic Vice Presidents and domestic executives above that level—injunctive relief beyond the relief previously secured by the Washington State Attorney General.[8]

As the Sixth Circuit has noted, such non-monetary relief has value to society as both "deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 287 (6th Cir. 2016). Indeed, the Settlement "promotes the strong public interest in encouraging settlement because it reflects a reasonable compromise over issues actually disputed." *Love*, 2021 WL 4352800, at *3.

<u>Substantial Costs, Risks, and Delay of Litigation.</u> The above-described achievements are considerable in light of the significant costs and risks associated with further litigation, particularly in the antitrust context. *See In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-CV-83, 2014 WL 2946459, at *3 (E.D. Tenn. June 30, 2014) ("Antitrust class actions are inherently complex. The legal and factual issues are complicated and highly uncertain in outcome."). These risks are reflected in the decisions in *McDonald's* and *Jimmy John's*, which were also cases brought on behalf of fast food employees challenging no-poach agreements. *See McDonald's*, 2021 WL 3187668, at *7-13 (denying class certification); *Deslandes v. McDonald's USA, LLC*, No. 17 C 4857, 2022 WL 2316187 (N.D. Ill. June 28, 2022) (granting judgment on the pleadings); *Jimmy John's*, 2021 WL 3268339, at *9-10 (denying class certification). Although the *McDonald's* decision may be reversed on appeal and Plaintiff's

---

[8] *See* Assurance of Discontinuance at 3-4, *In re Franchise No Poaching Agreements*, No. 18-2-22880-8 (Sep. 13, 2018), https://agportal-s3bucket.s3.amazonaws.com/uploadedfiles/Another/News/Press_Releases/20180913_PapaJohns_Filed%26Signed_AOD.pdf.

Counsel believes the cases are distinguishable and wrongly decided as a matter of law, the decisions underscore the risk of continued litigation, which favors this Settlement. *See Gascho*, 822 F.3d at 277 (noting as a basis for settlement approval that the likelihood of plaintiffs' success on the merits had been called into question by the dismissal of a case that presented similar facts and legal issues); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, Civ. A. No. 06-299-JBC, 2008 WL 4724499, at *4 (E.D. Ky. Oct. 23, 2008) (unknowns such as the lack of case law on a particular theory and the fact that cases that had considered the theory were on appeal weighed in favor of preliminarily approving a settlement); *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

Finally, this recovery is available to the Class now, whereas uncertain future recovery would require several years of litigation to achieve. *See Hicks v. State Farm Fire & Cas. Co.*, No. 0:14-CV-053-HRW-MAS, 2021 WL 8269349, at *6 (E.D. Ky. Nov. 8, 2021), *report & recommendation adopted,* No. 14-CV-00053, 2021 WL 5507032 (E.D. Ky. Nov. 24, 2021). Based on the risks of continued litigation, the Settlement is adequate. *See Elliott*, 2019 WL 4007219, at *10 ("Courts in the Sixth Circuit defer to the informed and reasoned judgment of class counsel and their weighing of the risks and benefits of protracted litigation.").

Effective Distribution Method. The Settlement will be distributed according to the allocation plan delineated in the Settlement Agreement. Settlement ¶¶ 4.6, 4.10. The Claims Administrator will first calculate the Net Settlement Fund amount by subtracting any court-approved award of attorneys' fees and costs, class representative service awards, and settlement administration costs from the $5 million Gross Settlement Fund. *Id.* ¶¶ 4.5, 4.6. Each approved

claimant's share will be based on that Class Member's total compensation during the Class Period, using data supplied by Defendants. *Id.* ¶ 4.6.  To calculate each approved claimant's settlement share, the Claims Administrator will divide the approved claimant's total compensation during the Class Period by the total class compensation to generate the applicable fraction. *Id.*  The Administrator will then multiply the fraction by the Net Settlement Fund.[9]  *Id.*

Thus, each Class Member's recovery will be calculated in approximate proportion to their alleged harm because the formula awards more to those who earned more or worked longer. This allocation is fair and reasonable and mirrors other no-poach settlements. *See In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5159441, at *6 (N.D. Cal. Sept. 2, 2015) (approving similar plan because it "provides a neutral and uniform metric by which to allocate the Settlement"); *Seaman v. Duke Univ.*, No. 1:15-cv-462, 2019 WL 13193731, at *2-3 (M.D.N.C. Sept. 24, 2019) (same); *see also In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2020 WL 12443038, at *1–2 (E.D. Mich. Aug. 14, 2020) ("[P]lans of allocation that reimburse class members based on the type and extent of their injuries [are generally] reasonable.").

