UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

In Re: Papa John's Employee and
Franchisee Employee Antitrust Litigation

Case No. 3:18-cv-825-BJB

\*\*\*\*\*

OPINION & ORDER

This case involves one of several class actions filed against fast-food chains following an investigation by the Attorney General of Washington State into "no-poach" provisions in restaurant franchise agreements. Resulting settlements with public authorities and corresponding business judgments appear to have sharply curtailed the inclusion (previously common) and enforcement (arguably irregular) of provisions barring franchisors from soliciting the employees of other franchises of the same chain.[1]

Many restaurant employees agree with the Washington State Attorney General that these provisions amount to per se anticompetitive restraints that depress wages, benefits, and promotions. And they have filed private lawsuits in parallel with the public antitrust enforcement actions in Washington. The restaurants, by contrast, have cast the agreements as typical incidents of vertical integration that promote training and reflect company-specific investment in workers, ultimately benefiting employees and consumers. Outside Washington State, litigation remains ongoing in several putative class actions, including two within the Seventh Circuit. *See Deslandes v. McDonald's USA, LLC*, No. 17-cv-4857, 2018 WL 3105955 (N.D. Ill. June 25, 2018), *vacated and remanded*, No. 22-2333 (7th Cir. 2023) (slip op.); *Conrad v. Jimmy John's Franchise, LLC*, No. 18-cv-133, 2021 WL 3268339 (S.D. Ill. July 30, 2021).

Papa John's International, Inc. and Papa John's USA, Inc. face similar allegations that their franchisors systematically restricted employee compensation and opportunities by agreeing that individual Papa John's franchises would not seek

---

[1] *See, e.g.*, *In Re Papa John's USA Inc./Approve Assurance of Discontinuance*, 18-2-22880-8 SEA (King Cty. Sup. Ct., Wash., Sept. 13, 2018), Dkt. No. 4 ¶¶ 3.1–3.3; *In re: Franchise No Poaching Provisions*, King Cty. Super Ct., Wash. 2019, National Association of Attorneys General, https://www.naag.org/multistate-case/in-re-franchise-no-poaching-provisions-king-cty-super-ct-wash-2019/ (last visited Aug 8, 2023) (listing "no-poach" settlements).

1

to hire each other's employees.[2]  Before this case was reassigned, the district judge denied a motion to dismiss but granted a motion to compel arbitration against one of the lead plaintiffs.  *See* DN 90.  The parties, represented by seasoned counsel, have engaged in substantial discovery and settlement negotiations.  Given the mutual costs and risks of class litigation regarding these allegations, they have agreed to settle the dispute on behalf of the entire class.  The classwide settlement agreement they've proposed for this Court's review would certify a class of similarly situated employees and managers, award $5 million in damages, create a claims and reversion process, require injunctive relief in the form of antitrust training, award attorney fees, and release all claims.  The lawyers estimate workers would receive around $33 each, less attorney fees, depending on how long a class member worked at Papa John's.  Unopposed Motion for Settlement (DN 202) at 11.

For similar reasons related to litigation risk and business certainty, Papa John's has stopped using and enforcing these no-poach provisions nationwide.  Its promise to do so (for five years) is part of the settlement.  The company had already taken this step in Washington State, in accordance with its settlement with the Attorney General, but now has agreed to extend that commitment nationwide.

\*

The question before the Court is whether to preliminarily certify the class and approve the classwide settlement that would bind absent members.  If so, the Court would authorize notice to the class, provide affected persons a chance to object, and schedule a final fairness hearing before deciding whether to enter judgment.  That preliminary ruling requires two showings from the parties: that the settlement is likely fair under Federal Rule of Civil Procedure 23(e)(2) and that the class is likely permissible under Rule 23(a) and (b).

