**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| IN RE: PAPA JOHN'S EMPLOYEE AND FRANCHISEE EMPLOYEE ANTITRUST LITIGATION | Case No.: 3:18-cv-00825-BB-RSE |

**PLAINTIFF'S UNOPPOSED AMENDED MOTION TO DIRECT NOTICE OF SETTLEMENT TO THE PROPOSED CLASS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................ 1

II.     BACKGROUND ................................................................................. 2

III.    LEGAL STANDARD FOR SETTLEMENT APPROVAL ................................. 6

IV.     ARGUMENT ..................................................................................... 7

        A.      Certification of the Settlement Class Does Not Require Heightened
                Scrutiny. .............................................................................. 7

        B.      Plaintiff's Claim Is Typical Under Rule 23(a)........................................ 10

        C.      Plaintiff Satisfies Rule 23(a) Adequacy................................................ 14

        D.      The Settlement Class Satisfies Rule 23(b)(3) Predominance. ................. 18

                1.      Common Evidence Would Prove That the No-Poach
                        Agreement Was an Unlawful Restraint of Trade........................ 19

                2.      Common Evidence Would Prove That the No-Poach
                        Agreement in Fact Restrained Trade. ........................................ 24

                        a.      Common Evidence Would Show Antitrust Impact. ........ 24

                        b.      Common Evidence Would Show Class-Wide
                                Damages........................................................................ 27

        E.      The Proposed Schedule for Notice and Final Approval ........................ 28

V.      CONCLUSION.................................................................................... 28

CERTIFICATE OF SERVICE ................................................................................ 32

## TABLE OF AUTHORITIES

Page

**Cases**

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)................................................................................................... passim

*Arrington v. Burger King Worldwide, Inc.*,
 47 F.4th 1247 (11th Cir. 2022) ......................................................................................... 20

*Avilez v. Pinkerton Government Services, Inc.*,
 596 F. App'x 579 (9th Cir. 2015) ...................................................................................... 16

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
 9 F.4th 1102 (9th Cir. 2021) ...................................................................................... 19, 21

*Beattie v. CenturyTel, Inc.*,
 511 F.3d 554 (6th Cir. 2007) .................................................................................... passim

*Binotti v. Duke Univ.*,
 No. 1:20-cv-00470 (M.D.N.C. Apr. 22, 2021) .......................................................... 12

*Bittinger v. Tecumseh Prods. Co.*,
 123 F.3d 877 (6th Cir.1997) ...................................................................................... 13, 16

*Burnett v. Nat'l Ass'n of Realtors*,
 Case No. 19-CV-00332-SRB, 2022 WL 1203100 (W.D. Mo. Apr. 22, 2022) ....................... 22

*Cates v. Cooper Tire & Rubber Co.*,
 253 F.R.D. 422 (N.D. Ohio 2008) .................................................................................... 11, 13

*Comcast Corp. v. Behrend*,
 569 U.S. 27 (2013).............................................................................................................. 27

*Conrad v. Jimmy John's Franchise, LLC* (*"Jimmy John's"*),
 No. 18-CV-00133-NJR, 2021 WL 3268339 (S.D. Ill. July 30, 2021)........................... 9, 12, 15

*Copperweld Corp. v. Indep. Tube Corp.*,
 467 U.S. 752 (1984).......................................................................................................... 22

*Deslandes v. McDonald's USA LLC*,
 No. 17 C 4857, 2021 WL 3187668 (N.D. Ill. July 28, 2021)............................................ 9, 20

*Deslandes v. McDonald's USA, LLC*,
 81 F.4th 699 (7th Cir. 2023) .................................................................................... 9, 20, 21

*Does 1-2 v. Deja Vu Servs., Inc.*,
 925 F.3d 886 (6th Cir. 2019) ............................................................................................ 10

*Finnan v. L.F. Rothschild & Co.*,
 726 F. Supp. 460 (S.D.N.Y. 1989) .................................................................................... 13

*Fonseca v. Hewlett-Packard Co.*,
 No. 19cv1748-GPC-MSB, 2020 WL 6083448 (S.D. Cal. Feb. 3, 2020) ................................ 19

*Hall v. L-3 Commc'ns Corp.*,
 No. 2:15-cv-0231-SAB, 2019 WL 3845462 (E.D. Wash. Jan. 25, 2019) ............................... 10

## TABLE OF AUTHORITIES
### (Cont'd)

Page

*Hosp. Auth. of Metro. Gov't v. Momenta Pharms., Inc.*,
    333 F.R.D. 390 (M.D. Tenn. 2019) ........................................................................... 21

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ................................................................................... 16

*In re Auto. Parts Antitrust Litig.*,
    No. 12-00101, 2018 WL 2181100 (E.D. Mich. Jan. 31, 2018) ................................ 21

*In re Cardizem CD Antitrust Litig.*,
    200 F.R.D. 297 (E.D. Mich. 2001) ................................................................... 18, 24

*In re Flat Glass Antitrust Litig. (II)*,
    No. 11-658, 2012 WL 5383346 (W.D. Pa. Nov. 1, 2012) ...................................... 21

*In re Flat Glass Antitrust Litig.*,
    191 F.R.D. 472 (W.D. Pa. 1999) ............................................................................ 10

*In re Flint Water Cases*,
    499 F. Supp. 3d 399 (E.D. Mich. 2021)................................................................... 10

*In re High-Tech Emp. Antitrust Litig.*,
    856 F. Supp. 2d 1103 (N.D. Cal. 2012) .................................................................. 19

*In re High-Tech Emp. Antitrust Litig.*,
    985 F. Supp. 2d 1167 (N.D. Cal. 2013) ........................................................... passim

*In re Hyundai & Kia Fuel Economy Litig.*,
    926 F.3d 539 (9th Cir. 2019) ..................................................................................... 8

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)............................................................................... 17

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    No. 14-MD-2542 (VSB), 2020 WL 7389330 (S.D.N.Y. Dec. 16, 2020)................... 6

*In re MicroStrategy Secs. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) ..................................................................... 17

*In re Mushroom Direct Purchaser Antitrust Litig.*,
    319 F.R.D. 158 (E.D. Pa. 2016)............................................................................... 22

*In re Nat'l Prescription Opiate Litig.*,
    976 F.3d 664 (6th Cir. 2020) ..................................................................................... 8

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
    269 F.R.D. 80 (D. Me. 2010).................................................................. 8, 9, 16, 17

*In re Outpatient Med. Ctr. Emp. Antitrust Litig.*,
    630 F. Supp. 3d 968 (N.D. Ill. 2022) ...................................................................... 19

*In re Papa John's Emp. & Franchisee Emp. Antitrust Litig.*,
    No. 3:18-cv-825-BJB, 2023 WL 5997294 (W.D. Ky. Sept. 15, 2023) ............ passim

## TABLE OF AUTHORITIES
### (Cont'd)

Page

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ................................................. 10

*In re Polypropylene Carpet Antitrust Litig.*,
   178 F.R.D. 603 (N.D. Ga. 1997).................................................. 24

*In re Polyurethane Foam Antitrust Litig.*,
   No. 1:10 MD 2196, 2014 WL 6461355 (N.D. Ohio Nov. 17, 2014) ..................................... 27

*In re Remicade Antitrust Litig.*,
   No. 17-cv-04326, 2022 WL 3042766 (E.D. Pa. Aug. 2, 2022) ........................................... 7, 18

*In re Ry. Indus. Emp. No-Poach Antitrust Litig.*,
   395 F. Supp. 3d 464 (W.D. Pa. 2019)......................................... 19

*In re Scrap Metal Antitrust Litig.*,
   527 F.3d 517 (6th Cir. 2008) ....................................................... 7

*In re Se. Milk Antitrust Litig.*,
   No. 2:07-CV-208, 2013 WL 2155379 (E.D. Tenn. May 17, 2013) ......................................... 6

