**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| IN RE: PAPA JOHN'S EMPLOYEE AND FRANCHISEE EMPLOYEE ANTITRUST LITIGATION | Case No.: 3:18-cv-00825-BB-RSE |

**PLAINTIFF'S SUPPLEMENTAL FILING IN SUPPORT OF UNOPPOSED AMENDED MOTION TO DIRECT NOTICE OF SETTLEMENT TO THE PROPOSED CLASS**

## I.    <u>INTRODUCTION</u>

Pursuant to the Court's January 11, 2024 order (ECF No. 245), Plaintiff Ashley Page respectfully submits this supplemental filing in support of her Amended Motion for Preliminary Settlement Approval and to Direct Notice of Settlement to the Proposed Class ("Amended Motion" or "Am. Mot.") (Nov. 22, 2023), ECF No. 239.  This filing and the accompanying expert declaration address four questions the Court posed at the hearing on January 11, 2024 ("Hearing") related to the following topics: (1) the propriety of approving a class action settlement without an expert report; (2) the adequacy of a class representative for whom an affirmative defense does not apply; (3) the role of pay bands in proving common impact; and (4) the existence of monopsony power in the fast-food labor market.[1]

## II.    <u>ARGUMENT</u>

### A.    Courts Often Grant Preliminary Approval of Class Action Settlements Before the Parties Exchange Expert Reports.

At the Hearing, the Court asked whether there is caselaw that addresses the fairness of class action settlements with "some level of proof short of an expert report."  Hearing Tr. ("Tr.") 26:9-10.  The answer is yes: many courts—both in and out of the specific context of antitrust no-poach cases—have preliminarily approved class action settlements without expert reports containing damages analyses.  *See* Decl. of Dean M. Harvey ISO Suppl. Filing ("Harvey Decl.") Ex. A, *In re: Ry. Indus. Emp. No-Poach Antitrust Litig.*, MDL No. 2850 (W.D. Pa. Mar. 19, 2020), ECF No. 262 (granting preliminary approval of class action settlement in a no-poach case prior to the exchange of expert reports); *id.* Ex. B, *McAlear v. nCino, Inc.*, No. 7:21-cv-00047 (E.D.N.C. Nov. 23, 2021), ECF Nos. 60, 132 (same); Chan. Decl. Ex. 12, ECF No. 239-3, at 10,

---

[1] This submission incorporates by reference Plaintiff's initial Motion for Preliminary Approval ("Preliminary Approval Motion") (July 27, 2022), ECF No. 202, her Amended Motion, and the documents in support of both.

*Binotti v. Duke Univ.*, No. 1:20-cv-00470 (M.D.N.C. Apr. 22, 2021) (same); *see also* Harvey

Decl., Ex. F, *Carbone v. Brown Univ.*, No. 22-cv-00125 (N.D. Ill. Feb. 14, 2024), ECF No. 614

(same in an antitrust case outside the no-poach context); *In re Packaged Ice Antitrust Litig.*, No.

08-MD-01952, 2010 WL 3070161, at *6 (E.D. Mich. Aug. 2, 2010) (same).

Indeed, "formal discovery"—let alone expert discovery—"is not necessarily required [for

settlement approval], so long as the parties have obtained adequate information to evaluate the

relative strength of their positions."  *Raymo v. FCA US LLC*, No. 2:17-CV-12168-TGB-SDD,

2023 WL 6429548, at *3 (E.D. Mich. Sept. 30, 2023); *see also In re Countrywide Fin. Corp.*

*Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *11 (W.D. Ky.

Dec. 22, 2009) ("[F]ormal discovery is not necessary as long as (1) the interests of the class are

not prejudiced by the settlement negotiations and (2) there are substantial factual bases on which

to premise settlement." (citation omitted)).  As the 2018 Advisory Committee Notes to the

Federal Rules of Civil Procedure explain: "the nature and amount of discovery in this or other

cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf

of the class had an adequate information base."  And where class counsel have properly informed

themselves about the strength of their claims, courts have found that their ability to settle before

expending significant party (and court) resources, such as those required for expert reports,

weighs in favor of settlement, not against it.

