UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

In Re: Papa John's Employee and
Franchisee Employee Antitrust Litigation

Case No. 3:18-cv-825-BJB

\*\*\*\*\*

**OPINION & ORDER PRELIMINARILY APPROVING SETTLEMENT CLASS & AUTHORIZING NOTICE**

Ashley Page is the sole representative of a putative antitrust class of pizza-chain employees subject to franchise-wide no-poach provisions. She has filed an amended motion for preliminary approval of a classwide settlement with Papa John's International and Papa John's USA.[1] DN 239. The Court previously issued an opinion (DN 227) denying Page's initial motion (DN 202) for preliminary approval of this settlement. A fuller account of the allegations in this case and the reasons why preliminary approval was premature can be found in that opinion. It explains why the Court could likely approve the proposed settlement under Rule 23(e)(2), but not necessarily certify the class under Rule 23(a) and (b)(3)—at least not based on the record then before the Court. Opinion at 3, 4–8. That order requested additional information on whether Page's claims were typical of the class, whether her representation was adequate, and whether common questions of law or fact predominated. *Id.* at 5–7.

Under Rule 23(e)(1)(B), a court should preliminarily approve a classwide settlement and direct notice to class members if "the court will likely be able to … approve the proposal under Rule 23(e)(2) and certify the class for purposes of judgment on the proposal." Page's amended motion—boosted by a later-filed supplement (DN 253) and information provided during a hearing (DN 245)—clears these hurdles, though without tremendous room to spare. Whether the Court ultimately approves the proposed settlement—after hearing from potential objectors—is of course a different question. So for now the Court preliminarily approves the request for a classwide settlement, approves the process for notifying potential class members, and sets a schedule for interested parties to object or

---

[1] The complaint explains that the two corporate entities "operate as a single entity" "out of the same location" with "the same directors and executives." Amended Complaint (DN 54) ¶¶ 22–23. For purposes of this motion, the parties identify no relevant difference between the two Defendants and the remainder of the opinion refers to them collectively as Papa John's.

1

comment before a fairness hearing and ultimate determination regarding class-settlement approval.

**A. Rule 23(e)(2).** The Court previously held that it would "likely be able to … approve the proposal under Rule 23(e)(2)," Opinion at 4, and this order will not disturb that holding. Upon further review of the Settlement Agreement and supplemental filings, however, two potential issues may merit attention at or before the final fairness hearing.

**1.** The Settlement Agreement imposes more onerous requirements on putative class members to opt out or object than to receive notice of the settlement. Under the Agreement, email is the primary method for notifying absent class members of the proposed settlement: "Class Counsel and Defendants' Counsel shall work together to develop the content of an email notice that the Claims Administrator will distribute …." Settlement Agreement (DN 202-2) ¶ 6.2. Notice is mailed to class members only if "the Claims Administrator is unable to locate working email addresses …." ¶ 6.3. And class members can submit claims through a website. ¶ 6.6. But those wishing to object or opt out must send snail mail to the Claims Administrator. ¶¶ 6.10, 7.2.

Why would email work for some but not all purposes? Needless to say, Americans use email for all manner of legal and business dealings in 2024—now three decades out from the launch of AOL and the founding of Prodigy. Perhaps good reasons exist for this delay and asymmetry. But none are apparent from the face of the settlement and court filings. At least one other district court has rejected a similarly skewed proposed settlement: "requiring … class members to opt out by mailing a hard copy letter … serves little purpose but to burden those who wish to opt out. In a world where [the Defendants] can … administer settlement claims electronically … [Defendants] can assuredly process opt outs electronically." *Arena v. Intuit, Inc.,* No. 19-cv-2546, 2021 WL 834253, at *10 (N.D. Cal. March 5, 2021) (denying preliminary approval of classwide settlement).

**2.** The Settlement Agreement grants Page a $5,000 service award. ¶ 9.1. The Sixth Circuit has warned that courts "should be most dubious of incentive payments when they make the class representatives whole, or … even more than whole; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." *In re Dry Max Pampers Litigation*, 724 F.3d 713, 722 (6th Cir. 2013). Under that rejected settlement, the class representatives received a service award of $1000 per child, while absent class members received no monetary relief. *Id.* at 716. Here, Page would receive five times that amount, though absent class members should at least receive *something*: plaintiffs' counsel estimates that "gross recovery will average $165.22," assuming a 20% claims rate. First Motion for Preliminary Approval (DN 202) at 12. And the initial request for preliminary approval explains that some or all of Page's proposed service award compensates her for time devoted to this litigation—not simply her recovery as a former Papa John's employee. First Motion for Preliminary Approval at 17.