Further, the claims process itself is designed to maximize Class Member participation and eliminate unnecessary burdens.  The Claim Form, which will be available online at a webpage provided in the Class Notice, requests simple personally identifying information (name, address, email address, etc.) and a signature.  *See* Chan Decl. ¶ 27.  It also explains that, upon a finding of Settlement eligibility, payment will be made digitally (through options, such as PayPal or a digital credit card) or the Class Member can request a paper check.  *Id.*

---

[9] If funds remain in the Net Settlement Fund after it is distributed to approved claimants, the Claims Administrator will continue to distribute the funds *pro rata* using this allocation formula until either (i) all Approved Claimants are paid 25% of their total approved claimant compensation—which exceeds maximum estimated treble damages—and/or (ii) no funds remain in the Net Settlement Fund.  Settlement ¶ 4.6(d).  If any funds remain in the Net Settlement Fund after that point, they will be distributed to a charity under the *cy pres* doctrine.  *Id.* ¶ 4.7.

Reasonable Likely Fee Request.  The Settlement Agreement leaves the attorneys' fees and costs to be determined by the Court upon application of Plaintiff's Counsel.  Settlement ¶ 10. To calculate reasonable attorneys' fees, courts apply either the percentage-of-the-fund approach or the lodestar method.  *See Van Horn v. Nationwide Prop. & Cas. Inc. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011).  The Sixth Circuit has "explicitly approved the percentage approach in common fund cases."  *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007).  In common fund cases, the award of attorneys' fees need only "be reasonable under the circumstances."  *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

As stated in the Settlement Agreement, Plaintiff's Counsel will not request more than twenty-five percent (25%) of the Gross Settlement Fund in fees and costs.  Settlement ¶ 10. Such a request is well within the range of fees approved by courts in this District as reasonable. *See Wilson v. Anthem Health Plans of Ky., Inc.*, No. 3:14-CV-743, 2019 WL 6898662, at *4 (W.D. Ky. Dec. 18, 2019) (38% was reasonable); *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489, 2015 WL 1976398, at *3 (W.D. Ky. May 4, 2015) (33% was reasonable); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 299 (W.D. Ky. 2014) (24% was reasonable); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *11 (W.D. Ky. Dec. 22, 2009) (50% was reasonable).

No Other Agreements.  Rule 23(e)(3) requires parties to identify "any agreement made in connection with" the settlement: "related undertakings that, although seemingly separate, may [] influence[] the terms of the settlement by trading away possible advantages for the class in return for advantages for others."  Fed. R. Civ. P. 23(e) advisory committee's note to 2003 amendment. Here, Plaintiff has not entered into any such agreements.

Equitable Treatment of Class Members.  Finally, the Settlement Agreement treats Class

Members equitably relative to each other.  The amount that each Class Member will receive is based on the amount of compensation lost due to the alleged harms of the No-Poach Agreement. This, in turn, reflects the total compensation earned by each Class Member, which is a function of both the salary earned and length of time worked.  Such a distribution plan is equitable.  *See Skechers*, 2012 WL 3312668, at *9 ("The terms of the settlement are fair to the class members because members are treated equally with differentiation only based on the price of the Skechers product they purchased.").  In addition, while Ms. Page will seek a service award for her contributions to the case, her modest $5,000 request, Chan Decl. ¶ 37, is consistent with a fair, reasonable and adequate settlement.  "Courts often grant . . . service awards to named plaintiffs . . . to compensate them 'for the services they provided and the risks they incurred during the course of the class action litigation.'"  *Love*, 2021 WL 4352800, at *3.  Ms. Page gathered discovery, reviewed all pleadings, answered interrogatories, and sat for a seven-hour deposition, totaling approximately 100 hours of work over four years.  Chan Decl. ¶¶ 35-36.  A $5,000 award is more than reasonable for her efforts.  *See Love*, 2021 WL 4352800, at *3 (approving $5,000 service award); *Daoust v. Maru Rest., LLC*, No. 17-cv-13879, 2019 WL 2866490, at *6 (E.D. Mich. July 3, 2019) (same); *see also Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 833 F. App'x 430, 431 (6th Cir. 2021) (upholding $10,000 service award to plaintiffs who searched for and produced records for discovery and traveled for depositions).