**FED. R. CIV. P. 23(e)**.  The claims of "a class proposed to be certified for purposes of settlement" may be settled "only with the court's approval."  FED. R. CIV. P. 23(e).  The parties must "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."  FED. R. CIV. P. 23(e)(1)(A).  This requires a court, reviewing the parties' submissions, to answer two questions.  First, whether "the court will likely be able to approve the proposal under Rule 23(e)(2)."  FED. R. CIV. P. 23(e)(1)(B)(i).  Second, whether the court will "likely be able" to "certify the class for purposes of judgment on the proposal."  FED. R. CIV. P. 23(e)(1)(B)(ii).  If yes to both, the district court must "direct notice" of the proposal to "all class members who would be bound" by it.  FED. R. CIV. P. 23(e)(1)(B).

A district court may approve a settlement proposal "only after a hearing" and "only on finding that it is fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(2).

---

[2] The complaint explains that the two corporate entities "operate as a single entity" "out of the same location" with "the same directors and executives."  Consolidated Amended Complaint at 8.  For purposes of this motion, the parties identify no relevant difference between the two and the opinion treats them collectively as Papa John's.

2

The question at the preliminary-approval stage is "simply whether the settlement is fair enough that it is worthwhile to expend the effort and costs associated with sending potential class members notice and processing opt-outs and objections." *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020) (citing NEWBERG ON CLASS ACTIONS § 13:10 (5th ed.)). Preliminary approval may establish "an initial presumption of fairness," but "does not inexorably result in final approval." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 603 (3d Cir. 2010) (Smith, J., dissenting).

When deciding whether to preliminarily approve a classwide settlement, courts in this circuit consider the factors articulated in FED. R. CIV. P. 23(e)(2)(A)–(D) and *International Union, United Auto., Aerospace, & Agricultural Implement Workers of America v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)). *See, e.g., Does 1-2 v. Deja Vu Services, Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019).[3] The "burden of proving the fairness of the settlement is on the proponents." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 719 (6th Cir. 2013) (quoting 4 NEWBERG ON CLASS ACTIONS § 11:42 (4th ed.)).

As discussed in the Plaintiff's submission and during a telephonic hearing, the Court "will likely be able to approve the proposal under Rule 23(e)(2)." FED. R. CIV. P. 23(e)(1)(B)(i). Class counsel appear to be competent and experienced, the substantive efforts expended on this litigation appear to be substantial, and the Court is unaware of any risk of collusion. No objectors have surfaced, though that is perhaps to be expected given the lack of notice to date.[4] The discounted recovery plausibly relates to an uncertain likelihood of success on both sides. Approving the settlement under Rule 23(e) would align with the pro-settlement policy followed by

---

[3] The Rules Advisory Committee amended Rule 23(e) in 2018 to specify the factors for considering a proposed classwide settlement. The Committee noted that "each circuit has developed its own" list of factors to consider in approving class action settlements and clarified that the amendment was not intended to "displace any factor," but rather to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *See* FED. R. CIV. P. 23 advisory committee's note to 2018 amendment. Courts within this circuit asking whether a classwide settlement is "fair, reasonable, and adequate" under Rule 23(e), such as the *Deja Vu* court, have accordingly interpreted the new provision to complement, rather than supplant, the factors previously articulated in Sixth Circuit precedent: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. 925 F.3d 886, 894–95 (citing *Int'l Union*, 497 F.3d at 631).

[4] "Any class member may object to the proposal if it requires court approval …." FED. R. CIV. P. 23(e)(5)(A). Class members "who claim the mantle of 'objector' usually do so in the context of opposing the terms of a proposed settlement," though they may object at any time "prior to a settlement's [final] approval." *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 699, 700 n.38 (6th Cir. 2019) (Moore, J. dissenting).

the Sixth Circuit and other courts, *Deja Vu*, 925 F.3d at 899, and would further familiar interests in judicial economy, speedier recovery, and harmony between erstwhile adversaries. So, consistent with Rule 23(e)(1)(B)(i), the Court "will likely be able to … approve the proposal under Rule 23(e)(2)."