*In re Titanium Dioxide Antitrust Litig.*,
   284 F.R.D. 328 (D. Md. 2012)............................................... 10, 11

*In re Titanium Dioxide Antitrust Litig.*,
   No. CIV.A. RDB-10-0318, 2013 WL 5182093 (D. Md. Sept. 12, 2013) ................................ 14

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) .................................................. 6, 10

*In re: Ry. Indus. Emp. No-Poach Antitrust Litig.*,
   MDL No. 2850, 2020 WL 13852931 (W.D. Pa. Aug. 26, 2020) ........................................... 15

*Johnson Assocs. Corp. v. HL Operating Corp.*,
   680 F.3d 713 (6th Cir. 2012) ................................................... 13

*Johnson v. Ariz. Hosp. & Healthcare Ass'n*,
   No. 07-1292, 2009 WL 5031334 (D. Ariz. July 14, 2009)................................................. 26, 28

*Kleen Prods. LLC v. Int'l Paper*,
   306 F.R.D. 585 (N.D. Ill. 2015), *aff'd sub nom. Kleen Prods. LLC v. Int'l Paper Co.*,
   831 F.3d 919 (7th Cir. 2016) ................................................... 24

*Ladd v. Nashville Booting, LLC*,
   No. 3:20-CV-00626, 2023 WL 3400485 (M.D. Tenn. May 11, 2023) .................................... 27

*Merenda v. VHS of Mich., Inc.*,
   296 F.R.D. 528 (E.D. Mich. 2013) ......................................... 26

*National Collegiate Athletic Association v. Alston*,
   141 S. Ct. 2141 (2021)............................................................... 9

*Nitsch v. Dreamworks Animation SKG Inc.*,
   315 F.R.D. 270 (N.D. Cal. 2016)...................................... passim

**TABLE OF AUTHORITIES**
**(Cont'd)**

Page

*Olden v. LaFarge Corp.*,
   383 F.3d 495 (6th Cir. 2004) ................................................... 28

*Pena v. Taylor Farms Pac., Inc.*,
   305 F.R.D. 197, 215 (E.D. Cal. 2015), *order clarified sub nom. Carmen Pena v. Taylor Farms Pac., Inc.*, No. 2:13-CV-01282-KJM-AC, 2015 WL 12550898 (E.D. Cal. Mar. 30, 2015), *aff'd,* 690 F. App'x 526 (9th Cir. 2017) ................................................... 15

*Powers v. Hamilton Cty. Public Defender Comm'n*,
   501 F.3d 592 (6th Cir. 2007) ................................................... 18

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
   646 F.3d 347 (6th Cir. 2011) ................................................... 18

*Robinson v. Jackson Hewitt, Inc.*,
   No. 2:19-cv-09066-MEF-ESK (D.N.J. Oct. 20, 2023) ................................................... 20

*Robinson v. Shelby Cnty. Bd. of Educ.*,
   566 F.3d 642 (6th Cir. 2009) ................................................... 6

*Seaman v. Duke University*,
   No. 1:15-CV-462, 2018 WL 671239 (M.D.N.C. Feb. 1, 2018) ............................ 12, 23, 26, 27

*Smith v. Maco Management Co., Inc.*,
   No. 2:18-CV-00082, 2019 WL 1437927 (M.D. Tenn. Apr. 1, 2019) ................................................... 15

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ................................................... 7, 17

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ................................................... 18

*United States v. eBay, Inc.*,
   968 F. Supp. 2d 1030 (N.D. Cal. 2013) ................................................... 19

Walsh v. Gilbert Enters.,
   No. CV 15-472-WES, 2019 WL 1206885 (D.R.I. Mar. 14, 2019) ................................................... 13

*Weisfeld v. Sun Chem. Corp.*,
   84 F. App'x 257 (3d Cir. 2004) ................................................... 21

*Wilson v. Pactiv LLC*,
   No. 5:21-cv-00841-SB-KK, 2022 WL 3013147 (C.D. Cal. July 1, 2022) ................................................... 8

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2012) ................................................... 14

**Treatises**

1 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 3:58 (6th ed. 2023) ........... 2

2 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 4:63 (6th ed. 2023) ........... 8

**TABLE OF AUTHORITIES**
**(Cont'd)**

Page

**Other Authorities**

Arindrajit Dube et al., *Monopsony in Online Labor Markets*,
   2 Am. Econ. Rev.: Insights 33 (2020) ...................................................................... 25

Ioana Marinescu & Eric Posner, *A Proposal to Enhance Antitrust Protection Against Labor
   Market Monopsony* 2
   (Roosevelt Inst., Working Paper Dec. 21, 2018) ............................................................. 12, 25

Press Release, Justice Department and Federal Trade Commission Release Guidance for Human
   Resource Professionals on How Antitrust Law Applies to Employee Hiring and Compensation
   (Oct. 20, 2016) .................................................................................................... 25

Suresh Naidu et al., *Antitrust Remedies for Labor Market Power*,
   132 Harv. L. Rev. 536 (2018) ............................................................................... 12, 25

## I.     **INTRODUCTION**

Plaintiff Ashley Page respectfully requests that this Court direct notice of settlement to the proposed settlement class of Papa John's (defined below) employees pursuant to Federal Rule of Civil Procedure ("Rule") 23(e)(1).  This case challenges an alleged agreement between and among Papa John's and its franchisees not to hire or solicit each other's employees that was written into each franchise agreement ("No-Poach Agreement").  Consol. Am. Compl. ("CAC") ¶ 1 (Feb. 2, 2019), ECF No. 54.  Because those agreements limited employee mobility and competition for labor and because Papa John's restaurants' structured compensation system linked employees' compensation to that of other employees, the No-Poach Agreement depressed compensation for all Papa John's restaurant employees in violation of Section 1 of the Sherman Act.  *Id.* ¶ 2; *see also* Section IV.D, *infra*.

Following substantial discovery, including ten depositions, the production of over 400,000 pages of documents, and significant econometric analysis of Papa John's employee data,[1] Plaintiff and Defendants Papa John's International, Inc. and Papa John's USA, Inc. ("Defendants" or "Papa John's") reached a settlement in the amount of $5 million to resolve the individual and class claims raised in this case.[2]  The settlement also provided for injunctive relief, including antitrust compliance training for Defendants' U.S. executives at the vice president level and above, additional communications from Papa John's committing not to enforce any existing no-poach provision under any circumstance, and commitments that it will not include a no-poach provision in any new franchise agreement for the next five years.  On

---

[1] Defendants produced over 18,000,000 records of employee data from PeopleSoft (the system that contains employee data for corporate-owned stores and some franchisee-owned stores); over 6,650,000 records from the applicant tracking systems Defendants used; and over 376,000,000 records of Polling Data drawn from Defendants' point of sale system.  Further Joint Status Report at 2 (July 7, 2021), ECF No. 165.

[2] Papa John's agrees to certification of the class for settlement purposes only.

September 15, 2023, this Court denied without prejudice Plaintiff's motion to direct notice of the proposed settlement, concluding that it would "likely be able to . . . approve the proposal under Rule 23(e)(2)," but requesting additional information regarding typicality, adequacy, and predominance under Rules 23(a) and (b).  *In re Papa John's Emp. & Franchisee Emp. Antitrust Litig.*, No. 3:18-cv-825-BJB, 2023 WL 5997294, at *3-4 (W.D. Ky. Sept. 15, 2023) ("Order").