In *Gascho v. Global Fitness Holdings, LLC*, for example, the Sixth Circuit affirmed the

approval of a class settlement where the parties had been litigating for two-and-a-half years,

extensive discovery (including ten depositions and the production of over 400,000 documents)

had been taken, a formal mediation occurred, and the likelihood of plaintiffs' success on the

merits had been called into question by the dismissal of a similar case.  822 F.3d 269, 277 (6th

Cir. 2016). In light of these factors, the fact that "[t]he litigation had been pending for nearly three years, resulting in millions of dollars in legal fees, and continued litigation would undoubtedly require years of extensive and costly litigation, including fact discovery, *expert discovery*, and motion practice," weighed in favor of the settlement. *Id.* (emphasis added); *see also Simerlein v. Toyota Motor Corp.*, No. 3:17-cv-1091 (VAB), 2019 WL 2417404, at *17-19 (D. Conn. June 10, 2019) (noting that where the parties did not conduct a period of formal discovery but class counsel conducted "extensive informal and confirmatory discovery" and consulted with expert automotive engineers, "the heavy reliance on expert testimony that would have been required to prove liability and damages at trial," weighed in favor of approving the settlement); *Lloyd v. Navy Fed. Credit Union*, No. 17-cv-1280-BAS-RBB, 2019 WL 2269958, at *12 (S.D. Cal. May 28, 2019) (approving a settlement where no formal discovery took place but the parties engaged in "informal discovery utilizing an experienced expert, to prepare [them] for an all-day mediation"); *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 976 (S.D. Cal. 2014) (granting final approval where no formal discovery occurred but where "Class Counsel had significant information going into the settlement negotiations").

Here, the same is true as it was in *Gascho*: the parties engaged in extensive discovery, consulted with experts, engaged in a full-day mediation (followed by many subsequent exchanges facilitated by the third-party mediator) and settled at a time when two decisions— *Conrad v. Jimmy John's Franchise, LLC*, No. 18-CV-00133-NJR, 2021 WL 3268339 (S.D. Ill. July 30, 2021), and *Deslandes v. McDonald's USA LLC*, No. 17 C 4857, 2021 WL 3187668 (N.D. Ill. July 28, 2021) ("*McDonald's*")—raised questions regarding Plaintiff's very similar

claim here.[2]  In light of these facts, the maximum potential damages is not dispositive of the

Settlement's fairness under Rule 23(e)(2) or leading Sixth Circuit authority. *See* Fed. R. Civ. P.

23(e)(2) (directing courts to consider whether "the relief provided for the class is adequate,

taking into account . . . the costs, risks, and delay of trial and appeal"); *Int'l Union, United Auto.,*

*Aerospace, & Agric. Implement Workers of Am. v. Gen Motors Corp.*, 497 F.3d 615, 631 (6th

Cir. 2007) ("*UAW*") (not listing maximum potential damages or the need for expert testimony on

damages as a basis to determine whether a class action settlement is fair, reasonable, and

adequate[3]); *see also UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at

*15 (E.D. Mich. Mar. 31, 2006), *aff'd* 497 F.3d 615 ("The ultimate question . . . is whether the

interests of the class as a whole are better served if the litigation is resolved by the settlement

rather than pursued." (citation omitted)).

---

[2] The parties here agreed to the Settlement prior to the Seventh Circuit's decision vacating the trial court's judgment in *McDonald's*, 81 F.4th 699.  Judge Easterbrook explained, in an opinion joined by Judges Wood and Ripple, that the per se standard applies, unless the defendant can establish an affirmative defense that the no-poach agreement was legitimately ancillary to the franchise system. *Id.* at 702-705.  In his concurrence, Judge Ripple cast significant doubt on McDonald's ability to satisfy that burden: "If the restriction cannot be justified because of its scope and duration, it is difficult to see how it can be reasonably necessary to the achievement of the procompetitive objectives of the franchise agreement." *Id.* at 705.  With respect to the trial court's denial of class certification, the Seventh Circuit said: "The court may think it wise to reconsider in light of the need for a remand and the analysis in this opinion." *Id.*  McDonald's has filed a petition for writ of certiorari, to which plaintiffs (represented by certain of the undersigned) opposed.  Pet'rs' Writ Cert., *McDonald's USA, LLC v. Deslandes*, No. 23-562 (U.S. Nov. 21, 2023); Resp'ts Opp'n, No. 23-562 (U.S. Feb. 9, 2014).  Plaintiffs' counsel anticipate that the Supreme Court will decide McDonald's petition in late March.  While Plaintiff's claim has thus been substantially strengthened by the Seventh Circuit's decision, settlements are evaluated as of the time they are reached, not in light of subsequent events.  *See In re CIGNA Corp.*, No. CIV. A. 02-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (stating that settlement fairness analysis must consider the risks at the time the settlement was reached, not the risks or absence of risks that arose after the settlement).

[3] *See UAW*, 497 F.3d at 631 (listing the following factors as those that should guide a court's determination in determining whether a settlement is fair, adequate, and reasonable: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest").