2

These issues are not so troubling as to cause the Court to revisit its earlier holding at this juncture. And other courts have approved service fees under similar circumstances. *See Daoust v. Maru Rest., LLC*, No. 17-cv-13879, 2019 WL 2866490, at *6 (E.D. Mich. July 3, 2019) (approving $5,000 service award for named plaintiff against former employer who produced documents, collaborated with class counsel, and participated in mediation); *Shane Group v. Blue Cross Blue Shield of Mich.*, 833 F. App'x 430, 431 (6th Cir. 2021) (approving $10,000 service award for plaintiffs who searched for and produced records for discovery and traveled for depositions). Despite general suspicion of service awards, therefore, this particular settlement still appears to fall "within the range of possible approval," which is all that is required at this preliminary stage. *In re High-Tech Employee Antitrust Litigation*, No. 11-cv-2509, 2014 WL 3917126, at *3 (N.D. Cal. Aug, 8, 2014). But given the caselaw and considerations noted above, these issues may deserve consideration before or during the final fairness hearing.

**B. Rule 23(a) & (b).** "Before a court may certify a class, it must ensure that the class satisfies each of Rule 23(a)'s requirements and that it falls within one of three categories permitted by Rule 23(b)." *Int'l Union, United Auto., Aerospace, & Agricultural Implement Workers of America v. General Motors Corp.*, 497 F.3d 615, 625 (6th Cir. 2007). This Court already held that Page has likely established numerosity, adequacy of class counsel, and superiority. Opinion at 4. And commonality "is subsumed under, or superseded by, the more stringent … requirement that questions common to the class predominate over other questions." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 609 (1997). So (as indicated by the Court's prior order) the only remaining questions are typicality, adequacy, and predominance.

**1. Typicality.** A class representative's claims must be "typical of the claims … of the class." FED. R. CIV. P. 23(a)(3). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and [the] claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). This ensures that "the representative['s] interests are aligned with the interests of the represented class members so that, by pursuing [her] own interests, the class representativ[e] also advocate[s] the interests of the class members." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litigation*, 722 F.3d 838, 852–53 (6th Cir. 2013).

Page's claim is typical of those of the class. It arises from the same course of conduct: the inclusion of no-poach clauses in franchise agreements. *See* Amended Complaint (DN 54) ¶¶ 1, 6, 17. And it rests on the same legal theory: those clauses are (from the employees' perspective) an unreasonable restraint of trade because competitors effectively agreed to suppress employees' wages. ¶¶ 1, 11.

The prior opinion identified two typicality concerns: (1) Page's failure to change locations in search of better wages and (2) the half of the proposed class—not including Page—that has signed arbitration agreements. Opinion at 6. The new filings mitigate those concerns.

3

Page's failure to change locations in search of better wages, *see* Opinion at 6, does not necessarily defeat typicality. The putative class's theory of the case is that no-poach agreements suppressed competition for Papa John's employees as a group and in so doing depressed their wages as a group. *E.g.*, Amended Motion for Preliminary Approval at 2–3. Without endorsing this theory as an economic or legal matter, it suffices to note that if the plaintiffs are right, that would mean the wages of employees like Page would've been suppressed regardless of whether they sought a job at another Papa John's location.

This is consistent with the standard for typicality. A class-representative's claims "need not be identical" to those of all other class members so long as they "share the same essential characteristics as the claims of the class at large." NEWBERG & RUBENSTEIN ON CLASS ACTIONS (6th ed. 2023) § 3:29. Page's claims do.