### B.      The Proposed Notice Program Satisfies Rule 23

In addition to reviewing the substance of the Parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all Class Members who would be bound by the proposed settlement.  Fed. R. Civ. P. 23(e)(1)(B).  For a Rule 23(b)(3) class, the court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Fed. R. Civ. P. 23(c)(2)(B); *see also Fidel*, 534 F.3d at 514 ("To comport with the requirements of due process, notice must be reasonably calculated to reach interested parties."). That is precisely the type of notice contemplated here.

Best Notice Practicable. Under the Settlement Agreement, as explained above, Class Members will be advised of the proposed Settlement through direct individual notice (email or First-Class Mail). Settlement ¶ 6.2. Because Defendants do not have email addresses for all Class Members, the Claims Administrator will use personal identifying information to obtain email addresses. *Id.* The email notice will include Notice of the Class Action Settlement, a link to a website containing information about the Settlement Agreement (including the long form notice of the Settlement Agreement, the operative complaint, and the preliminary and final approval motions when available) and the ability to fill out a Claim Form. *Id.* The website will also display a toll-free number that Class Members can call with questions about the Settlement or their eligibility to receive a monetary payment. *Id.* If the Claims Administrator is unable to find an email address for any Class Member, the Administrator will use Class Members' last known addresses (provided by Defendants) to effectuate Short-Form Notice, formatted as a postcard. A.B. Data Decl. ¶ 6. The Claims Administrator will take additional steps to ensure proper dissemination. *See id.* ¶ 8. In the event the Claims Administrator determines that direct notice is unlikely to reach eighty percent (80%) of the Class Members or the Court otherwise finds that the direct notices are insufficient, the Parties will meet and confer regarding publication notice with disputes to be resolved by mediator Barbara Reeves. Settlement ¶ 6.5; *see Countrywide Fin.*, 2009 WL 5184352, at *12 (finding direct notice plan that reached approximately 80% of the settlement class the best notice practicable under the circumstances).

The Notice itself clearly describes the nature of the action, the Class definition, the legal

issues, Class Members' right to enter an appearance through an attorney, Class Members' right

to request exclusion, how to make a claim or object to the settlement, and the binding effect of a

class judgment.  Chan Decl. ¶ 33; *see* Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii); *UAW*, 497 F.3d at 629

(The notice should be "reasonably calculated, under all the circumstances, to apprise interested

parties of the pendency of the action and afford them an opportunity to present their objections").

The proposed Notice will also state the date and time of the fairness hearing, the formula for

calculating each Class Member's recovery, and information about the attorneys' fees and

expenses and class representative service awards that will be requested.  Chan Decl. ¶ 34.  As

such, the Notice satisfies Rule 23(c).

Qualified Claims Administrator with Reasonable Fee.  Plaintiff proposes that the Court

appoint the firm A.B. Data, Ltd. ("A.B. Data") as Notice and Claims Administrator.  Plaintiff's

Counsel solicited competitive bids from three claims administrators.  Chan Decl. ¶ 24.

Plaintiff's Counsel selected A.B. Data after evaluating each proposal because A.B. Data was the

most competitive, taking into consideration the services to be provided and prior experiences

with the administrator.  *Id.*  A.B. Data's proposed budget for notice and settlement administration

is approximately $250,000 - $300,000.  *Id.* ¶ 25.

## C.    **Provisional Certification of the Settlement Class Is Appropriate**

The Court also must determine that it is likely to certify the Settlement Class for purposes

of judgment on the proposal.  *See* Fed. R. Civ. P. 23(e)(1)(B)(ii); *see also Amchem Prods., Inc. v.

Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation*, *supra*, § 21.632.  When a

settlement is reached prior to Rule 23 certification, a class may be certified solely for the

purposes of settlement.  *See, e.g.*, *In re Auto. Parts Antitrust Litig. (In re Wire Harness Cases)*,

No. 2:12-cv-00101, 2017 WL 469734, at *1 (E.D. Mich. Jan. 4, 2017).  The parties seeking class

certification must meet the four prerequisites of Federal Rules of Civil Procedure 23(a)(1)

through (4): numerosity, commonality, typicality, and adequacy. *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 671 (6th Cir. 2020). A court must also find that the action satisfies subsection Rule 23(b)(1), (2), or (3). *In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (Flsa) & Wage & Hour Litig.*, No. 3:14-CV-290-DJH, 2016 WL 9558953, at *2 (W.D. Ky. Oct. 31, 2016). Each requirement is satisfied here.[10]

### 1.   Rule 23(a) Is Satisfied

Numerosity. A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The proposed Class here comprises hundreds of thousands of individuals, thereby satisfying numerosity. *See Amazon.com*, 2016 WL 9558953, at *4 ("Any class of 41 or more is generally considered to be sufficiently numerous."); *see also Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (recognizing that "while there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement").

Commonality. The Class Members' claims are sufficiently common as they depend on "questions of law [and] fact common to the class." *Whirlpool*, 722 F.3d at 852. Indeed, "'[e]ven a single [common] question' will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). "Generally speaking, in the antitrust context, courts have held that the existence of an alleged conspiracy or monopoly is a common issue that will satisfy the commonality requirement." *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 337 (D. Md. 2012), *amended*, 962 F. Supp. 2d 840 (D. Md. 2013) (citing 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.10 (4th ed. 2002)). This case is no exception: the common question of whether Papa John's No-Poach Agreement constitutes an illegal restraint of trade is "dispositive and over-shadow[s] other issues." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146

---

[10] Defendants agree that this case may be provisionally certified for purposes of this Settlement only.

(4th Cir. 2001); *see also Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988))).  Thus, "the existence of the alleged conspiracy, standing alone, is sufficient to establish commonality." *Titanium Dioxide*, 284 F.R.D. at 338.  Moreover, there are numerous other common issues of law and fact, including whether Defendants enforced the No-Poach Agreement and whether Plaintiff and the proposed Class were paid less as a result.  *See, e.g.*, *Seaman v. Duke Univ.*, No. 1:15-cv-462, 2018 WL 671239, at *10 (M.D.N.C. Feb. 1, 2018); *see also Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015) (commonality is satisfied where "a common question . . . will yield a common answer for the class").

    Typicality.  Typicality is satisfied if the class representative's claim arises from the same "course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 623 (E.D. Mich. 2020) (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)).  The typicality test is "not onerous," and "factual distinctions between named and unnamed class members do not preclude typicality." *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 429 (N.D. Ohio 2008).  "[I]n the antitrust context, typicality will be established by plaintiffs and all class members alleging the same antitrust violations by defendants." *Titanium Dioxide*, 284 F.R.D. at 338-39.  Here, Ms. Page and all members of the Settlement Class allege the same antitrust violations by Papa John's.  Indeed, the Sherman Act claim alleged by Ms. Page and the Class arises from the same course of conduct by Papa John's and is based on the same legal theory. *See Amazon.com*, 2016 WL 9558953, at *4 (typicality satisfied where the "class representatives . . . complain of the same unlawful conduct as the other class members,

and the same legal theories apply to all").  Typicality, therefore, is satisfied.

Adequacy.  Proposed Class Representative, Ms. Page, "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  To determine whether a proposed class representative will adequately represent the class, courts ask: (1) whether the proposed class representative shares common interests with unnamed class members; and (2) whether the proposed class representative will prosecute the action vigorously on behalf of the class through qualified counsel.  *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012).

Here, Ms. Page and the Class have the same interest in proving that Papa John's conduct violated the antitrust laws and suppressed compensation and mobility as a result.  Ms. Page and her Counsel do not have any conflicts of interest with Class Members.  As discussed above, Ms. Page has dutifully performed her obligations as Class Representative.  Finally, Ms. Page has retained highly experienced law firms who have an extensive record of success in prosecuting antitrust cases, employment cases, and class actions.  Adequacy is met.