**FED. R. CIV. P. 23(a) and (b)**. Class certification raises trickier issues. "To be certified, a class must satisfy all four of the Rule 23(a) prerequisites—numerosity, commonality, typicality, and adequate representation[.]" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012). Additionally, under Rule 23(b)(3), the Court must find that "questions common to the class predominate over questions affecting only individual members," and that a class action is a superior way to resolve the controversy. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) (citing FED. R. CIV. P. 23(b)(3)).

The sole named Plaintiff defines the putative class to include:

> All individuals who were employed at a Papa John's branded restaurant located in the United States, whether owned by Defendants or a Papa John's franchisee, at any time between December 18, 2014 and December 31, 2021 and who received more than $200 in compensation during that time period.

DN 202-3 ¶ 5. A party seeking certification "must affirmatively demonstrate … compliance" with Rule 23 by "be[ing] prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

Approximately 401,000 putative class members are covered by the proposed class. Hearing Tr. (DN 223) at 27:22. So numerosity is almost certainly satisfied. So too is superiority. The parties have expended significant effort litigating this case, and only a modest amount of recovery appears available even here—to say nothing of what they'd potentially receive should they sue individually. *See Vassalle v. Midland Funding LLC*, 708 F.3d 747, 758 (6th Cir. 2013) (class members' "limited resources" and "meager monetary relief," along with "this case [being] far more procedurally advanced than other actions bringing similar claims[,]" "weigh[s] in favor of finding the superiority factor was satisfied"). And "a district court need not inquire whether the case, if tried, would present intractable management problems" in the class-settlement context. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Commonality, meanwhile, generally rises and falls with predominance under Rule 23(b). *See In re Family Solutions of Ohio, Inc.*, Nos. 21-cv-303, -375, 2022 WL 13915151, at *2 (6th Cir. June 17, 2022) ("courts often undertake the commonality and predominance analyses at the same time") (quoting Newberg on Class Actions § 23:19 (5th ed.)) (cleaned up).

That leaves adequacy, typicality, and predominance. And on these factors the record is less than clear. The Plaintiff has not yet "provide[d] the court with

4

information sufficient to enable it to determine whether to give notice of the proposal to the class." FED. R. CIV. P. 23(e)(1)(A).

The parties agree that no court in the country has yet approved a nationwide no-poach settlement in the restaurant context.[5] Indeed, two district courts within the Seventh Circuit have *rejected* classwide settlements in this context, though the Seventh Circuit recently remanded one of those cases for reconsideration.[6] Based on as-yet unaddressed concerns with the three Rule 23 factors discussed below, the appropriateness of a classwide settlement is not obvious in this novel situation.

***Adequacy***. The class representative "must have common interests with unnamed members of the class." *Vassalle*, 708 F.3d at 757. Do the interests of the named Plaintiff, who worked as a manager (Consolidated Amended Complaint ¶ 17), conflict with those of non-manager employees who are also class members? One district court rejected classwide certification in this context (at least in part) because the claims of managers and non-managers were in tension given the role of managers in enforcing in the no-poach agreements. *See Conrad*, 2021 WL 3268339, at *6–7 (finding class representative did "not adequately represent the interest of managers" who enforced the challenged conduct). The request for preliminary approval of the proposed settlement doesn't address whether similar concerns are present here—and if so, how the proposed class would mitigate them.

What about those class members subject to arbitration agreements? The parties have substantially discounted (by 75%) the damages award for employees subject to an arbitration agreement—and done so without proposing a formal subclass. *See* Fed. R. Civ. P. 23(c)(5). The parties' rationale for the discount is that a prior named plaintiff was dismissed from this case *because* of an arbitration agreement and the arbitration agreements contain class-action waivers, so each signatory would have to arbitrate on an individual basis. *See* Hearing Tr. at 10:1–10:24. The sole remaining named Plaintiff does not appear to be subject to an arbitration agreement. Whether she "possess[es] the same interest" as class members subject to arbitration agreements, and can thus bind them in this way, is another question the parties' filings don't appear to address. *Amchem Prods., Inc.*, 521 U.S. at 625–26. Other courts have raised similar concerns in similar contexts: "To the extent the classes and subclasses include individuals who signed class action waivers, [the named Plaintiff] is not an adequate representative and her claim lacks typicality." *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579, 579 (9th Cir. 2015) (citations omitted).