This Amended Motion to Direct Notice provides the additional information the Court requested.[3]  With respect to typicality, Ms. Page is both typical of the class and an adequate representative because her claim of suppressed compensation arises from the same course of conduct—the No-Poach Agreement—that gives rise to the claims of the other class members and is based on the same legal theory of suppressed labor competition and compensation. Differences, including job titles, attempts to transfer to other Papa John's locations, and signing arbitration agreements, do not negate typicality and adequacy because none "go to the heart of the litigation."  1 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 3:58 (6th ed. 2023).  Further, predominance under Rule 23(b)(3) is satisfied.  Plaintiff would demonstrate all three elements of her antitrust claim—agreement, impact, and damages—with common proof, including internal documents, testimony, data, economic theory and research, and econometric analysis.  Plaintiff's Amended Motion to Direct Notice should be granted.

## II.    <u>BACKGROUND</u>

Plaintiff alleges that Defendants violated the Sherman Antitrust Act by "orchestrat[ing] an agreement between and among Papa John's restaurant franchisees, pursuant to which the franchisees agreed not to hire or solicit each other's employees or Papa John's employees."

---

[3] Rather than repeat information provided in the initial motion, Plaintiff incorporates her initial Motion for Preliminary Approval (July 27, 2022), ECF No. 202 ("Preliminary Approval Motion"), and the supporting documents thereto.

CAC ¶ 1.  Plaintiff further alleges that this No-Poach Agreement depressed wages and benefits classwide because the decreased competition for labor between Papa John's restaurants, combined with compensation structures that linked employees' pay to one another, resulted in artificially depressed compensation for all Papa John's restaurant employees.  *Id.* ¶ 2.

**Independent Employers.**  Papa John's and its franchisees are separate employers.  They are independent businesses that expressly disavow any joint employer relationship.  *See, e.g.*, Decl. of Lin Y. Chan ISO Am. Mot. ("Chan Decl."), Ex. 1 at -248 (exemplar Franchise Agreement ███████████████████████████████████); *id.*, Ex. 2 at -207 (Papa John's training guide for franchisee managers █████████████████████████ ███████████████████████████████████); *id.*, Ex. 3 at -168 (email exchange regarding ███████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████).  The Franchise Agreement cautions that franchisees "███████████████████████████████" *Id.*, Ex. 1 at -209.

**No-Poach Agreement.**  Papa John's franchisees each signed a Franchise Agreement containing a written agreement not to "███████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████████████████████" *See, e.g., id.* at -240 (¶ 16(e)).  Internal policy documents show that Papa John's instructed its corporate stores █ ████████████████████.  *See id.*, Ex. 4 at -079. ("███████████████████ ██████████████████████████████████████████████ ███████████████████████").

**Enforcement.**  This "No-Poach Agreement" was enforced by Papa John's and its franchisees. 

. *See id.*, Ex. 1 at -243.  Additionally, Papa John's corporate managers implemented a

and "      "

. *See id.*, Ex. 4 (                    ); *id.*, Ex. 5 at -792 (email from corporate to franchisee

).  Franchisees also took steps to ensure others were complying with the No-Poach Agreement, including

. *See, e.g.*, *id.*, Ex. 6 at -917 (

); *id.*, Ex. 7 at -168 (

); *id.*, Ex. 8 at -570 (

).

**Pay Suppression.**  Plaintiff alleges and would show that, by restricting restaurant workers' ability to work at different Papa John's locations, the No-Poach Agreement reduced Papa John's workers' ability to utilize brand-specific skills acquired through months or years of training.  Papa John's uses a proprietary, specific, idiosyncratic, time-consuming, and comprehensive training system that equips workers with brand-specific skills.  For example,

. *See id.*, Ex. 9 at -364-66 (Papa John's Operations Manual).  This Papa John's-specific training

-4-

includes specific instructions such as ██████████████ .  *Id.*; *see also id.*, Ex. 10 (Bob

Billman Dep. Tr.) at 23:7-16 (█████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████ ).  As expert analysis would also show, these skills are specific

to Papa John's and are of value primarily to other Papa John's stores.  *Id.* ¶ 4.

    **Expert Work.**  At the time of settlement, the Parties had not yet exchanged expert

reports or taken expert discovery.  *Id.* ¶ 3.  However, Plaintiff retained an econometrician who

was prepared to demonstrate through expert modeling that the No-Poach Agreement in fact did

suppress Papa John's workers' wages and opportunities on a class-wide basis.  *Id.* ¶ 5.

    Plaintiff's initial modeling took into account ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████ *Id.*, Ex. 11 at -305; *see also id.*, Ex. 10 (Billman Dep. Tr.) at

22:9-23:2, 35:5-37:1 (confirming that ████████████████████████████████████████

███████ ).  Additionally, Plaintiff's model incorporated payroll data collected from Papa John's

"PROFIT" payroll system, which contains wage information for each class member.  *Id.* ¶ 5.

Using this information, a standard regression model would calculate the difference in pay per

hour while the No-Poach Agreement was in effect, and control for various factors, such as the

local minimum wage, local per capita income, compensation frequency, county unemployment

rate, and occupation fixed effects. *Id.* Plaintiff's initial modeling showed wage suppression

across both manager and non-manager positions. *Id.* ¶ 6.

## III.   <u>LEGAL STANDARD FOR SETTLEMENT APPROVAL</u>

This Court should exercise its discretion to grant preliminary approval to the proposed

class settlement. *See Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 647 (6th Cir. 2009)

("[T]he acceptance of a settlement in a class action suit is discretionary with the court . . . ."

(citation omitted)). "The parties and their counsel are in a unique position to assess the potential

risks of litigation, and thus district courts in exercising their discretion often give weight to the

fact that the parties have chosen to settle." *In re Keurig Green Mountain Single-Serve Coffee

Antitrust Litig.*, No. 14-MD-2542 (VSB), 2020 WL 7389330, at *2 (S.D.N.Y. Dec. 16, 2020); *In

re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2013 WL 2155379, at *5 (E.D. Tenn. May 17,

2013) ("The judgment of experienced counsel and class representatives regarding the settlement

should be given significant weight."). To grant preliminary approval, a court need only have

"probable cause to submit the [settlement] proposal to class members" and hold a fairness

hearing. *Keurig*, 2020 WL 7389330, at *2.

Here, the proposed settlement satisfies the requirements set forth in Federal Rule of Civil

Procedure 23(e), governing the settlement, voluntary dismissal, or compromise of a class

proposed to be certified for purposes of settlement. Order at *3. The party seeking class

certification for purposes of judgment on the proposal must also meet the four prerequisites of

Federal Rules of Civil Procedure 23(a)(1) through (4)—numerosity, commonality, typicality, and

adequacy—and one of the three requirements listed in Rule 23(b). *See In re Whirlpool Corp.

Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013).

As part of that analysis, this Court previously found that the parties provided sufficient

information to satisfy the Rule 23(a) and (b) prerequisites of numerosity, commonality, and

superiority, but requested further information to demonstrate adequacy, typicality, and predominance.  The Court also questioned whether certification of this settlement class warrants increased or decreased scrutiny.  Order at *6 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 n.16 (1997)); May 1, 2023 Prelim. Approval Hearing Tr. 17:11–14, 25:9–18.  Here, the settlement satisfies Rule 23 and does not warrant heightened scrutiny.

## IV.   ARGUMENT

### A.   Certification of the Settlement Class Does Not Require Heightened Scrutiny.

The circumstances that give rise to heightened scrutiny of settlement classes do not apply here for several reasons.

**Antitrust Claims.**  *First*, the type of litigation that this settlement resolves—an antitrust case alleging a common course of conduct—does not warrant heightened scrutiny.  *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297-304 (3d Cir. 2011).  As opposed to the "sprawling" global settlement of current and future asbestos-related claims proposed in *Amchem*, the Supreme Court held that settlement classes are more easily certified in antitrust cases, stating, "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."  *Amchem*, 521 U.S. at 624.  In antitrust cases, "proof of the *conspiracy* is a common question that is thought to predominate over other issues of the case."  *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008); *accord In re Remicade Antitrust Litig.*, No. 17-cv-04326, 2022 WL 3042766, at *7 (E.D. Pa. Aug. 2, 2022).  As discussed further below, Plaintiff does not rely on the *settlement* as the glue that binds the class (unlike *Amchem*'s global class of current and future asbestos claimants with varying levels and types of exposure, medical histories, family situations, and injuries).  *Amchem*, 521 U.S. at 622-25.  Rather, all members of the proposed settlement class here share the same injury—wage suppression suffered during a discrete time period and from a common course of conduct, i.e., the agreement between Papa

John's and its franchisees not to poach each other's employees.  *See* Section IV.B-D, *infra*.