Plaintiff respectfully submits she has put forth sufficient information in support of the fairness of the Settlement, and no further expert disclosure is required or appropriate. Indeed, avoiding further expert discovery and expense was part of the consideration the Settlement was intended to provide.

### B. Plaintiff Page Is an Adequate Representative of the Proposed Settlement Class, and an Allocation Scheme that Accounts for Differences in the Strength of Class Members' Claims Is Fair.

At the Hearing, the Court expressed concern that Plaintiff Page may not adequately represent class members subject to arbitration agreements, because her incentives may differ from theirs, and the Court asked for "precedent that would assuage any fears that a settlement could favor one group and not the other." Hearing Tr. at 37:16-25.

Plaintiff Page is an adequate representative because her incentives do not differ from the rest of the class: she, like all class members, seeks compensation for the same injury based on wage suppression that existed due to a common course of misconduct, i.e., the agreement between Papa John's and its franchisees not to poach each other's employees. As elaborated in Plaintiff's Amended Motion, the existence of an affirmative defense, such as arbitration agreements, does not preclude a finding of adequacy. *See* Am. Mot. at 12-18; *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 430 (N.D. Ohio 2008) ("[P]otential affirmative defenses against some class members do not bar class certification, as plaintiffs' claims need not be factually indistinguishable to be typical."[4]); *see also Walsh v. Gilbert Enters. Inc.*, No. CV 15-472, 2019 WL 1206885, at *3-4 (D.R.I. Mar. 14, 2019) (finding typicality and adequacy for a class representative who had not signed an arbitration agreement but who was representing a

---

[4] *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) ("The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members.").

litigation class that included members who had signed one); *In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-0318, 2013 WL 5182093, at *5 (D. Md. Sept. 12, 2013) (including those who signed arbitration agreements in the settlement class and preliminarily approving settlement); *Finnan v. L.F. Rothschild & Co.,* 726 F. Supp. 460, 465 (S.D.N.Y. 1989) (certifying class despite the fact that some, but not all, class members had signed arbitration agreements). Moreover, "[a] naked allegation of antagonism cannot defeat class certification; there must be an actual showing of a real probability of a potential conflict which goes to the subject matter of the suit." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 305-06 (E.D. Mich. 2001) (citation omitted). This is not a case where, as in *Amchem Products, Inc. v. Windsor*, the class contains groups who suffered different injuries and therefore seek recovery that is different in kind. *See* 521 U.S. 591, 625-28 (1997) (finding a conflict of interest that precluded a finding of adequacy where those with current asbestos-related illnesses sought immediate payments and those who were exposure-only plaintiffs sought the creation of a large inflation-protected fund for the future).

Rather, this is a case where the only difference between Plaintiff Paige and those who signed arbitration agreements is that their recovery is allocated differently based on the strength of their claims, where the issue of arbitration agreements was already litigated in this case and decided in Papa John's favor. *See* MTD Order (Oct. 21, 2019), ECF No. 90, at 5-9. And, this is a common—indeed, necessary—element of negotiating fair class action settlements. *See* Rule 23(e)(2)(D) Advisory Committee Notes (explaining that whether "the proposal treats class members equitably relative to each other" includes consideration of "whether the apportionment of relief among class members takes appropriate account of differences among their claims"); *see also* Harvey Decl., Ex. C, *Brown v. Directv, LLC*, No. CV 13-01170 DMG (EX) (C.D. Cal. Aug. 24, 2022), ECF No. 527, at 2 (preliminarily approving a settlement that afforded certain

class members double the rate of recovery because the court had granted those class members summary judgment on their claims); *Feltzs v. Cox Commc'ns Cal., LLC*, No. SACV 19-2002 JVS (JDEx), 2022 WL 2079144, at *11 (C.D. Cal. Mar. 2, 2022) (distinction between class members was "logical given the dramatically different likelihood of success"); *Kaupelis v. Harbor Freight Tools*, No. SACV 19-1203 JVS (DFMx), 2021 WL 4816833, at *11 (C.D. Cal. Aug. 11, 2021) (some class members had "weaker claims," so "[t]heir lesser relief [was] therefore justified and equitable"); *Loreto v. Gen. Dynamics Info. Tech., Inc.*, No. 3:19-cv-01366-GPC-MSB, 2021 WL 3141208, at *8 (S.D. Cal. July 26, 2021) (lesser payment to certain class members based on claims alleged was justified by "obstacles" that led to "low[er] likelihood of success").