Nor does the uneven distribution of arbitration clauses defeat typicality.[2] The Court's prior opinion expressed concern that Page's lack of an arbitration obligation might render her an atypical representative of class members bound by them. Opinion at 6. About half the proposed class—but not Page—signed employment agreements with arbitration provisions. Even according to Plaintiffs' counsel, this affects the value of arbitrable employee claims, which the settlement discounts in value by 75%. But differences in the defenses available against a class representative and other class members don't necessarily defeat typicality. "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (quoting *In re Am. Med. Sys.,* 75 F.3d at 1082)).

True, defenses may affect typicality when a defendant has "unique defenses against the proposed class representatives compared to its defenses against the rest of the class." NEWBERG & RUBENSTEIN § 3:33. Litigating a unique defense, the thinking goes, may "distract the named plaintiff to such an extent that its representation of the interests of the rest of the class will suffer." *Norfolk County Retirement System v. Community Health Systems, Inc.*, 332 F.R.D. 556, 568 (M.D. Tenn. 2019) (collecting cases); *see also Doster v. Kendall*, 54 F.4th 398, 438 (6th Cir. 2022) (rejecting "unique defenses" argument based on the issues' relative insignificance and citing RUBENSTEIN § 3:45) (vacated and remanded, *see* 144. S. Ct. 481 (2023), under *United States v. Munsingwear*, 340 U.S. 36 (1950)). That isn't a concern here, however: Papa John's doesn't have a unique (much less uniquely

---

[2] The arbitration agreements are relevant to both typicality and adequacy. To some extent, the concerns overlap: "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). But the inquiries remain distinct: "[T]ypicality focuses on the similarities between the proposed class representative's claims and those of the class while adequacy focuses on whether the proposed representative has incentives that generate disabling conflicts of interest." NEWBERG & RUBENSTEIN § 3:32.

4

distracting) defense against Page's claim. Rather, it has a defense that potentially runs against many thousands—though not all—putative class members. Page's situation relative to these employees is hardly one of a kind, since thousands of others likewise faced a no-poach agreement but no arbitration provision. So her claim is at least typical of the class's claims—it arises from the same event, practice, and legal theory, *Beattie*, 511 F.3d at 561—and even the potential Papa John's defense doesn't isolate her within the class.

Even if it did, typicality still likely exists because the arbitration "defense" is a procedural one unrelated to the underlying claim. The Sixth Circuit has followed this distinction in a related context: a release from liability agreed to by some class members but not others. *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 884 (6th Cir. 1997). That the defense was not uniformly held across the class was "not enough to justify rejection of class certification" on typicality grounds. *Id.* Arbitration agreements provide a procedural defense but don't bear on the underlying claim. *See id.* (citing with approval *Finnan v. L.F. Rothschild*, 726 F. Supp. 460 (S.D.N.Y. 1989) (certifying class "despite the fact that some but not all class members had signed arbitration agreements").[3] The same principle applies here to the "procedural defense" of an arbitration agreement.

**2. Adequacy.** A class representative must also "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The Sixth Circuit applies a two-pronged test for adequacy: "1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013). If class members' interests "are not aligned" "in significant respects," one party cannot serve as the representative for all. *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 429 (6th Cir. 2012). When a settlement class is at issue, courts must scrutinize adequacy "more closely, not less" because "the need for the adequacy of representation finding is particularly acute ...." *In re Dry Max Pampers Litigation*, 724 F.3d at 721.

The Court's prior opinion raised two adequacy concerns: Page's status as a manager (not a line employee) and the arbitration agreements (which applied to about half the putative class, but not to her). Opinion at 5–6.

The managerial position appeared potentially significant given caselaw rejecting managers as class representatives when they had been "charged with enforcing the allegedly anticompetitive No-Poach [policy]." *See Conrad v. Jimmy Johns*, No. 18-cv-133, 2021 WL 3268339, at *6–7 (S.D. Ill. July 30, 2021). Page responded by attaching to her amended motion exhibits that indicate her managerial

---

[3] For instance, "unique defenses that are unlikely to play a substantial role in litigation usually will not defeat typicality." NEWBERG & RUBENSTEIN § 3:45. So "typicality will generally not be defeated by allegations that the proposed class representative has released the defendants from the claims asserted, may face a statute of limitation defense, or owes prior unsettled debt to the defendant." *Id.*

5

role does not render her inadequate to represent a class that includes cooks and drivers in addition to store managers. The sealed record indicates that franchise owners (rather than store managers like Page) enforced the no-poach agreements, which applied to managers and non-managers alike. *See* DNs 240-5 to 240-7. And, according to Page's interpretation, the agreements suppressed wages for both managers and non-managers. Amended Motion at 14–15. So store managers like Page and non-manager class members apparently share a "common interest" in proving that Papa John's suppressed wages in violation of the antitrust laws. Supplement at 5. And nothing in the record appears to overcome the presumption that Page has "handled [her] responsibilities with the independent vigor that the adversarial process demands" based on her managerial position. *Int'l Union*, 497 F.3d at 628.