### 2. Rule 23(b)(3) Is Satisfied

In addition to satisfying Rule 23(a), the class action must also be maintainable under Rule 23(b).  Here, the Parties seek provisional certification for purposes of settlement under Rule 23(b)(3).  Under Rule 23(b)(3), the Court must find that "[1] the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  Both prongs are satisfied.

Predominance.  Rule 23(b)(3) does not require that all elements of a claim be susceptible to class-wide proof, only that the questions common to the class are "at the heart of the litigation." *Skechers*, 2012 WL 3312668, at *5; *see also Countrywide Fin.*, 2009 WL 5184352,

at *6 ("The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless.").  In antitrust cases, "[p]redominance is a test readily met."  *Amchem*, 521 U.S. at 625.

Here, as in other antitrust cases, the significant legal and factual questions are common: whether (1) Papa John's entered into an agreement violating the antitrust law; (2) the agreement injured Plaintiff and the Class; and (3) damages can be measured through a common method. Because the proof required to answer these questions "focuses on Defendant's conduct, not on the conduct of individual class members," the common questions predominate over individual issues.  *Countrywide Fin.*, 2009 WL 5184352, at *6.  Specifically, whether Papa John's entered an agreement in violation of the antitrust laws focuses on Papa John's conduct, not the conduct of any individual class member.  *See Seaman*, 2018 WL 671239, at *4 ("There is no indication that individual questions will arise in determining whether the defendants violated the Sherman Act.").  The same is true for impact and damages.  Ms. Page alleges purely economic injuries caused by the No-Poach Agreement.  Proof of such injury is not individualized, but rather, depends on a common theory that pay structures at Papa John's and its franchisees were systematically suppressed, affecting all Class Members.  Thus, just as with proving the existence of an unlawful agreement, proof of impact and damages focuses on common, not individualized questions: the Class "will prevail or fail in unison."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Fund*, 568 U.S. 455, 459-60 (2013) ("Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered . . . in favor of the class.").

Superiority.  Resolution of Plaintiff's claims through a class action is superior to alternative methods.  First, all Class Members have the same grievance against Defendants—the No-Poach Agreement suppressed their pay.  Litigating every Class Member's claims separately

would waste judicial and party resources, since the vast majority of evidence of liability would be identical.  Second, it is unlikely that Class Members could bring their claims on an individual basis because the dollar value of each of their claims, standing alone, is relatively small.  *See Beattie*, 511 F.3d at 567 ("Such a small possible recovery would not encourage individuals to bring suit, thereby making a class action a superior mechanism for adjudicating this dispute."). Certification of the Settlement Class is therefore appropriate.

### D.   The Court Should Appoint Plaintiff's Counsel as Class Counsel

Rule 23(g) separately requires this Court to appoint class counsel.  Fed. R. Civ. P. 23(g)(1), (3).  In evaluating the appointment of class counsel, courts must consider (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).

Plaintiff's Counsel have considerable experience in successfully prosecuting antitrust class actions and other complex litigation.  Chan Decl. ¶¶ 38-42.  They have committed the resources necessary to represent the Class and will continue to manage the case efficiently and diligently to obtain settlement approval and, if approved, to implement the Settlement.  *Id.* ¶ 43. Plaintiff's Counsel have worked cooperatively and effectively to litigate this case, including by: (i) investigating the underlying facts and researching and evaluating legal claims; (ii) opposing and prevailing on Defendants' motion to dismiss; (iii) retaining experts to develop a methodology for measuring impact and damages; (iv) participating in multiple mediation sessions; (v) negotiating the proposed settlement and settlement papers; and (vi) drafting this motion.  *Id.* ¶ 45.  Plaintiff therefore requests the appointment of Lieff Cabraser Heimann & Bernstein, LLP, Scott+Scott Attorneys at Law LLP, McCune Wright Arevalo, LLP, and Lowey Dannenberg, P.C. as Settlement Class Counsel, all of whom this Court previously appointed

Interim Co-Lead Class Counsel.  Case Management Order No. 1 at 3 (W.D. Ky. Jan. 28, 2019), ECF No. 39.