---

[5] At the hearing, the parties represented that courts have approved classwide no-poach settlements in the technology, railroad, and higher-ed sectors. But counsel have not cited these rulings or explained whether and how they bear on the questions before the Court today.

[6] *See Deslandes v. McDonald's USA, LLC*, No. 17-cv-4857, 2021 WL 3187668 (N.D. Ill. July 28, 2021), *vacated and remanded*, Case No. 22-2333 (7th Cir. 2023) (slip op.); *Conrad v. Jimmy Johns*, No. 18-cv-133, 2021 WL 3268339 (S.D. Ill. July 30, 2021).

***Typicality***. This aspect of Rule 23 ensures that the named plaintiff's claims truly represent those of the class. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). Arbitration also poses a potential typicality issue: at the hearing Defendants' counsel estimated that approximately half of the proposed class had signed an arbitration agreement. Hearing Tr. at 11:16; *see also Avilez*, 596 F. App'x at 579. So does the nature of the named Plaintiff's allegations: in a suit involving some of the same lawyers and issues, a court held that typicality was not met because the named plaintiff did not attempt to move between franchise locations for better wages. *Conrad*, 2021 WL 3268339, at *5. Did the no-poach agreement prevent this Plaintiff from receiving higher wages at another Papa John's store? The filings don't make that clear.[7]

***Predominance***. In Rule 23(b)(3) class actions, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." "[T]he predominance inquiry must focus on common questions that can be proved through evidence common to the class." *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 722 F.3d 838, 858 (6th Cir. 2013). The parties believe "the main questions here are common: that Papa John's entered into an agreement violating the anti-trust law, whether or not the agreement injured plaintiffs in the class, and whether damages can be measured through a common method." Hearing Tr. 17:19–23. That may be true. But will the evidence necessary to answer these common questions predominate?

That depends, in part, on whether the Plaintiff's antitrust claim is subject to the rule of reason or per se analysis—a question on which the parties disagree, and which bears on the nature of the proof a Court would address in resolving a class certification request. So the class inquiry appropriately "entail[s] some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Dukes*, 564 U.S. at 351).

The Plaintiff's position is that agreements here are unlawful per se. But that's not entirely obvious. "[T]he per se rule is reserved for restraints that are so clearly unreasonable that their anticompetitive effects within geographic and product markets are inferred." *In re Se. Milk Antitrust Litig.*, 739 F.3d 262, 270 (6th Cir. 2014). The anticompetitive effect of no-poach restraints would be obvious if different restaurants agreed not to hire one another's workers. *See, e.g.*, *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 481 (W.D. Pa. 2019) ("an agreement among competitors" has "no plausible efficiency justifications") (quoting 1 JOHN J. MILES, HEALTH CARE & ANTITRUST LAW § 3:2 (2018)); Statement of Interest of the United States of America at 8, *Richmond v. Bergey Pullman Inc.*, No. 2:18-cv-246

---

[7] Many of the questions raised here regarding adequacy and typicality also relate to commonality. "[C]ommonality and typicality tend to merge with the requirement of adequate representation," especially when concerns about class counsel are absent, as they are here. *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 722 F.3d 838, 853 (6th Cir. 2013).

(E.D. Wash. Mar. 7, 2019), ECF No. 39 ("[A]greements between labor-market competitors not to poach each other's employees are per se unlawful under Section 1…."). But this case addresses one brand within a very thick American fast-food marketplace—and the parties haven't yet explained the common proof that would predominate assuming the per se rule applies.