**Manageability.**  *Second*, the fact that the proposed class is for settlement and not litigation reduces the level of scrutiny because "a district court need not inquire whether the case, if tried, would present intractable management problems."  *Amchem*, 521 U.S. at 620.  Because the manageability requirement is readily met in the settlement context, "predominance—the main focus of manageability—recedes in importance as well."  2 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 4:63 (6th ed. 2023); *see also In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019) ("The criteria for class certification are applied differently in litigation and settlement classes" because "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial."); *accord Wilson v. Pactiv LLC*, No. 5:21-cv-00841-SB-KK, 2022 WL 3013147, at *2 (C.D. Cal. July 1, 2022).  Consequently, "courts 'regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns.'"  *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 674 (6th Cir. 2020) (quoting William B. Rubenstein, *Newberg on Class Actions* § 4:63 (5th ed. 2020)); *see also Wilson*, 2022 WL 3013147, at *1-5 (certifying settlement class after declining to certify litigation class); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 269 F.R.D. 80, 81-82 (D. Me. 2010) (certifying nationwide settlement class despite the First Circuit's prior reversal of litigation class certification).

This Court noted that "no court in the country has yet approved a nationwide no-poach settlement in the restaurant context" and stated "two district courts within the Seventh Circuit have *rejected* classwide settlements in this context, though the Seventh Circuit recently remanded one of those cases for reconsideration."  Order at *4.  In fact, no court has been presented with a classwide *settlement* in the restaurant franchise context—both *Jimmy John's*

and *McDonald's* addressed contested certification of a litigation class where manageability was at issue. *See Conrad v. Jimmy John's Franchise, LLC* ("*Jimmy John's*"), No. 18-CV-00133-NJR, 2021 WL 3268339 (S.D. Ill. July 30, 2021); *Deslandes v. McDonald's USA LLC*, No. 17 C 4857, 2021 WL 3187668 (N.D. Ill. July 28, 2021). Importantly, in both of those cases, the district courts premised their denials of class certification on the incorrect premise that the Supreme Court's recent decision in *National Collegiate Athletic Association v. Alston*, 141 S. Ct. 2141 (2021), required a full rule of reason analysis. *Jimmy John's*, 2021 WL 3268339, at *10; *Deslandes*, 2021 WL 3187668, at *7. Plaintiffs in *Deslandes* appealed, and the Seventh Circuit explained that *Alston* did no such thing, reversing the trial court and explaining that the per se rule applies to plaintiffs' claims.[4] *Deslandes v. McDonald's USA, LLC*, 81 F.4th 699, 703-05 (7th Cir. 2023). The opinion ends: "Plaintiffs sought class certification, and the district court said no. The court may think it wise to reconsider in light of the need for a remand and the analysis in this opinion." *Id.* at 705.

**Litigated claims.** **Third**, the fact that this case has been litigated and subject to extensive discovery distinguishes it from *Amchem*, a case that was never meant to be litigated and that, within the span of a single day, saw settling parties present a complaint, an answer, a proposed settlement agreement, and a joint motion for conditional class certification. *Amchem*, 521 U.S. at 601-02; *see also New Motor Vehicles*, 269 F.R.D. at 89-90 (the heavily litigated nature of the case for which a settlement class was proposed eliminated the concerns present in *Amchem*).

**Policy Favoring Settlement.** **Finally**, limited scrutiny with respect to certification of

---

[4] The unanimous three-judge panel included Judge Easterbrook and Judge Wood, among the most respected antitrust jurists in the country. *See, e.g.*, ProMarket, George J. Stigler Ctr., Univ. of Chi. Booth Sch. of Bus., A Conversation with Judges Frank Easterbrook and Diane Wood (June 24, 2023), *available at* https://www.promarket.org/2023/06/24/a-conversation-with-judges-frank-easterbrook-and-diane-wood/.

settlement classes is warranted given "the strong public interest in encouraging settlement of complex litigation and class action suits." *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (citation omitted); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019) (same). Thus, courts readily certify settlement classes involving a common course of conduct. Even outside of settlement classes, courts "may not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Whirlpool*, 722 F.3d at 851-52 (citation omitted). Courts, therefore, often certify settlement classes even if they would have faced significant risks if challenged through litigation. *See, e.g.*, *In re Flint Water Cases*, 499 F. Supp. 3d 399, 424-25, 430-31 (E.D. Mich. 2021) (certifying settlement class of children, adults, property owners, and business owners exposed to contaminants in municipal water); *Hall v. L-3 Commc'ns Corp.*, No. 2:15-cv-0231-SAB, 2019 WL 3845462, at *4-5 (E.D. Wash. Jan. 25, 2019) (certification of settlement class "is further supported by the major risks that the class faced on liability, damages, and class certification"). Accordingly, no heightened scrutiny is necessary here.

### B. Plaintiff's Claim Is Typical Under Rule 23(a).

Plaintiff's claim is typical of the class because "it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and . . . her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (citation omitted). "Typicality . . . does not mean identical." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 479 (W.D. Pa. 1999). Rather, typicality is "liberally construed by courts" and "in the antitrust context . . . will be established by plaintiffs and all class members alleging the same antitrust violations by defendants." *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 338-39 (D. Md. 2012) (citation omitted).

Here, Plaintiff's "claims arise from the same allegedly [anticompetitive] practice that

-10-

gives rise to the claims of the other class members." *Beattie*, 511 F.3d at 561.  Like all other proposed class members, Plaintiff Page was a Papa John's employee who worked for Papa John's restaurants within the class period; alleged the same antitrust violation (the No-Poach Agreement); and seeks compensation for the same injury under the same theory (wage suppression).  "This is the same allegation any other class member would bring against [Papa John's], and therefore resolution of [Papa John's] liability under [the Sherman Act] with regards to [Plaintiff's] claim will also resolve the company's liability as to claims brought by other class members." *Id.* at 561-62.  "Because [Plaintiff's] claims arose from the same alleged conduct, [her] claim[ is] typical insofar as [she] will seek relief under the same legal theory and will 'tend to advance the interests of the absent class members.'" *Titanium*, 284 F.R.D at 339 (citation omitted).

**Classwide Pay Suppression.**  The fact that Plaintiff Page did not attempt to move franchises to seek better wages does not negate typicality.  As discussed in Section IV.D below, the common policy—refusal to hire Papa John's employees from other Papa John's restaurants—suppressed pay for all Papa John's employees because it limited competition for labor (through offering higher pay).  Because the wages of all employees are linked, this decreased labor competition had the effect of suppressing wages for all employees, not only those who sought work elsewhere.  *See* Section IV.D, *infra*.

The fact that Plaintiff Page did not attempt to transfer while other class members did is a distinction without a difference that "do[es] not preclude typicality." *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 429 (N.D. Ohio 2008); *see also In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1181 (N.D. Cal. 2013) (typicality met in no-poach case where single Sherman Act violation from single conspiracy alleged).  Other courts in no-poach cases,

-11-

such as the court in *Seaman v. Duke University*, have similarly found typicality satisfied where claims "are based on the same alleged facts and legal theory—that a no-hire agreement existed between the defendants and that the agreement injured the faculty by suppressing their compensation and causing monetary damages." No. 1:15-CV-462, 2018 WL 671239, at *4 (M.D.N.C. Feb. 1, 2018). Whether the named plaintiffs themselves sought to transfer did not enter the analysis. *See, e.g.*, Chan Decl. Ex. 12, *Binotti v. Duke Univ.*, No. 1:20-cv-00470 (M.D.N.C. Apr. 22, 2021), ECF No. 55 at 3–4; *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 283–85 (N.D. Cal. 2016) ("*Animators*"); *High-Tech*, 985 F. Supp. 2d at 1181.