Finally, the inclusion in the proposed Settlement Class of employees who signed arbitration agreements weighs in favor of finding that they were adequately represented by Plaintiff Paige. At the time of Settlement, all class members who signed arbitration agreements would have been compelled to arbitration and "[g]iven the small size of the individual claims and the complexity of the basis for recovery, no one would pursue these claims on his or her own." *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 269 F.R.D. 80, 93 (D. Me. 2010). That is, absent the Settlement, those Class Members would recover not simply less—they would recover nothing. To ensure their inclusion in the Settlement and that they would receive some monetary compensation (as opposed to only injunctive relief), Plaintiff, in keeping with the admonitions of Rule 23(e)(2)(D) and following this Court's order compelling arbitration, agreed to discount their claims appropriately.

The Settlement's discounted recovery for Class Members who signed arbitration agreements weighs in favor of its fairness and Plaintiff Paige's adequacy.

**C.    Pay Bands Demonstrate Common Impact by Showing That Wage Suppression Caused by the No-Poach Agreement Affected Class Members.[5]**

The Court asked for clarity about how pay bands operate at Papa John's and asked why they matter if the pay bands are not identical across every Papa John's restaurant.  Hearing Tr. at 26:18-27:2, 28:6-29:14.  Plaintiff provides the below and accompanying evidence in response, including expert opinion.  *See generally* Decl. of Hal E. Singer ISO Suppl. Filing ("Singer Decl.").  This evidence and much more would have been part of a litigated motion for class certification, in the event the parties did not reach a Settlement.  Avoiding the expense and delay of a litigated motion for class certification was part of the consideration that made the Settlement possible.  Nonetheless, Plaintiff provides the following to discharge her contractual obligation to use best efforts to effectuate the Settlement.  ECF No. 202-2, Ex. A (Settlement Agreement) ¶ 13.5.



.[6]  *See* Singer Decl. ¶ 16.

. *Id.*

, "a long tradition in economic thought—as well as in psychology, sociology, and organizational behavior . . . that individuals . . . care about their pay relative to that of their co-workers."  *Id.* ¶¶ 15-16 (citation omitted).  Record

---

[5] Papa John's disputes Plaintiff's characterization of the evidence relied upon in this section.

[6] Papa John'

" Singer Decl. ¶ 17.

evidence indicates that ███████████████████████████████████

███████████████████████. *Id.* ¶ 17. Dr. Singer also examined ████████████

███████████████████████████████████████████████

████. *Id.*

In addition, Dr. Singer investigated and confirmed ██████████████████

███████████████████████████████████████████. *Id.* ¶

18. Dr. Singer found that, after controlling for other relevant economic factors, ██████████

███████████████████████████████████████████

██████████████████████████████████. *Id.* Thus, there is

both qualitative and quantitative confirmation that ███████████████████████

██████, after controlling for other relevant factors. *Id.*

███████████████████████████████████

████████—is relevant because it is evidence that the No-Poach Agreement (the common

antitrust violation) caused wage suppression across the entire class (common impact). ██████

███████████████████████████████████████

███████████████████████████████████

████████████████████████████████████.

If the no-poach agreement suppressed aggregate class pay, as Dr. Singer's analysis and other

studies show, ███████████████████████████████████████

█████████████████. Numerous courts have held that such evidence supports common

impact and, accordingly, class certification. *See Nitsch v. Dreamworks Animation SKG Inc.*, 315

F.R.D. 270, 293 (N.D. Cal. 2016); *Seaman v. Duke Univ.*, No. 1:15-CV-462, 2018 WL 671239,

at *8 (M.D.N.C. Feb. 1, 2018*); In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167,

1197-1202, 1214 (N.D. Cal. 2013); *Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 544 (E.D. Mich. 2013); *Johnson v. Ariz. Hosp. & Healthcare Ass'n*, No. 07-1292, 2009 WL 5031334, at *8, *11 (D. Ariz. July 14, 2009) (same).

      **D.**     **Research Shows That Monopsony Power Is Common in Labor Markets, Including Low-Wage Labor Markets.[7]**

Finally, the Court requested clarification on how Papa John's "or any fast-food restaurant" could be a monopsonist "unless they were the only one in town or you treat the Papa John's workers as somehow . . . a distinct market from all other workers."[8] Hearing Tr. at 9:18-23.

As elaborated in the accompanying expert declaration, economic research demonstrates that employers exercise significant monopsony power over their employees, and no-poach agreements exacerbate that monopsony power. Singer Decl. ¶¶ 4-5, 7. Indeed, researchers have found that the ability of individual firms to suppress wages below competitive levels is "surprisingly common throughout the economy," including in low-skill labor markets. *Id.* ¶ 4 n.4 (quoting Suresh Naidu, Eric Posner, & Glen Weyl, *Antitrust Remedies for Labor Market Power*, 132 Harv. L. Rev. 536, 564 (2018)). This is due in part to the fact that ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ *Id.* ¶ 7. This means that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[7] Papa John's disputes Plaintiff's characterization of the evidence relied upon in this section.