The second adequacy concern—Page's lack of an arbitration agreement—poses a greater challenge. Page must demonstrate that her incentives align sufficiently with those of class members in different positions. Unlike the analysis above of Page's typicality, a requirement that "focuses on the similarities between the proposed class representative's claims and those of the class," the adequacy requirement "focuses on whether the proposed representative has incentives that generate disabling conflicts of interest." NEWBERG & RUBENSTEIN § 3:32.

At first glance, every class member—whether potentially subject to arbitration or not—shares the same interest: proving that Papa John's no-poach agreements unlawfully suppressed wages. *See* Supplement at 5. And, as Page puts it, she has "vigorously prosecute[d]" the interests of class members subject to arbitration agreements. Absent a classwide settlement, "those Class Members would recover not simply less—they would recover nothing" because classwide arbitration is apparently unavailable and individual arbitrations are presumably uneconomic to pursue. *Id.* at 7.

The concern here, however, is the amount rather than the fact of recovery. Under the proposed settlement, employees subject to an arbitration agreement would recover only a quarter for every dollar recovered by an employee (like Page) not subject to such an agreement. As discussed at the hearing, a rational actor in Page's situation would not necessarily have a reason to "vigorously prosecute" the interests of absent class members subject to arbitration agreements. Transcript (DN 247) at 44. After all, she is subject to a different damages calculation. If anything, her self-interest could push her toward sacrificing other class members' recovery to maximize that of herself and other class members not subject to arbitration agreements.

Notably, this action originally proposed two class representatives: Page and Jamiah Greer. Page was not subject to an arbitration agreement; Greer was. But Papa John's successfully knocked out Greer as a class representative by moving to dismiss her claims in favor of arbitration under her agreement with Papa John's. Order to Compel Arbitration (DN 90) at 9. Now, Page claims to adequately represent those like her without any risk of arbitration *and* those like Greer who are potentially susceptible to arbitration. Potentially, not definitely, because Papa John's has chosen

6

not to exercise arbitration clauses in other employee contracts and instead to settle those claims in litigation. It of course raises no objection to Page's adequacy and doesn't *have to* compel arbitration against any and all class members with arbitration agreements. Amended Motion for Preliminary Approval at 15–16.

The implication: Papa John's is willing to settle, but not litigate, arbitrable claims on a classwide basis. Yet the classwide agreement values the arbitrable claims at a steep discount. Page's role, at least in part, is to ensure the adequacy of representation and recovery for putative class members. The whole premise of class-action litigation presupposes that she, through counsel, can and will protect and maximize the legal interests of others who are similarly situated but absent. Who should represent the interest and maximize recovery for those absent class members with different interests, however?

The proposed settlement significantly discounts the value of claims held by employees bound by arbitration agreements. In support, counsel cite caselaw addressing claims valued differently because of the strength of the claims. Supplement at 6–7. But they don't cite authority for assessing the adequacy of representation and recovery when a subset of plaintiffs' claims are discounted without an independent representation or reason to justify the size and fairness of that discount. When a class contains claims of vastly different values, holders of the "more valuable" claims have "disparate interests" from the holders of the "less valuable" claims. *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242, 251 (2d Cir. 2011). And the owners of the more valuable claims may have an interest in "selling out" the owners of the less valuable claims. *Id.* at 252. "Only the creation of subclasses, and the advocacy of an attorney representing each subclass," some courts have held, "can ensure that the interests of that particular subgroup are in fact adequately represented." *Id.*; *see also Bittinger*, 123 F.3d at 884 ("It may be that the best remedy to both the purportedly atypical claims and defenses would be to create sub-classes.").