**E.      The Proposed Schedule for Notice and Final Approval**

Plaintiff proposes the following schedule for class notice and final approval:

| Event | Date |
|---|---|
| Papa John's to Provide Database of Class Members' Identities and Corresponding Information to Claims Administrator | Within 14 days of Preliminary Approval |
| Claims Administrator Shall Engage Credit Reporting Agency or Similar Service to Locate Class Members' Email Addresses | Within 14 days of receipt of Database |
| Claims Administrator Will Email Notice Package, Publish Settlement Website, and Mail Postcards to Class Members Whose Email Addresses Cannot be Located | Following receipt of tracing Class Member contact information |
| Claims Administrator Will Alert Parties if Direct Notice Unlikely to Reach More than 80% of Class Members | Following additional email and postcard notice to Class Members |
| Motion for Fees, Costs, and Plaintiff's Service Award | Within 75 days of Preliminary Approval |
| Deadline for Claims, Objections, and Requests for Exclusion | Within 100 days of Preliminary Approval |
| Motion for Final Approval and Claims Administrator Affidavit of Compliance with Notice Requirements | 14 days prior to the Final Approval Hearing |
| Final Approval Hearing (Minimum of 130 days after Preliminary Approval) | _____, 2022 |

**V.      CONCLUSION**

For the above reasons, Ms. Page respectfully requests that the Court: (1) find that it will preliminarily approve the Settlement; (2) find that it will likely certify the Settlement Class upon final approval; (3) direct notice to the Settlement Class; (4) appoint Plaintiff's Counsel as counsel for the Settlement Class; (5) authorize retention of A.B. Data as Notice and Claims Administrator; (6) set a schedule for disseminating notice to Class Members, as well as deadlines to comment on, object to, or opt-out of the Class; and (7) schedule a hearing pursuant to Rule 23(e) to determine whether the Settlement should be finally approved.

Dated: July 27, 2022

Respectfully submitted,

Dean M. Harvey (*pro hac vice*)
Anne B. Shaver (*pro hac vice*)
Lin Y. Chan (*pro hac vice*)
Jallé H. Dafa (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
T: 415-956-1000
dharvey@lchb.com
ashaver@lchb.com
lchan@lchb.com
jdafa@lchb.com

Jessica A. Moldovan (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
250 Hudson Street, 8th Floor
New York, NY 10013
T: 212-355-9500
jmoldovan@lchb.com

Walter W. Noss (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 West Broadway, Suite 3300
San Diego, CA 92101
T: (619) 233-4565
wnoss@scott-scott.com

Michelle E. Conston (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
T: (212) 223-6444
mconston@scott-scott.com

Derek Y. Brandt (*pro hac vice*)
Leigh M. Perica (*pro hac vice*)
Connor Lemire (*pro hac vice*)
MCCUNE WRIGHT AREVALO, LLP
231 North Main Street, Suite 20
Edwardsville, IL 62025
T: (618) 307-6116
dyb@mccunewright.com
lmp@mccunewright.com

Richard D. McCune (*pro hac vice*)
Michele M. Vercoski (*pro hac vice*)
MCCUNE WRIGHT AREVALO, LLP
3281 East Guasti Road, Suite 100
Ontario, CA 91761
T: (909) 557-1250
rdm@mccunewright.com
mmv@mccunewright.com

Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Noelle Feigenbaum (*pro hac vice*)
LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601
T: (914) 997-0500
vbriganti@lowey.com
clevis@lowey.com
nfeigenbaum@lowey.com

*Interim Co-Lead Counsel*

John Radice (*pro hac vice*)
Radice Law Firm
475 Wall Street
Princeton, NJ 08540
T: (646) 245-8502
jradice@radicelawfirm.com

*Interim Counsel*

Jennifer A. Moore
MOORE LAW GROUP, PLLC
401 W. Main Street, Suite 1810
Louisville, KY 40202
T: (502) 657-7100
jmoore@moorelawgroup.com

*Liaison Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Lin Y. Chan