What's more, "[t]here is an automatic presumption in favor of the rule of reason standard." *Care Heating Cooling, v. American Standard*, 427 F.3d 1008, 1012 (6th Cir. 2005). And "[i]f the rule of reason is used" here, a plaintiff must establish an antitrust violation by "show[ing] that the restraint produced anticompetitive effects within the relevant product and geographic markets." *In re Se. Milk Antitrust Litig*, 739 F.3d at 270. That is a taller task. What is the relevant market, how will the Plaintiff prove market power, and what predominant common questions would emerge from that proof? The Plaintiff seeks to certify a nationwide class of Papa John's employees, which suggests a nationwide market composed solely of Papa John's stores. Why the relevant market isn't all fast-food employers in a smaller geographic area remains unclear. *See Deslandes*, 2023 WL 5496957, at *1 (7th Cir. 2023) ("The mobility of workers—both from one employer to another and from one neighborhood to another—makes it impossible to treat employees at a single chain as a market."). Put another way, why would anyone work at Papa John's if no-poach provisions systematically suppress wages within that company *relative to* other restaurants? *See, e.g., id.* ("People who work at McDonald's one week can work at Wendy's the next, and the reverse."). If these considerations are divorced from the theory of this case, then the lawyers should clarify their theory.

It's easy to understand the Plaintiff's theory that these restraints made advancing up the ranks at Papa John's more difficult, but she appears to offer no theory why a worker wouldn't simply switch to a different restaurant (or other employer) not subject to the franchisor no-poach agreement. If Mayfield boasts a single Papa John's restaurant among several other pizza joints, is a non-solicitation agreement with Papa John's franchisors 20 miles away in Paducah and Murray really suppressing delivery drivers' wages and promotional opportunities? To say nothing of drivers working in Louisville or New York? Plaintiff's counsel says the data and econometric extrapolation answer the question with a resounding yes, despite geographic and demographic differences. Hearing Tr. at 23:8–23:24. Perhaps. But the explanation necessary to reach a predominance finding at the preliminary-certification phase isn't yet in the record.

**\*\***

While this motion was pending, the Seventh Circuit made good on the prediction of Plaintiff's counsel that one of the district court class-cert denials would be reversed. *See* Hearing Tr. 17:24–18:1. In a supplemental filing, counsel contended that because "*Deslandes* suggests that certification of a litigation class similar to that sought by Plaintiff here may be appropriate," it "would be reasonable … for this Court to certify the proposed settlement class in this case." DN 225 at 1. Contrary to counsel's assertion, the Seventh Circuit's opinion (which addressed a contested

certification decision) doesn't make this motion (which addresses a settlement class) merely academic. *See Amchem Prods., Inc.*, 521 U.S. at 620 n.16 ("[P]roposed settlement classes sometimes warrant more, not less, caution on the question of certification.").

Making the findings required by Rule 23 requires additional information. The parties have, perhaps understandably, focused a considerable amount of attention on the Rule 23(e) factors without a commensurate discussion of 23(a) and (b) factors. The considerations bearing on the Court's preliminary finding include whether the Plaintiff adequately represents the interests of absent class members, how the Plaintiff would prove whether the no-poach agreements at issue amount to a restraint of trade, and where that proof would show such provisions restrain trade. As currently briefed, the Court lacks adequate information to make these determinations and orders the parties to supplement their filings to allow for a reasoned preliminary decision regarding adequacy, typicality, and predominance. The parties needn't supplement the record with any additional information regarding numerosity, the adequacy of the proposed notice, the qualifications of class counsel, or superiority, all of which appear satisfactory. The Court instead invites the Plaintiff to submit an amended motion for class-action settlement or otherwise file a joint status report (or extension request) within 30 days.

Benjamin Beaton, District Judge
United States District Court

September 15, 2023