Indeed, this is not a novel theory. It is well-supported by the academic literature. *See, e.g.*, Chan Decl. Ex. 13[5]; *id.*, Ex. 14[6]. The impact of no-poach agreements on wages generally is also well-accepted by courts evaluating typicality. *See, e.g.*, *Animators*, 315 F.R.D. at 283-85, 293 (N.D. Cal. 2016); *Seaman*, 2018 WL 671239, at *8, *10; *High-Tech*, 985 F. Supp. 2d at 1181.[7]

In short, Plaintiff Page's representation of the Settlement Class is appropriate because she suffered the same harm from the same alleged unlawful conduct flowing from the effects of the No-Poach Agreement. Whether the Court accepts Plaintiffs' theory on the merits is a separate matter; on class certification, "a district court should not inquire into the merits of the suit in assessing typicality." *Beattie*, 511 F.3d at 561.

**<u>Arbitration Agreements.</u>** The existence of arbitration agreements is, at most, an

---

[5] Suresh Naidu et al., *Antitrust Remedies for Labor Market Power*, 132 Harv. L. Rev. 536, 538 (2018).

[6] Ioana Marinescu & Eric Posner, *A Proposal to Enhance Antitrust Protection Against Labor Market Monopsony* 2 (Roosevelt Inst., Working Paper Dec. 21, 2018).

[7] The *Jimmy John's* case is an outlier in this regard and misapprehended plaintiffs' theory of harm. 2021 WL 3268339, at *5. Moreover, the *Jimmy John's* court expressed concerns about plaintiff Conrad's employment record. *Id.* at *2. No such concerns exist here with Ms. Page.

affirmative defense to prosecuting parallel claims in court rendering them irrelevant to the

typicality analysis. *See Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 719 (6th

Cir. 2012) (describing arbitration agreements as affirmative defenses). "[P]otential affirmative

defenses against some class members do not bar class certification, as plaintiffs' claims need not

be factually indistinguishable to be typical." *Cates*, 253 F.R.D. at 430; *see also Beattie*, 511 F.3d

at 561 ("[A] representative's claim need not always involve the same facts or law, provided there

is a common element of fact or law." (citation omitted)).

The *Bittinger* case is instructive. *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877 (6th

Cir. 1997). There, two-thirds of potential class members had signed papers releasing the

defendant company from liability when they accepted partially-funded alternative health plans,

while the rest had not. *Id.* at 884. The Sixth Circuit rejected the defendant's argument that

typicality was undermined, holding that "this difference is not enough to justify rejection of class

certification." *Id.*; *see also Animators*, 315 F.R.D. at 284 (holding that the fact that some absent

class members signed arbitration agreements did not defeat typicality because they did not

"threaten to become the focus of the litigation" (citation omitted)); *Walsh v. Gilbert Enters.*, No.

CV 15-472-WES, 2019 WL 1206885, at *3-4 (D.R.I. Mar. 14, 2019) (finding typicality and

adequacy for a class representative who had not signed an arbitration agreement but who was

representing a litigation class that included members who had signed one); *Finnan v. L.F.

Rothschild & Co.,* 726 F. Supp. 460, 465 (S.D.N.Y. 1989) (certifying class despite the fact that

some, but not all, class members had signed arbitration agreements).

That arbitration agreements do not bar a finding of typicality is particularly true here,

where, based on the inclusion of arbitration signers in the settlement class, Papa John's does not

seek to enforce the arbitration agreement as an affirmative defense. Indeed, other courts have

found that typicality is met where a portion of the settlement class has signed arbitration agreements. *See, e.g.*, *In re Titanium Dioxide Antitrust Litig.*, No. CIV.A. RDB-10-0318, 2013 WL 5182093, at *5 (D. Md. Sept. 12, 2013) (including those who signed arbitration agreements in the settlement class and preliminarily approving settlement). Here, typicality is satisfied.

### C. Plaintiff Satisfies Rule 23(a) Adequacy.

Plaintiff Page is also an adequate representative of the proposed settlement class. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (citation omitted). The two criteria for determining adequacy of representation are: (1) "the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."[8] *Id.* (citation omitted). Here, there are no conflicts: Plaintiff Page has the same interest as the Class in proving that Defendants' conduct violated the antitrust laws and depressed Papa John's employee compensation and mobility as a result.

**Managers and Non-Managers.** There is no conflict between Plaintiff Page and the class due to Ms. Page having been both an employee and a manager. Respectfully, in ruling to the contrary, the *Jimmy John's* court erred: courts both inside and outside of the no-poach context consistently find that where, as here, a uniform policy affects managers and employees alike—

---

[8] Plaintiff incorporates its discussion of the adequacy of class counsel in its prior motion, which this Court found was sufficient to satisfy adequacy of class counsel. *See* Order at *6.

that is, all class members' wages are suppressed—no conflict exists.[9]  Indeed, in the *High-Tech Employee* no-poach case, the court certified a *litigation* class that involved thousands of job titles, including managers and non-managers, allowing software engineer class representatives who had no management responsibilities to represent the class.  985 F. Supp. 2d at 1182; *see also Animators*, 315 F.R.D. at 317 (no-poach case involving numerous positions, including managers and employees); *In re: Ry. Indus. Emp. No-Poach Antitrust Litig.*, MDL No. 2850, 2020 WL 13852931 (W.D. Pa. Aug. 26, 2020) (same).

The same is true outside of the no-poach context.  In *Smith v. Maco Management Co., Inc.*, for example, the court approved a group of both managers and non-managers for purposes of conditional certification under the FLSA.  No. 2:18-CV-00082, 2019 WL 1437927, at *4 (M.D. Tenn. Apr. 1, 2019).  Noting that the defendant's "conflict of interest" argument had "intellectual appeal," the court nevertheless rejected it because "there is no indication . . . that the success of putative plaintiffs who were former [employees] will rest on their ability to prove that [their managers] acted illegally.  Here, [p]laintiffs allege that they are victims of illegal pay policies that originated from the corporate headquarters and the [managers] were enforcing that corporate policy."  *Id.* at *5; *see also Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 215 (E.D. Cal. 2015), *order clarified sub nom. Carmen Pena v. Taylor Farms Pac., Inc.*, No. 2:13-CV-01282-KJM-AC, 2015 WL 12550898 (E.D. Cal. Mar. 30, 2015), *aff'd,* 690 F. App'x 526 (9th Cir. 2017) (no conflict between supervisors and subordinates subject to uniform policy).

**Arbitration Agreements.**  Similarly, the fact that some class members signed arbitration agreements does not make Plaintiff inadequate as a class representative for the same reasons her

---

[9] Moreover, the *Jimmy John's* court "**reject[ed]** the invitation to adopt a bright-line rule barring classes representing both supervisory and nonsupervisory employees."  2021 WL 3268339, at *7 (emphasis added).

claims are typical of the class.  *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) ("The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members.").  To satisfy adequacy, Plaintiff's interests need not be *identical* to other class members' interests; rather, she is adequate because she, like all class members subject to the No-Poach Agreement, seeks compensation for the same injury based on wage suppression. The Ninth Circuit's unpublished opinion in *Avilez v. Pinkerton Government Services, Inc.*, 596 F. App'x 579 (9th Cir. 2015), to which the Court refers, is not persuasive in the face of binding Sixth Circuit authority that strongly suggests that the presence of arbitration clauses for unnamed class members does not defeat adequacy (and typicality) where, as here, all class members allege the same antitrust violation.  *See Bittinger*, 123 F.3d at 884 (rejecting argument that affirmative defense as to certain class members undermined the ability of the named plaintiffs against whom the affirmative defense was not relevant to represent the class).