[8] Plaintiff also notes that, as a legal matter, Papa John's not need eliminate *all* competition in the market to violate the law—it need only unreasonably restrain competition. *See United States v. Cooperative Theatres of Ohio, Inc.*, 845 F.2d 1367, 1371-73 (6th Cir. 1988) (rejecting argument that the "limited nature" or less "extensive" restraint on only active solicitation of competitor accounts, which did not involve "explicit price fixing agreements or allocation of specific [employees] according to geographic location or enforcement of agreements through coercion," was any less a per se violation than other market allocation agreements).

███████████████████████████████████████████████████████████

███████████████████████████████████. *Id.*  And any agreement that

degrades competition for those workers invariably suppresses employee wages.  *Id.*  This was the

purpose and effect of the No-Poach Agreement Plaintiff challenges.  *Id.*

This is precisely what the experts in *McDonald*'s found:  Dr. Peter Cappelli explained

that McDonald's training requirements resulted in employees with some general skills that are of

modest value to any employer, but a high quantity of specific skills that are valuable only to

other McDonald's employers.  Harvey Decl., Ex. D, Expert Witness Report of Peter Cappelli

(Jan. 15, 2021), *McDonald's* ¶¶ 44-62.  He concluded that the existence of this brand-specific

training, of value principally to McDonald's restaurants and not transferable or valuable to other

restaurant chains or employers, meant that the no-poach agreement would impact class members'

wages, notwithstanding the ability of class members to seek employment with companies outside

the McDonald's system.  *Id.* ¶¶ 60-62.  And using a multivariate regression, Dr. Hal Singer

found that the no-poach agreement at issue in fact lowered the wages that class members

received (despite their ability to seek employment outside of McDonald's).  Harvey Decl., Ex. E,

Expert Witness Report of Hal E. Singer (Jan. 15, 2021), *McDonald's* ¶¶ 40-59, 66-82.  As

demonstrated by Dr. Singer's preliminary analysis and conclusions in this case, *see generally*

Singer Decl., and the evidence of Papa John's training system, *see* Am. Mot at 4-5, the same

analysis applies here.

## III.    <u>CONCLUSION</u>

For the above reasons and those stated in her prior submissions, Ms. Page respectfully

requests that her Unopposed Motion to Direct Notice of Settlement to the Proposed Class be

granted.

Dated: February 23, 2024

Respectfully submitted,

*/s/ Dean M. Harvey*

Dean M. Harvey (*pro hac vice*)
Anne B. Shaver (*pro hac vice*)
Lin Y. Chan (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
T: 415-956-1000
dharvey@lchb.com
ashaver@lchb.com
lchan@lchb.com

Jessica A. Moldovan (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
250 Hudson Street, 8th Floor
New York, NY 10013
T: 212-355-9500
jmoldovan@lchb.com

Michelle E. Conston (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
T: (212) 223-6444
mconston@scott-scott.com

Derek Y. Brandt (*pro hac vice*)
Leigh M. Perica (*pro hac vice*)
Connor Lemire (*pro hac vice*)
MCCUNE WRIGHT AREVALO, LLP
231 North Main Street, Suite 20
Edwardsville, IL 62025
T: (618) 307-6116
dyb@mccunewright.com
lmp@mccunewright.com

Richard D. McCune (*pro hac vice*)
Michele M. Vercoski (*pro hac vice*)
MCCUNE WRIGHT AREVALO, LLP
3281 East Guasti Road, Suite 100
Ontario, CA 91761
T: (909) 557-1250
rdm@mccunewright.com
mmv@mccunewright.com

Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Noelle Feigenbaum (*pro hac vice*)
LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601
T: (914) 997-0500
vbriganti@lowey.com
clevis@lowey.com
nfeigenbaum@lowey.com

*Interim Co-Lead Counsel*

John Radice (*pro hac vice*)
Radice Law Firm
475 Wall Street
Princeton, NJ 08540
T: (646) 245-8502
jradice@radicelawfirm.com

*Interim Counsel*

Jennifer A. Moore
MOORE LAW GROUP, PLLC
401 W. Main Street, Suite 1810
Louisville, KY 40202
T: (502) 657-7100
jmoore@moorelawgroup.com

*Liaison Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 23, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Dean M. Harvey*
Dean M. Harvey