For reasons unclear to the Court, the proposed settlement isn't structured around separately represented subclasses; surely it would be easier if it had been. This failure would appear to doom the settlement in, for example, the Second Circuit, which has held that "*[o]nly* the creation of subclasses … can ensure that the interests of [a] particular subgroup are in fact adequately represented." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 252 (2d Cir. 2011).

But the Sixth Circuit hasn't adopted such a strict position on subclasses and (in)adequacy. To the contrary, precedent in this Circuit appears to presume a level of good faith from class representatives and counsel. It explains that when, as here, the class representative and class members have "suffered the same injury … there is every reason to believe that the [class representative] will vigorously prosecute the interests of the class." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 563 (6th Cir. 2007). And the Sixth Circuit "demand[s] evidence of improper incentives for the class representatives" "before abandoning the presumption that the class representatives

7

… handled their responsibilities with the independent vigor that the adversarial process demands." *Int'l Union*, 497 F.3d at 628 (6th Cir. 2007).

On the other hand, risks of collusion call for "a more probing inquiry" in the class-settlement context "than may normally be required under Rule 23(e)." *Saucillo v. Peck*, 25 F.4th 1118, 1130 (9th Cir. 2022). And that scrutiny increases when disparate recovery aligns with divergent incentives that distinguish a group of plaintiffs represented by the named plaintiff from another group that doesn't enjoy such representation and is nevertheless bound. *See Amchem*, 521 U.S. at 625–28 ("The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected.").

At this stage, the Court can confidently assess the claims subject to arbitration as less valuable than those, like Page's, that are not subject to this procedural defense. Therefore the fact of a discounted recovery calculation seems reasonable— certainly reasonable enough not to call into question the adequacy of Page's representation of employees who otherwise might've recovered nothing in litigation *or* arbitration. But the amount of that discount is harder to assess absent any qualitative monitor (in the form of a subclass rep) or quantitative measurement (which doesn't appear to be included in the record before the Court). With these caveats, the Court preliminarily approves, dubitante, the adequacy of Page's representation and remains open to additional or contrary evidence or argument at the time of a final ruling.

**3. Predominance.** "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. It "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 459 (2013).

Assessing whether such questions predominate "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Page asserts that Papa John's has unreasonably restrained trade in violation of § 1 of the Sherman Act. Amended Complaint ¶¶ 123– 134. "To establish an antitrust claim, plaintiffs typically must prove (1) a violation of the antitrust laws, (2) an injury they suffered as a result of that violation, and (3) an estimated measure of damages." *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 288 (N.D. Cal. 2016).

**a.** As for the first element, Page asserts that Papa John's no-poach agreements were the sort of naked non-solicitation agreements that are considered per se unlawful. Amended Motion at 19. This is a common question. And Page has

8

demonstrated—through citations to the sealed portion of the record—that this question could be resolved through evidence common to the class. Page attached the franchise agreement as a sealed exhibit to her motion. DN 240-1. That agreement supports allegations that Papa John's restaurants (both corporate and franchises) viewed each other as competitors. Other sealed evidence supports allegations that the restaurants actually competed for employees. Amended Complaint at 3–4. So "virtually all class members would be relying on the same evidence that [Page] ha[s] submitted in support of class certification—namely the documents, emails, … and other indirect evidence necessary to prove that Defendants conspired in violation of antitrust laws." *Kleen Products LLC v. Int'l Paper*, 306 F.R.D. 585, 594 (N.D. Ill. 2015).

Several related predominance concerns discussed in the prior opinion stemmed from uncertainty about what form of antitrust scrutiny—per se analysis or rule of reason—would apply based on Page's theory of the case. Opinion at 6. Page's new filings have clarified things. This evidence of inter-store competition for labor—and horizontal agreements amongst such competitors—supports (without necessarily proving) Page's argument for per se unlawfulness. Areeda & Hovenkamp § 1910. And while this case was pending, the Seventh Circuit decided (in a similar fast-food no-poach case) that the per-se rule applied. *See Deslandes v. McDonald's USA, LLC*, 81 F.4th 699, 702 (7th Cir. 2023) ("[N]aked restraints … are unlawful per se."). Given this evidence, Page's per-se theory—rather than the rule of reason—appears sufficiently likely to apply that the Court may assess the parties' compromise on the basis of the evidence they would use to contest that theory of the case. Correspondingly, they would *not* have to rely on the commonality and predominance of evidence Page submitted regarding monopsony power, which would not be relevant absent a rule-of-reason theory. That evidence of "market power is not essential to antitrust claims involving naked agreements among competitors." *Deslandes*, 81 F.4th at 703.