The discount for the claims of class members who signed arbitration agreements—a feature of the settlement's plan of allocation—similarly does not present an obstacle to Plaintiff's adequacy.  The claim is the same, the theory of damages is the same, and the only difference is the distribution of the common settlement fund.  As such, courts have approved settlements that acknowledge the relative strength and weaknesses of class members' individual claims and distribute smaller relative awards to certain subgroups.

For example, in *In re New Motor Vehicles Canadian Export Antitrust Litigation*, the court certified a settlement class where the First Circuit vacated a previous certification of a litigation class.  269 F.R.D. at 81, 92-93.  Although there was concern about overbreadth (i.e., inclusion of class members who would not have claims if the case were to proceed in litigation),

-16-

the court found that in the settlement context, inclusion of such class members was appropriate because the allocation plan could appropriately reflect any distinctions. *Id.* at 89.  In distinguishing their inclusion from the sprawling *Amchem* class, the court wrote that "over the very lengthy course of the litigation, I have made rulings on all the substantive recovery issues . . . . So unlike *Amchem*, I do have the opportunity to make an informed adjustment of the class." *Id.* at 93.  That is, unlike in *Amchem*, "the distinctions made within the class were . . . the product of judicial rulings," not "created by the settlement itself."  *Id.* at 90.  The same is true here where the issue of employees with arbitration agreements has already been litigated and decided in this court.  *See* MTD Order (Oct. 21, 2019), ECF No. 90 at 5-9.  The value of their claims is not subject to speculation and has been appropriately discounted on that litigated basis.  And as the court reasoned in *New Motor Vehicles*, "[w]orrying that too many members are included in this class seems an unrealistic theoretical exercise.  Given the small size of the individual claims and the complexity of the basis for recovery, no one would pursue these claims on his or her own . . . ."  269 F.R.D. at 93; *see also In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 176 (E.D. Pa. 2000) (finding the named plaintiff adequate even though "different parties may have different measures of damages," which are "variations [that] are addressed in the plan of allocation" and allocating a smaller percentage of the claim to certain individuals); *see also In re MicroStrategy Secs. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (10% allocated to "in-and-out traders" where those traders had weaker causation claims than other class members); *Sullivan*, 667 F.3d at 328 ("Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." (citation omitted)).

In sum, there are no conflicts between Plaintiff's interests and the interests of the class. All proposed class members stand to benefit from Plaintiff's prosecution of this case because

Ms. Page and the class members were subjected to the same alleged unlawful conduct flowing from the same effects of the No-Poach Agreement.

### D.   The Settlement Class Satisfies Rule 23(b)(3) Predominance.

The proposed settlement class meets the predominance requirement because "issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352–53 (6th Cir. 2011).  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  This requires the Court to consider the "relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).  It does not require that all elements of a claim be susceptible to classwide proof—only that "questions" common to the class are "at the heart of the litigation," *Powers v. Hamilton Cty. Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007), and "generalized proof" will "predominate over those issues that are subject only to individualized proof," *Beattie*, 511 F.3d at 564 (citation omitted).  "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless."[10] *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001).

In its Order, the Court acknowledged that the main questions in the case are common: whether Papa John's entered into an unlawful agreement (liability), whether that agreement injured plaintiff and the class (impact), and whether damages can be measured through a common method (damages).  Order at *5.  The Court, however, asked (1) "how Plaintiff would

---

[10] As in other antitrust cases involving settlement classes, "the fact that Defendants have agreed to settle not just with the Named Plaintiffs, but with thousands of similarly situated [class members], is a strong signal of the predominance of common factual and legal questions." *Remicade*, 2022 WL 3042766, at *7 n.12.

prove whether the no-poach agreements at issue amount to a restraint of trade, and [(2)] where

that proof would show such provisions restrain trade." *Id.* at *6. Plaintiff addresses each

question in turn.

**1.** **Common Evidence Would Prove That the No-Poach Agreement Was an Unlawful Restraint of Trade.**

Common evidence would show that the No-Poach Agreement is per se unlawful. To

determine whether common evidence would predominate "depends, in part, on whether the

Plaintiff's antitrust claim is subject to the rule of reason or per se analysis." Order at *5. First,

this question is itself a common question that predominates as to the class. Second, as explained

below, per se analysis applies.

**Per Se Analysis Applies.** Until recently—and as this Court articulated in its Order—it

was commonly understood that, outside of the franchise context, an agreement not to hire a

competitor's employees was a "classic" horizontal restraint subject to per se review. *See* Order

at *5 ("The anticompetitive effect of no-poach restraints would be obvious if different

restaurants agreed not to hire one another's workers."); *see also In re Outpatient Med. Ctr. Emp.

Antitrust Litig.*, 630 F. Supp. 3d 968, 988 (N.D. Ill. 2022) ("It makes no difference that

Defendants were dividing employees as opposed to territories, customers, or products.");

*Fonseca v. Hewlett-Packard Co.*, No. 19cv1748-GPC-MSB, 2020 WL 6083448, at *9 (S.D. Cal.

Feb. 3, 2020) (same); *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 480-

85 (W.D. Pa. 2019) (same); *United States v. eBay, Inc.*, 968 F. Supp. 2d 1030, 1039 (N.D. Cal.

2013) (same); *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1122 (N.D. Cal.

2012) (same); *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1110 n.4 (9th

Cir. 2021) (finding "considerable merit" to the argument that "the per se rule applies to naked

non-solicitation agreements because it is a form of labor-market allocation").

-19-

Two recent appellate decisions confirm that such an agreement in the franchise context is no different.  In *McDonald's*, the Seventh Circuit addressed a no-poach provision substantially similar in all relevant ways to the No-Poach Agreement at issue here.  81 F.4th at 703.  The court found that because "[t]he complaint alleges that McDonald's operates many restaurants itself or through a subsidiary, and that it enforced the no-poach clause at those restaurants," the arrangement was "horizontal: workers at franchised outlets could not move to corporate outlets, or the reverse."  *Id.*  As such, the district judge was wrong in "jettison[ing] the *per se* rule."  *Id.* Similarly, in *Burger King*, the Eleventh Circuit held that a similar restraint to that here in the Burger King franchise system was subject to Section 1 scrutiny because "the No-Hire Agreement deprives the marketplace of independent centers of decisionmaking about hiring, and therefore of actual or potential competition."  *Arrington v. Burger King Worldwide, Inc.*, 47 F.4th 1247, 1255 (11th Cir. 2022) (citations omitted).  Antitrust enforcers agree.  *See* Chan Decl. Ex. 15, Br. for U.S.A. as Amicus Curiae at 7, *Robinson v. Jackson Hewitt, Inc.*, No. 2:19-cv-09066-MEF-ESK (D.N.J. Oct. 20, 2023), ECF No. 282 ("If the employers would or potentially could compete to hire workers from the same labor pool absent the agreement, the agreement is horizontal.  This is just as true in the franchise context as it is elsewhere.").

As *Deslandes* makes clear, once per se analysis applies, only proof of the conspiracy—and not market definition—is required.  In other words, if the per se standard applies, the presence of non-Papa John's fast food employers within a local labor market is irrelevant to liability.  And here, the conspiracy—i.e., the existence of the No-Poach Agreement—is a central question, the answer to which would be established by common evidence.  Other courts in antitrust cases have found that "determination of the conspiracy issue will focus on the conduct of the Defendants, not individual class members.  The existence of a conspiracy is central to the

claims of all putative class members and therefore appropriate for resolution generally on a class-wide basis." *Hosp. Auth. of Metro. Gov't v. Momenta Pharms., Inc.*, 333 F.R.D. 390, 407 (M.D. Tenn. 2019). Indeed, this case is easier than most antitrust cases because the agreement itself is not in dispute—the standardized written franchise agreement is common evidence that each and every Papa John's franchisee in the United States agreed to abide by the No-Poach Agreement.[11] *See* Section II, *supra*.