Papa John's of course disagrees that Page's evidence would carry the day, and earlier in the case pointed to countervailing evidence that it would rely on to rebut these citations if the case went to trial. Motion to Dismiss (DN 59) at 7–12 (arguing that the restraints are not subject to the *per se* rule because they are vertical and ancillary). But the relevant questions at this stage are certification and common proof, not summary judgment and material factual disagreement. Courts in other no-poach cases have held that similar evidence demonstrates that antitrust violation is a common question that would be answered using common proof. *E.g.*, *Nitsch*, 315 F.R.D. at 289–90, 292 (emails between CEOs agreeing not to poach employees show that "common legal and factual issues will predominate as to whether Defendants maintained a conspiracy..."); *Seaman v. Duke University*, No. 1:15-cv-462, 2018 WL 671239, at *4 (M.D.N.C. Feb. 1, 2018) ("internal and external correspondence discussing recruitment" demonstrates that "the issue of antitrust violation is a common question that will be addressed with common proof for all proposed class members").

9

Commentators have remarked that "whether a conspiracy exists is a common question that is thought to predominate over the other issues in the case and has the effect of satisfying the first prerequisite in Rule 23(b)(3)." 7AA CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1781 (3d ed. 2024). And "Rule 23(b)(3) … does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen*, 568 U.S. at 469 (cleaned up). But Page has also identified common evidence for the remaining two elements of her claim.

**b.** Antitrust injury asks simply "whether the plaintiffs were harmed," not "by how much"—which is the scope of the damages calculation. *Kleen Prods.*, 306 F.R.D. at 594. To establish antitrust injury, Page primarily relies upon economic theory and evidence that Papa John's linked pay for all employees. Amended Motion at 24–26. This evidence appears identical across the class, and Page asserts that it answers the common question whether the no-poach agreements class members were harmed. Amended Motion at 24. Whether this evidence would persuade a jury is beside the point: "[N]amed plaintiffs must show that *they will be able* to prove injury through common evidence, not that they have in fact proved that common injury." *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 521 (6th Cir. 2015).

**c.** That leaves damages. "Although individual damages calculations do not preclude class certification under Rule 23(b)(3), a court must ensure at the class-certification stage that plaintiffs' formula calculates damages based only on their theory of liability." *Hicks v. State Farm Fire & Casualty Co.*, 965 F.3d 452, 460 (6th Cir. 2020). On this point, Page submitted a sealed declaration for her retained expert, Hal Singer. DN 254–1. Though Singer did not prepare an export report, his declaration describes a damages calculation based on a multiple-regression analysis of payroll data provided by Papa John's. ¶¶ 10–11. This analysis purportedly quantifies the effect of the no-poach agreements on employee compensation. ¶ 12. And Singer uses it to estimate aggregate damages. ¶¶ 19–20. So Page's model purports "to measure damages resulting from the particular antitrust injury on which [Papa John's] liability in this action is premised." *Comcast Corp v. Behrend*, 569 U.S. 27, 36 (2013). Regardless of whether that measurement would ultimately survive a challenge and persuade a jury, this amounts to common evidence that would likely predominate over individualized damages questions.

***

The additional information and arguments offered by Page in her briefs and at the hearing—while not overwhelming—suffice to allow the Court at this preliminary stage to hold that it "will likely be able to … certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B)(ii).

**ORDER**

1. Unless otherwise defined, all terms that are capitalized shall have the meanings ascribed to those terms in the Settlement Agreement.

2. The Court finds on a preliminary basis pursuant to Rule 23 of the Federal Rules of Civil Procedure that the settlement ("Settlement") memorialized in the "Settlement Agreement" is fair, reasonable, and adequate.