To avoid per se liability, Papa John's would need to prove an affirmative defense—that the restraint was "ancillary" to a legitimate, pro-competitive collaboration. *McDonald's*, 81 F.4th at 705 (Ripple, J., concurring). That is, that the restraint was "*both* . . . subordinate and collateral to a legitimate business collaboration among the defendants, *and* . . . reasonably necessary to achieve a procompetitive objective of the franchise agreement." *Id.* at 706 (citations omitted); *see also Aya Healthcare*, 9 F.4th at 1109-11 (same). Even if Plaintiff sought certification of a *litigation* class, the existence (or non-existence) of this affirmative defense would turn on common evidence.

But even if the per se standard did not apply and the Court were to evaluate Plaintiff's case under the rule of reason, Plaintiff would still adduce common evidence to demonstrate market power and anticompetitive effects of the No-Poach Agreement. Other courts examining whether per se or rule of reason applied found that the specific analytical framework used was "irrelevant to whether the requirements of Rule 23(b)(3) are met for class certification purposes." *Weisfeld v. Sun Chem. Corp.*, 84 F. App'x 257, 260 (3d Cir. 2004). Such evidence would

---

[11] *See In re Auto. Parts Antitrust Litig.*, No. 12-00101, 2018 WL 2181100, at *4 (E.D. Mich. Jan. 31, 2018) ("[I]n antitrust cases, direct evidence of collusion typically is rare."); *In re Flat Glass Antitrust Litig. (II)*, No. 11-658, 2012 WL 5383346, at *4 n.3 (W.D. Pa. Nov. 1, 2012) ("[S]everal courts have noted that 'smoking guns' are rare in antitrust conspiracy cases.").

include record evidence, as well as expert testimony, demonstrating that the No-Poach

Agreement had a substantial anticompetitive effect.[12]  And, indeed, courts routinely certify

antitrust class actions under the rule of reason.  *See, e.g., In re Mushroom Direct Purchaser*

*Antitrust Litig.*, 319 F.R.D. 158, 190–200 (E.D. Pa. 2016) (finding common issues predominate

and certifying class under rule of reason); *see also Burnett v. Nat'l Ass'n of Realtors*, No. 19-

CV-00332-SRB, 2022 WL 1203100, at *5 n.8 (W.D. Mo. Apr. 22, 2022) ("Regardless of

whether the per se rule or the rule of reason applies, the Court finds class certification is

appropriate.").

    **Common Evidence.**  As described above, common evidence in the form of the Franchise

Agreement, training documents, witness and expert testimony, and other documentary evidence

would demonstrate that Papa John's and its franchisees were independent employers who

competed in the marketplace for labor.  *See* Section II, *supra.*  For instance, Papa John's

Franchise Agreement explicitly states:



Chan Decl. Ex. 1 at -248.  Their agreement not to hire each other's workers was thus a horizontal

agreement not to compete, which is a classic per se antitrust violation.  *See Copperweld Corp. v.*

*Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) ("Certain agreements, such as horizontal price

fixing and market allocation, are thought so inherently anticompetitive that each is illegal per se

without inquiry into the harm it has actually caused.").

---

[12] Whether a jury would agree with Plaintiff's expert or Defendant's expert is another issue common to the entire Class.

In addition to the No-Poach Agreement itself, Plaintiffs would offer evidence in the form of Defendant's internal documents, deposition testimony, and email exchanges between Papa John's and franchisees that demonstrate ███████████████████████████████ ███████. For example, as described above, ████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████. *See* Section II, *supra*.  This is precisely the type of evidence that courts have found sufficient to demonstrate that the conspiracy would be an overriding, predominating issue for every class member.  *See, e.g.*, *Seaman*, 2018 WL 671239, at *4 (common documentary evidence provides "no indication that individual questions will arise in determining whether the defendants violated the Sherman Act").  In the animation workers no-poach case, the court described documentary and testimonial evidence similar to that which would be offered here as "support[ing] Plaintiffs' contention that common legal and factual issues will predominate as to whether Defendants maintained a conspiracy not to recruit each other's employees . . . ."  *Animators*, 315 F.R.D. at 292; *see also High-Tech*, 985 F. Supp. 2d at 1191 (predominance found where "substantial evidence presented by Plaintiffs suggests that adjudication of Defendants' alleged antitrust violation will turn on legal and factual issues that are common to the Technical Class").  Like in *Kleen Products*, "[t]o prove each element of a conspiracy, virtually all class members would be relying on the same evidence that Plaintiffs have submitted in support of class certification—namely the documents, emails, phone records, and other indirect evidence necessary to prove that Defendants conspired in violation of antitrust laws. This type of alleged conspiracy is the prototypical example of an issue where common questions predominate*." Kleen Prods. LLC v. Int'l Paper*, 306 F.R.D. 585, 594 (N.D. Ill. 2015), *aff'd sub nom. Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir.

-23-

2016).

In sum, the No-Poach Agreement is either a reasonable restraint of trade or it is not. This is the central question in the case, it will be addressed by common evidence, and it will have a common answer for Papa John's and for all members of the Class.

> ### 2. Common Evidence Would Prove That the No-Poach Agreement in Fact Restrained Trade.
>
> #### a. Common Evidence Would Show Antitrust Impact.

Common evidence would also prove class-wide impact. At class certification, Plaintiff "must show that antitrust impact can be proven with common evidence on a classwide basis; Plaintiffs need not show antitrust impact in fact occurred on a classwide basis." *Cardizem*, 200 F.R.D. at 307 (quoting *In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 618 (N.D. Ga. 1997)).

To demonstrate antitrust impact, Plaintiff would marshal common evidence, including documentary evidence and expert reports using statistical modeling, economic theory, and data to demonstrate that common questions will predominate over individual questions. Specifically, Plaintiff's experts would rely on (1) economic theory of monopsony power, focusing on the franchise context, and how no-poach agreements exacerbate monopsony power; (2) Papa John's compensation structures and internal pay equity; and (3) standard econometric methods to explain how the No-Poach Agreement suppressed compensation for class members on a class-wide basis.

**Economic Theory.** Plaintiff's expert would provide an overview of the extensive economic literature that demonstrates that employers exercise significant market power (monopsony) over their employees, including in low-wage markets, and that no-poach agreements exacerbate that monopsony power. *See, e.g.*, Chan Decl. Ex 16, Arindrajit Dube et

al., *Monopsony in Online Labor Markets*, 2 Am. Econ. Rev.: Insights 33, 45 (2020); *id.*, Ex. 14, *A Proposal to Enhance Antitrust Protection*, at 2 (Monopsony power "harms workers, whose wages and employment opportunities are reduced."); *see also id.*, Ex. 17, Press Release, Justice Department and Federal Trade Commission Release Guidance for Human Resource Professionals on How Antitrust Law Applies to Employee Hiring and Compensation (Oct. 20, 2016) ("Workers are . . . harmed if companies that would ordinarily compete against each other to recruit and retain employees . . . enter into so-called 'no-poaching' agreements by agreeing not to recruit each other's employees."); *id.*, Ex. 13, *Antitrust Remedies*, at 560 ("Evidence that labor markets, particularly low-wage labor markets, are monopsonistic has been accumulating over the past two decades.").

**Common Evidence of Compensation Structures.**  Relying on common evidence of Papa John's-specific skills described above, *see* Section II, *supra*, and economic literature on labor mobility, expert analysis would also demonstrate that brand-specific training was of value principally to Papa John's restaurants and not as transferable or as valuable to other restaurant chains or employers.  Chan Decl. ¶ 4.  This means that the No-Poach Agreement would impact class members' wages, notwithstanding the ability to seek employment outside of the Papa John's system.