3. The Court has considered the pleadings and arguments made by Plaintiff in support of the motion for preliminary approval and finds that the proposed Settlement Class described in the Settlement Agreement is proper and should be provisionally certified for settlement purposes. Solely for the purposes of the proposed Settlement, the following Settlement Class is hereby provisionally certified pursuant to Rule 23 of the Federal Rules of Civil Procedure:

   > All individuals who were employed at a Papa John's branded restaurant located in the United States, whether owned by Defendants or a Papa John's franchisee, at any time between December 18, 2014 and December 31, 2021 and who received more than $200 in compensation during that time period.

4. Solely for the purposes of the proposed Settlement, the Court finds that: (1) the Settlement Class is so numerous (approximately 401,000 members) that joinder is impracticable; (2) questions of law and fact are common to the Settlement Class; (3) the claims of the Class Representative are typical of the claims of the Settlement Class; and (4) the Class Representative will fairly and adequately protect the interests of the Settlement Class. Further, for purposes of settlement only, the Court finds that the proposed Settlement Class meets the predominance and superiority requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Court finds that certification of the Settlement Class for settlement purposes is the best means of protecting the interests of all of the Class Members.

5. Solely for the purposes of the proposed Settlement, the Court preliminarily approves Lin Y. Chan of Lieff Cabraser Heimann & Bernstein, LLP; Christian Levis of Lowey Dannenberg, P.C.; Richard McCune of McCune Wright Arevalo, LLP; and Michelle E. Conston of Scott+Scott Attorneys at Law LLP to be appointed as Class Counsel. The Court also hereby preliminarily approves Page as the Class Representative.

6. Per the request of the Parties, the Court appoints A.B. Data, Ltd., as the Claims Administrator.

7. The Court approves, as to form and content, the proposed Claim Form and Notice of Class Action Settlement with the following modifications: (1) the procedure must specify that the 100-day deadline for response will be

11

calculated from the date emails and postcards are sent, and (2) once the content of the email notice is developed by Class Counsel and Defendants' Counsel, it must receive final approval from the Court. The Court finds that the procedures for notifying the Settlement Class about the Settlement as described in the Settlement Agreement provide the best notice practicable under the circumstances and therefore meet the requirements of the United States Constitution and specifically its Due Process Clause, Rule 23 of the Federal Rules of Civil Procedure, and any other applicable laws and rules mentioned in the parties' filings. The Court therefore directs distribution of the Notice Packet to Class Members as set forth in the Settlement Agreement.

8. A hearing, for purposes of determining whether the Settlement should be finally approved, shall be held before this Court on **January 7, 2026 at 9:30 a.m.** at the U.S. District Court for the Western District of Kentucky, Gene Snyder United States Courthouse, 601 West Broadway, Louisville, KY 40202. At the hearing, the Court will hear arguments concerning whether the proposed Settlement of the Action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court. The Court will consider any objections that may be filed, as well as Class Counsel's request for an award of attorneys' fees and costs and for a Service Award to be made to Plaintiff.

9. No later than thirty days after the Court enters the Preliminary Approval Order, Defendants shall transmit fifty percent (50%) of the payment required by the Settlement Agreement by wire transfer (or other appropriate means) to the Settlement Account. If the Court decides not to enter a Final Approval Order for any reason, then the entire amount in the Settlement Account, including any interest earned on that amount, will be returned to Defendants, less any Administrative Costs and taxes paid or reasonably incurred up to that point. No other funds shall be added to or comingled with the Settlement Account except as provided for by the Settlement Agreement. In no event shall the Claims Administrator withdraw, transfer, pledge, impair, or otherwise make use of the funds in the Settlement Account except as expressly provided in the Settlement Agreement.

10. With respect to the Settlement Account, the Claims Administrator shall comply with all of the duties and requirements set forth in the Settlement Agreement and all applicable federal, state, and local law.

11. The Settlement Account, including all interest or other income generated therein, shall be in *custodia legis* and immune from attachment, execution, assignment, hypothecation, transfer, or similar process by any third party, including any Class Member.

12. Pending the Court's decision on final approval of the Settlement and entry of the Court's Final Approval Order, Plaintiff and all Class Members who do not timely submit valid Requests for Exclusion, and anyone acting on any of their

behalf, shall be barred and enjoined from: (a) further litigation in this case; and (b) filing or taking any action directly or indirectly to commence, prosecute, pursue, or participate on an individual or class or collective action basis of any action, claim, or proceeding against any Defendant in any forum in which any of the claims released in the Settlement Agreement are asserted, or which in any way would prevent any such claims from being extinguished.