With respect to compensation structures and internal pay equity, ███████████████ ███████, *see* Section II, *supra*, ██████████████████████████ ████████████████████████.  Expert analysis would rely on this common evidence to show that linked compensation structures transmit wage suppression broadly across the class.  Indeed, courts in wage suppression or no-poach cases have certified classes and found antitrust impact could be proven on a class-wide basis when, as here, there is

evidence that the class members' wages were correlated and the defendant-employers emphasized internal or external equality, which ensured "individuals performing similar jobs are compensated on a similar level." *Animators*, 315 F.R.D. at 293; *Seaman*, 2018 WL 671239, at *8; *High-Tech*, 985 F. Supp. 2d at 1197-1202, 1214.

In *High-Tech*, for example, the plaintiffs alleged that the defendants agreed not to recruit each other's employees with "cold calls," thereby suppressing wages not just for employees who would have received cold calls in the but-for-world, but also for all or nearly all of approximately 64,000 technical employees across seven companies nationwide. 985 F. Supp. 2d at 1193. The court found that the plaintiffs' documentary and expert evidence satisfied predominance because that evidence demonstrated that cold calls put "upward pressure" on the salaries not of just individual employees, but of all employees "who were part of the same salary structure." *Id.* at 1192, 1206.

Similarly, in *Seaman*, 2018 WL 671239, at *4-6, *8, the court held that antitrust impact could be proved with common evidence. That evidence included general economic theory that competition would have spurred preemptive salary increases; that pay structures would have transmitted this effect to all class members, not just those who were recruited or received offers; and that a sharing regression analysis showing that the compensation of class members moved together, suggesting a compensation structure. *See also Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 544 (E.D. Mich. 2013) (expert analysis demonstrated predominance in wage suppression case where class members were part of compensation systems, adjustments to which "affected the compensation of all or almost all individual class members"); *Johnson v. Ariz. Hosp. & Healthcare Ass'n*, No. 07-1292, 2009 WL 5031334, at *8, *11 (D. Ariz. July 14, 2009) (same); *Animators*, 315 F.R.D. at 300 (same).

-26-

      **Econometric Analysis.**  Finally, through a regression model, expert analysis would compare the compensation paid to class members when the No-Poach Agreement was in effect to the compensation paid to them after the cessation of the No-Poach Agreement, while controlling for other factors.  Chan Decl. ¶ 5.  Courts have relied on such modeling to prove classwide impact in other no-poach cases.  *See, e.g.*, *Animators*, 315 F.R.D. at 298, 303-04; *High-Tech*, 985 F. Supp. 2d at 1221.

       Using evidence and methods that are common to the Class, Plaintiff would thus demonstrate that all or nearly all class members were impacted by the No-Poach Agreement.

      **b.**      **Common Evidence Would Show Class-Wide Damages.**

      Finally, common evidence provides a reliable method of measuring class-wide damages.  To establish predominance with respect to damages, a plaintiff must "show that a reliable method is available to prove damages on a class-wide basis," *Ladd v. Nashville Booting, LLC*, No. 3:20-CV-00626, 2023 WL 3400485, at *14 (M.D. Tenn. May 11, 2023) (citation omitted), though "damages need not be 'exact,'" *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2014 WL 6461355, at *44 (N.D. Ohio Nov. 17, 2014) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)).

      Plaintiff would show that Classwide damages can be calculated through experts' regression analyses, generated from common evidence, including Papa John's structured data productions containing all employee names, job titles, compensation, salary bands, and demographic data.  Specifically, using the wage effect shown in a regression model and the compensation paid to class members while the No-Poach Agreement was in effect, an expert would be able to calculate damages.  Courts have repeatedly approved similar regression models as common methods for showing damages that predominate in the context of class certification, including in no-poach cases.  *See Seaman*, 2018 WL 671239, at *8–9 (regression analysis to

determine classwide damages satisfied predominance); *High-Tech*, 985 F. Supp. 2d at 1223–26

(same); *Ariz. Hosp.*, 2009 WL 5031334, at *10 (same); *Animators*, 315 F.R.D. at 308 (same).

Any variations in the precise amount of each class member's damages would be insufficient to

defeat class certification. *Olden v. LaFarge Corp.*, 383 F.3d 495, 509 (6th Cir. 2004).

### E.    The Proposed Schedule for Notice and Final Approval

Plaintiff proposes the following schedule for class notice and final approval:

| Event | Date |
|---|---|
| Papa John's to Provide Database of Class Members' Identities and Corresponding Information to Claims Administrator | Within 14 days of Preliminary Approval |
| Claims Administrator Shall Engage Credit Reporting Agency or Similar Service to Locate Class Members' Email Addresses | Within 14 days of receipt of Database |
| Claims Administrator Will Email Notice Package, Publish Settlement Website, and Mail Postcards to Class Members Whose Email Addresses Cannot be Located | Following receipt of tracing Class Member contact information |
| Claims Administrator Will Alert Parties if Direct Notice Unlikely to Reach More than 80% of Class Members | Following additional email and postcard notice to Class Members |
| Motion for Fees, Costs, and Plaintiff's Service Award | Within 75 days of Preliminary Approval |
| Deadline for Claims, Objections, and Requests for Exclusion | Within 100 days of Preliminary Approval |
| Motion for Final Approval and Claims Administrator Affidavit of Compliance with Notice Requirements | 14 days prior to the Final Approval Hearing |
| Final Approval Hearing (Minimum of 130 days after Preliminary Approval) | _____, 2024 |

## V.    CONCLUSION

For the above reasons and in her prior Motion, Ms. Page respectfully requests that

Plaintiff's Motion to Direct Notice be granted.

Dated: November 22, 2023

Respectfully submitted,

*/s/ Lin Y. Chan*

Dean M. Harvey (*pro hac vice*)
Anne B. Shaver (*pro hac vice*)
Lin Y. Chan (*pro hac vice*)
Jallé H. Dafa (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
T: 415-956-1000
dharvey@lchb.com
ashaver@lchb.com
lchan@lchb.com
jdafa@lchb.com

Jessica A. Moldovan (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
250 Hudson Street, 8th Floor
New York, NY 10013
T: 212-355-9500
jmoldovan@lchb.com

Michelle E. Conston (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
T: (212) 223-6444
mconston@scott-scott.com

Derek Y. Brandt (*pro hac vice*)
Leigh M. Perica (*pro hac vice*)
Connor Lemire (*pro hac vice*)
MCCUNE WRIGHT AREVALO, LLP
231 North Main Street, Suite 20
Edwardsville, IL 62025
T: (618) 307-6116
dyb@mccunewright.com
lmp@mccunewright.com

Richard D. McCune (*pro hac vice*)
Michele M. Vercoski (*pro hac vice*)
MCCUNE WRIGHT AREVALO, LLP
3281 East Guasti Road, Suite 100
Ontario, CA 91761
T: (909) 557-1250
rdm@mccunewright.com
mmv@mccunewright.com

Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Noelle Feigenbaum (*pro hac vice*)
LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601
T: (914) 997-0500
vbriganti@lowey.com
clevis@lowey.com
nfeigenbaum@lowey.com

*Interim Co-Lead Counsel*

John Radice (*pro hac vice*)
Radice Law Firm
475 Wall Street
Princeton, NJ 08540
T: (646) 245-8502
jradice@radicelawfirm.com

*Interim Counsel*

-30-

Jennifer A. Moore
MOORE LAW GROUP, PLLC
401 W. Main Street, Suite 1810
Louisville, KY 40202
T: (502) 657-7100
jmoore@moorelawgroup.com

*Liaison Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 22, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.


<u>*/s/ Lin Y. Chan*                                    </u>
Lin Y. Chan