13. As of the Effective Date, each and every claim released in the Settlement Agreement by Plaintiff and Class Members who have not timely submitted valid Requests for Exclusion shall be deemed to be conclusively and forever released as against Defendants. As of the Effective Date, all Class Members who have not timely submitted valid Requests for Exclusion are hereby forever barred and enjoined from prosecuting the claims released in the Settlement Agreement against Defendants.

14. All Class Members who do not opt out of the Settlement by submitting a timely Request for Exclusion shall be bound by all determinations and judgments in the Action concerning the Settlement, whether favorable or unfavorable to the Settlement Class or Class Member.

15. To receive a Settlement Payment under the Settlement, Class Members must materially complete, execute, and submit the Claim Form to the Claims Administrator no later than the Claims Deadline as specified in the Settlement Agreement. Any Class Member who does not submit a timely and materially complete and executed Claim Form may not receive a Settlement Payment. Notwithstanding the foregoing, Class Counsel shall have the discretion, but not the obligation, to accept late-submitted claims for processing by the Claims Administrator so long as distribution of the proceeds of the Gross Settlement Fund is not materially delayed.

16. All Class Members objecting to the terms of the Settlement must do so no later than 100 days following the entry of this order ("the Claims Deadline") and subject to the terms and conditions set forth in the Settlement Agreement. The written objection must be postmarked to the Claims Administrator on or before this date.

17. Any Class Member who wishes to be excluded ("Opt Out") from the Settlement Class and not participate in the proposed Settlement must complete and submit a Request for Exclusion to the Claims Administrator postmarked no later than the Claim Deadline, as specified in the Settlement Agreement.

18. Any Class Member may enter an appearance in the Action, at his or her own expense, individually or through counsel of his or her own choice. Any Class Member who neither enters an appearance nor opts out of the Settlement Class will be represented by Class Counsel.

19. Any Class Member may appear at the Final Approval Hearing and show cause, if he or she has any, why the proposed Settlement of the Action should or should not be approved as fair, reasonable, and adequate, or why a judgment

should or should not be entered thereon. No Class Member or any other person, however, shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement, or, if approved, the Final Approval Order to be entered thereon approving the same, unless that Class Member has submitted a timely and valid Request for Exclusion to the Claims Administrator. All timely filed and served objections shall be considered and ruled upon by the Court at the Final Approval Hearing. Any Class Member who does not timely file and serve his or her objection in the manner provided in the Settlement Agreement shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed Settlement as incorporated in the Settlement Agreement.

20. In the event that the Effective Date (as provided for in the Settlement Agreement) does not occur, the Settlement and the Settlement Agreement shall be deemed null and void and shall have no effect whatsoever.

21. The Parties must carry out the Settlement according to the terms of the Settlement Agreement.

22. The Court imposes the following schedule:

| Event | Date |
| --- | --- |
| Papa John's to Provide Database of Class Members' Identities and Corresponding Information to Claims Administrator | August 21, 2025 |
| Claims Administrator Shall Engage Credit Reporting Agency or Similar Service to Locate Class Members' Email Addresses | September 4, 2025 |
| Claims Administrator Will Email Notice Package, Publish Settlement Website, and Mail Postcards to Class Members Whose Email Addresses Cannot be Located | Following receipt of tracing Class Member Contact Information |
| Claims Administrator will Alert Parties if Direct Notice Unlikely to Reach More than 80% of Class Members | Following additional email and postcard notice to Class Members |
| Motion for Fees, Costs, and Plaintiff's Service Award | October 21, 2025 |
| Deadline for Claims, Objections, and Requests for Exclusion | November 15, 2025 |

14

| Motion for Final Approval and Claims Administrator Affidavit of Compliance with Notice Requirements | December 17, 2025 |
|---|---|
| Final Approval Hearing (Minimum of 130 days after Preliminary Approval) | January 7, 2026 |

August 7, 2025

Benjamin Beaton, District Judge
United States District Court